# EXHIBITS

No.................. .......   .......

## STATE OF LOUISIANA

Versus

JEFFERY J. FUSSELL and

DAVID D. RUSHING

Indictment for

Violating R.S. 14:30 - First
Degree Murder

Certify that the above and foregoing fingerprints on this
and that ... the defendant _Jeffery J.
_ssell_, and that they were placed thereon by said
this _17_ day of _Nov_, 19 _83_.
_S. Robert Munster_   SIPSO

A TRUE BILL

Foreman of the Grand Jury.

I hereby certify th:
bill are the fingerp:

_Rushing_

defendant this

_S. Sgt_

EXHIBIT "6"

JAN 14 1985

SUPREME COURT OF LOUISIANA

NO. 84-KA-0991

STATE OF LOUISIANA

versus

DAVID RUSHING

Appeal from the 22nd Judicial District Court,
Parish of St. Tammany, State of Louisiana
Honorable A. Clayton James, Judge

BLANCHE, Justice

Defendant, David Rushing, Jr. was indicted by the St.
Tammany Parish Grand Jury on April 21, 1983 for the first
degree murder of Danny Archer, a violation of La. R.S. 14:30.
A jury of twelve unanimously found the defendant guilty of the
crime charged.  Following the sentencing hearing, the jury
recommended unanimously that the defendant be put to death, and
the trial court sentenced him accordingly.  In reaching its
conclusion, the jury found the existence of two statutory
aggravating circumstances:  (1) the defendant had been engaged
in the perpetration or attempted perpetration of an armed
robbery or simple robbery at the time the victim was killed,
and (2) the offense was committed in an especially heinous,
atrocious, or cruel manner.  La. C.Cr.P. art. 905.4 §§(a) and
(g).

In appealing his conviction and sentence, the
defendant has assigned seven errors.[1]  In this opinion we

---

[1]  Assignments 6 and 7 dealt with errors in the
penalty phase of the trial and are discussed in our review of
the sentence.

Calogero, J. dissents for the reasons assigned by
Lemmon J. and further, being of the view that
there is merit in defendant's Assignment of
Error #'s 6 + 7.
Justice Lemmon dissents and assigns reasons

will treat three assignments of error (Assignments 5, 6 and 7) and review the sentence. The defendant's remaining assignments involve legal issues governed by established principals of law and will be treated in an unpublished appendix which will comprise part of the official record in this case. Our review will show that none of the assignments warrant reversal and we will therefore affirm the conviction and sentence.

FACTS

Between 3:30 and 4:00 a.m. on April 1, 1983, Lloyd Jackson, a route salesman, had completed his deliveries and was driving home when he discovered a cab stopped beside the road with its motor running, lights on, doors shut and its windows rolled up. Jackson found Danny Archer behind the steering wheel leaning over to the passenger side covered with blood. Jackson went to a nearby house and called the police.

When the police arrived on the scene, they found that Archer had been shot in the back and that he had been repeatedly struck on the top of the head. The interior of the car was covered with blood. There was so much blood splattered about the car that the investigating officers initially believed that more than one victim had been killed. The police found a single expended shotgun shell three feet from the cab driver's door. A blood saturated black glove was discovered in the door jam on the driver's side of the car. On the floorboard near the gas pedal, the officers found a portion of a broken wooden gun stock. About 80 feet behind the cab, the officers found a wallet which contained Jeffrey Fussell's driver's license.

This evidence led the officers to Jeffrey Fussell's trailer. Fussell who had been asleep on the couch near the

- 2 -

door invited the officers inside where they discovered David
Rushing asleep in one of the rooms. On the floor near
Rushing's bed, there were thongs, jeans and a black jacket
covered with blood stains. When Rushing was awakened, the
officers found that his feet were covered with blood. No blood
was found on Fussell.

Both men were placed under arrest and a short time
later, Fussell[2] led the officers to the place where the
shotgun which had been used to kill Archer had been discarded.
Approximately 5 hours later, David Rushing voluntarily gave a
statement to the officers describing the events leading up to
the murder of Danny Archer.

In this confession Rushing stated that he and Fussell
had taken blue Valiums earlier in the evening and had decided
to go to Slidell to rob a gas station. When they found the gas
station was closed, they decided to call a cab and rob the
driver. In discussing who would actually rob the cab driver,
Rushing stated that Fussell had told him that he had the nerve
to pull the "cap" (the trigger). However, Rushing related that
he then decided he would do it because "I didn't figure I had
the nerve."

Rushing stated that he was wearing thongs, jeans,
black gloves and Fussell's jacket when he entered the cab and
that he had a sawed-off shotgun hidden under his clothing.
Rushing told Archer to drive to the Ponderosa Subdivision and
Fussell followed in Rushing's car. Rushing stated that at some
point along the way he thought Archer was reaching for a gun
under the seat. Rushing placed the shotgun to the back of the

---

2  Fussell pled guilty to second degree murder and
received a sentence of life imprisonment without benefit of
probation, parole or suspension.

```
 1              I mean, both Jeffrey and David
 2              received drugs from, pharmaceutical
 3              type drugs, what we believed to be
 4              Merpergan, M-e-p-e-r-g-a-n.
 5          You will hear testimony from a
 6              toxicologist who will tell to you
 7              the type of drugs that were found
 8              in a syringe.  We will show to you
 9              that during the course of this
10              trial as it unfolds in here, that
11              after receiving these drugs, that
12              these boys, what we call, did them
13              up.  Shot up, but did the drugs.
14              Also testimony they had smoked some
15              marijuana.  Testimony that there
16              were a number of trips made to Mr.
17              Sheridan's house to purchase these
18              drugs at different times of the
19              evening, showing to you also that
20              during the course of this evening,
21              that Mr. Sheridan was in the
22              company of both of these
23              individuals; that he provided the
24              shotgun; that he had the shotgun
25              that he provided to them; that he
26              knew an armed robbery was going to
27              take place; and that he was with
```

24

```
 1              "Send a cab." And this was at the
 2              Racetrack at the corner of Gause
 3              and highway --
 4     BY MR. PADDISON:  Your Honor, I have to
 5              object to the usage of any evidence
 6              or any potential evidence in this
 7              matter.  It hasn't been admitted.
 8     BY MR. SIMMONS:  Your Honor, it's only
 9              for demonstrative purposes.  It's a
10              city map by showing the City of
11              Slidell and it's contiguous areas.
12     BY THE COURT:  I'll overrule the
13              objection.
14     BY MR. PADDISON:  Yes, Your Honor.
15     BY MR. SIMMONS:  But in this area --
16              this is Gause Boulevard and Highway
17              10, or U.S. 10.  This is where the
18              telephone call was made.  This is
19              the area we're talking about.  That
20              in this area, that a man was seen
21              at the telephone, or using the
22              telephone, and that person was
23              Jeffrey Fussell that was there.  He
24              was the only person that was seen
25              making the telephone call or at the
26              telephone booth at or around the
27              same time that the dispatcher --
```

26

DAVID D. RUSHING, JR.

```
 1   A.   Yes, sir.
 2   Q.   Now, do you recall what you were doing --
 3        you've heard testimony given in
 4        here today.
 5   A.   Yes, sir.
 6   Q.   Last several days.  You've had -- how
 7        long have you been in jail?
 8   A.   Since April 1.
 9   Q.   Now, can you tell us what you recall
10        that took place with your
11        association with Jeffrey Fussell
12        and anyone else that you may have
13        been in contact with in and around
14        and before this alleged incident?
15   A.   Well, I've been by Jeffrey's --
16   Q.   Tell the ladies and gentlemen of the
17        jury, not me.
18   A.   I had been by Jeffrey's that day.
19   Q.   Give him -- may I interrupt him one
20        moment?
21        BY MR. PADDISON:  Your Honor, I object
22        to Mr. Simmons answering the
23        question, and Mr. Simmons is trying
24        to direct him.
25        BY MR. SIMMONS:  Rather than direct
26        him, I just wanted to qualify him a
27        little bit if he remembers time
```

DAVID D. RUSHING, JR.

| | | |
|---|---|---|
| 1 | | when he did this. |
| 2 | | BY THE COURT:  Overrule the objection. |
| 3 | | BY THE WITNESS:  What do you mean?  Who |
| 4 | | was I in contact with? |
| 5 | | EXAMINATION BY MR. SIMMONS: |
| 6 | Q. | Yes, sir.  What did you do that you can |
| 7 | | recall on and around that day |
| 8 | | before leading up to this incident? |
| 9 | A. | Well, I was riding around.  I had been |
| 10 | | by Jeffrey's house, and I had went |
| 11 | | down to the house for a little |
| 12 | | while.  Then I went by Leslie |
| 13 | | Sheridan's.  He mentioned something |
| 14 | | about he was going to get some |
| 15 | | drugs in a little while, so I left. |
| 16 | | And I went back by Jeffrey's house, |
| 17 | | and I mentioned it to him.  And he |
| 18 | | said that he would like to get |
| 19 | | some.  So I left and went back down |
| 20 | | to Leslie's house.  I don't |
| 21 | | remember what I talked to him |
| 22 | | about.  It led up to where I sold |
| 23 | | him my gun and he gave me some |
| 24 | | money -- I don't remember how much |
| 25 | | it was -- for some dope.  And he |
| 26 | | had to go pick it up.  But before |
| 27 | | he went, I went back to Jeffrey's |

70



| 053L | 2 | 86 | 4421 | -0 | 09 | 86 | 3 | 530 | 1 | | | 3L18 M 3LBC | 22125 | | 86 | 4421 |
|------|---|----|----|----|----|----|---|-----|---|---|---|---|---|---|----|----|

**PLAINTIFFS**

DAVID DANIEL RUSHING

**86-4421**

**C 4**

**DEFENDANTS**

FRANK BLACKBURN, WARDEN,
LOUISIANA STATE PENITENTIARY AT
ANGOLA, LOUISIANA

PAUPER CASE

CAUSE

(CITE THE U.S. CIVIL STATUTE UNDER WHICH THE CASE
IS FILED AND WRITE A BRIEF STATEMENT OF CAUSE)

28 USC 2254    STAY OF EXECUTION AND PETITION FOR WRIT OF HABEAS CORPUS

ATTORNEYS    ZELDEN AND RAND
Bill Campbell,  Asst DA
848 First NBC Building
New Orleans, LA  70112
(504) 581-6621

420 Julia
New Orleans, LA  70115
(504) 827-0797
For:  David Daniel Rushing

22nd Judicial District Court
St. Tammany Parish
P.O. Box 1090
Covington, LA  70434

Judith Menadue, Atty.
348 Baronne St., Rm. 421
New Orleans, LA.  70112
(504) 522-0578
For:  Pltf

| CHECK HERE | FILING FEES PAID | | | STATISTICAL CARDS | |
|------------|------------------|---|---|-------------------|---|
| ☐ IF CASE WAS FILED IN FORMA PAUPERIS | DATE | | | CARD | DATE MAILED |
| | RECEIPT NUMBER | I.D. NUMBER | | JS-8 | |
| | | | | JS-6 | |

UNITED STATES DISTRICT COURT DOCKET

TRUE COPY

FEB

District Court
Louisiana
New Orleans, La.

DC-111 (Rev. 9/81)

| DATE | NR. | PROCEEDINGS 86 - 14211 |
|------|-----|------------------------|
| 10/9/86 | 1 | Petition for writ of Habeas Corpus by a person in State Custody. |
| 10/9/86 | 2 | Pltf's mtn to provide funds for expert assistance. |
| 10/9/86 | 3 | Pltf's application for a stay of execution pending appeal & unsigned order (see doc #4) |
| 10/9/86 | 4 | ORDER that application for stay of execution is GRANTED and petitioner's execution is hereby STAYED pending further order of this court.  FURTHER ORDERED that Clerk shall notify Warden Blackburn.  (RFC) 10/9/86 dktd 10/10/86. |
| 10/9/86 | 5 | Pltf's mtn & ORDER that same be allowed to proceed in forma pauperis.  (MLGF) dktd 10/14/86. |
| 12/19/86 | 6 | M.E. 12/18/86:  Final briefs on all issues presented in this case are due by 5:00 pm on 1/18/87.  (RFC) dktd 12/19/86. |
| 1/14/87 | 7 | M.E. 1/12/87:  ORDER granting deft until 2/2/87 to file its brief.  (RFC) dktd 1/15/87. |
| 1/20/87 | 8 | Pet's memo of law in support of mtn for evidentiary hrg & for writ of Habeas Corpus. |
| 2/13/87 | 9 | Memo by deft in opp to petitioner's mtn for an evidentiary hrg & petition for writ of H/C. |
| 8/18/87 | 10 | ORDERED that counsel for State provide Court w/copy of transcript of Leslie Sheridan's Grand Jury testimony w/in one week from date of this order.  Court will review transcript in camera in order to determine the merits of pltf's Claim IV.  (RFC) dktd 8/18/87. |
| 9/1/87 | 11 | REASONS that the Court rejects Claims I, II, III, IV, V, VI, VII, VIII, IX, X, XI, XII, XIII, XIV, XV, XVI, XVII, & XVIII.  Court dismisses all claims included in petition for writ of habeas corpus & ORDERS that stay of execution entered 10/10/86 is LIFTED.  (RFC) 8/31/87 dktd 9/1/87. |
| 9/1/87 | 12 | JUDGMENT:  ORDERED in favor of Frank Blackburn, Warden, agst David Rushing, dismissing the petition w/prej.  (CLERK - Approved RFC) 8/31/87 dktd 9/1/87. |
|  |  | **CLOSED** |
| 10/9/86 | 3a | Pltf's mtn for evidentiary hrg & unsigned order. |
| 9/1/87 | 13 | Response by Parish of St. Tammany District Atty's Office to application for writ of habeas Corpus. |
| 9/11/87 | 14 | Pltf's ntc of mtn for reconsideration to be filed w/Judge's approval. |
| 10/5/87 | 15 | Memo in opp by deft to pltf's mtn to reconsider. |
| 10/6/87 | 16 | Pltf's mtn & ORDER that a hrg is set for 10/21/87 2:00pm to hear its mtn to reconsider.  (RFC) dktd 10/20/87. |
| 10/21/87 | 17 | Pltf's mtn & ORDER allowing Judith menadue to enroll as counsel.  (RFC) dktd 10/23/87. |
| 10/22/87 | 18 | Hrg on pltf's mtn for re-consideration - taken under advisement. Pltf to file briefs bfr 10/30/87 & State has until 11/3/87 to respond. (RFC) dktd 10/29/87. |

(CONTINUED)


CC 111A
(Rev. 1/75)



CIVIL DOCKET CONTINUATION SHEET

| PLAINTIFF | | DEFENDANT | |
|---|---|---|---|
| DAVID DANIEL RUSHING | | FRANK BLACKBURN | DOCKET NO. 86-4421C<br>PAGE 2 OF ___ PAGES |

| DATE | NR. | PROCEEDINGS |
|---|---|---|
| 10/30/87 | 19 | Pltf's memo of law in support of its mtn to reconsider. |
| 11/6/87 | 20 | Memo of law in opp by deft to pltf's mtn to reconsider. |
| 1-7-88 | 21 | M.E. 1-6-88: Pltf's mtn to reconsider is - DENIED.  The court hereby dissolves & revokes any effect the mtn to reconsider had in staying pltf's execution. (RFC) dktd 1-7-88. |
| 2/5/88 | 22 | Pltf's application & ORDER allowing same authorization to appeal & execution staye until Court of Appeals acts on appeal. (RFC) dktd 2/5/88. |
| 2/5/88 | 23 | Pltf's NOTICE OF APPEAL of order denying pltf's mtn to reconsider & writ of H/C. |
| 2/5/88 | XX | NTC. of Appeal fwd. to all parties (PNC) |
| 2/5/88 | XX | Record fwd. to Ct. of Appeals (PNC) |

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

DAVID DANIEL RUSHING,

        Petitioner,

-vs-

FRANK BLACKBURN, WARDEN,
LOUISIANA STATE PENITEN-
TIARY AT ANGOLA, LOUISIANA,

        Respondent.

No. 86-442

DEATH CASE
Execution Set For
Midnight to 3:00 a.m.,
Friday, October 10,
1986

SECT.C MAG.4

PETITION FOR WRIT OF HABEAS CORPUS
BY A PERSON IN STATE CUSTODY

        Petitioner, David Daniel Rushing, files this verified petition for writ of habeas corpus, evidentiary hearing, and stay of execution, and in support hereof respectfully shows the Court the following facts as set forth in this petition.

        1.    The name and location of the court which entered the judgment of conviction challenged is the Circuit Court of St. Tammany Parish in Covington, Louisiana.

        2.    The date of judgment of conviction is October 13, 1983.  A copy of the judgment is attached as Appendix A.

FEE _____ pauper
PROCESS _____
X CHARGE _____
INDEX _____
ORDER _____
HEARING _____
DOCUMENT No. _____

tive reason why he should admit Cousin's statement.  The ineffectiveness of Petitioner's counsel in this matter was a serious shortcoming in his performance at trial.

38.   Petitioner's counsel's closing argument to the jury was inadequate and utterly failed to offer the jury any reason to acquit Petitioner.   Incredibly, counsel told the jury his client was not innocent:

> "I'm not asking you to go beyond the evidence to seek for reasons to acquit.  I'm not asking you to acquit this man, because he's admitted from the stand that he was there.  He was there, and he's a principal there."

(Rec. Vol. IV, p. 229)  Petitioner's counsel further stated:

> "I'm not saying there's reason to let this man walk out of here.  I'm not saying to do that.  I wouldn't insult your integrity in any form or fashion in asking you to do that."

(Rec. Vol. IV, p. 231)

39.   Petitioner's counsel also stated that he hoped the jurors would stick by their decision, regardless of the outcome, instead of urging the jury to decide in his client's favor.

40.   Because of counsel's serious breach of duty to his client, the jury was confronted with a plea of not guilty when Defendant's own counsel admitted his client was not innocent.   These statements also destroyed any belief by the jury that Defendant's counsel believed or knew that his client was innocent.

12



**Supreme Court**
STATE OF LOUISIANA
**New Orleans**

CHIEF JUSTICE
  JOHN A. DIXON, JR.
ASSOCIATE JUSTICES
  PASCAL F. CALOGERO, JR
  WALTER F. MARCUS, JR
  JAMES L. DENNIS
  FRED A. BLANCHE, JR.
  JACK CROZIER WATSON
  HARRY T. LEMMON
CLERK OF COURT
  FRANS J. LABRANCHE, JR

June 27, 1984

301 LOYOLA AVE. 70112
TELEPHONE 504-568-5707

John R. Simmons, Esq.
434 East Boston St.
Covington, La. 70433

Re:   State of Louisiana vs.
      David D. Rushing
      Number 84-KA-0991

Dear Mr. Simmons:

Please be advised that we have not yet received your brief in
the above entitled matter and the allotted time has now
expired.

Supreme Court Rule 7§8 provides that all parties must file
briefs in every criminal case; therefore, unless your brief is
received within ten days from the date of this letter, or some
reasonable explanation is given for your failure, you may be
subject to a rule for contempt.

With kindest regards, I remain,

Very truly yours,

Frans J. Labranche, Jr.
Clerk of Court

By:  Dan B. Haggerty, Jr.
     Deputy Clerk of Court

DBHJr: mrd

EXHIBIT "2"

# Supreme Court of Louisiana

### NEW ORLEANS, 70112

STATE OF LOUISIANA                         NUMBER 84-KA-0991

VS.

DAVID D. RUSHING                           August 10, 1984

---

### RULE TO SHOW CAUSE

On considering the fact that John R. Simmons, Esq. and Dwight Doskey, Esq. represents David D. Rushing in the above entitled matter on Appeal from the 22nd Judicial District Court, for the Parish of St. Tammany, and further considering that Counsel for the Defendant has failed to file a sentence review memorandum in the above entitled matter, despite numerous and repeated requests to do so,

IT IS ORDERED THAT John R. Simmons, Esq. and Dwight Doskey, Esq. file a sentence review memorandum in the above entitled matter on or before August 31, 1984 or else show cause on September 5, 1984 in the Courtroom of the Supreme Court of Louisiana at 9:30 a.m. why they should not be held in contempt for failure to file a sentence review memorandum as directed by this Court.

For the Court at New Orleans, Louisiana, August 10, 1984

SUPREME COURT OF LOUISIANA
A TRUE COPY

Dan B. Haggerty, Jr.
Deputy Clerk

ASSOCIATE JUSTICE

mrd

```
 1            here other than Leslie Sheridan, if
 2            he had any role in it other than
 3            giving drugs to people.
 4    I'm not asking you to go beyond the
 5            evidence to seek for reasons to
 6            acquit.  I'm not asking you to
 7            acquit this man, because he's
 8            admitted from that stand that he
 9            was there.  He was there, and he's
10            a principal there.  The question
11            is, if there's a question, who did
12            the beating?  Did they both do the
13            beating?  Did one of them do the
14            beating?  Was there someone else in
15            the back of the cab with this man
16            who's not here, that the State
17            doesn't want to call?  We know two
18            people they don't.  We know two
19            people that they could call.
20    A gun is such an unusual thing.  A
21            piece of it is in the front of the
22            car.  It was used to consummate
23            some horrible blows.  And what did
24            it have?  Some splattering.  You
25            may not think much or you may want
26            to dwell on it more.  You have the
27            right to do so.  What about the
```

229

```
 1        found that made some contribution
 2        to this case.  The State did not.
 3        The State saw the hypodermic
 4        needle.  Detective Moore, who has
 5        been so fantastic in here except
 6        when it comes to his snitch and to
 7        picking up evidence and making sure
 8        that it's here, he was at the
 9        original scene.  He may not have
10        been there when the stick was
11        picked up.  He was certainly there
12        when he saw the hypodermic.  He
13        knew that the hypodermic was there
14        before he questioned anyone.
15   I'm not saying there's reason to let
16        this man walk out of here.  I'm not
17        saying to do that.  I wouldn't
18        insult your integrity in any form
19        or fashion in asking you to do
20        that.  But what I'm saying with the
21        most advanced scientific evidence
22        we have here, a gas chromatography
23        here, what we have done is we've
24        attempted to show what could be
25        found on a certain type of test
26        looking for a certain thing with
27        the equipment that was available
```

231

# ZIMMERMANN PSYCHOLOGY CLINIC
### CLINICAL and FORENSIC PSYCHOLOGY

4750 North Boule
Baton Rouge, Louisiana 70
(504) 926-3

March 31, 1988

Thomas M. Ross
Doyle and Michales
2124 Dupont Avenue South
Minneapolis, MN  55405

RE:  Affidavit
     David Rushing

Dear Mr. Ross:

Enclosed please find the affidavit which I signed and had notarized today.

If I can be of any further service please don't hesitate to contact me.

Sincerely,

Marc L. Zimmermann, Ph.D.
Clinical Psychologist

MLZ/kd

Enclosure

# DOYLE AND MICHALES
## LAWYERS

2124 DUPONT AVE. SOUTH  •  MINNEAPOLIS, MN 55405  •  612/870-8993

STEPHEN PATRICK DOYLE
MARILYN MICHALES
CHRISTINE L. STROEMER

SUSAN J. STILLWEL
*Senior Legal Assistan*
PATRICIA A. KRINGI
*Legal Assistant*

March 30, 1988

Dr. Marc L. Zimmermann
Zimmermann Psychology Clinic
4750 North Boulevard
Baton Rouge, Louisiana  70806

Dear Dr. Zimmerman:

I apologize for your not receiving the enclosed affidavit prior to now.  Since this must be to the court by Monday, I would appreciate it if you could sign the affidavit and have it notarized on Thursday.  That way it could be sent via Federal Express so that I could have it on Friday.  Our address and Federal Express number is:

> Thomas M. Ross
> Doyle and Michales
> 2124 Dupont Avenue South
> Minneapolis, Minnesota  55405
> (612) 870-8993
> Federal Express #1169-7920-9

Thank you for your cooperation.

Sincerely,

DOYLE AND MICHALES

Thomas M. Ross
Law Clerk

TMR/pk
Enclosure


FEDERAL EXPRESS

AFFIDAVIT OF MARC L. ZIMMERMANN, Ph.D.

STATE OF LOUISIANA               )
                                 )  ss.
PARISH OF EAST BATON ROUGE)

MARC   L.   ZIMMERMANN,   Ph.D.,   being   first   duly
sworn, says as follows:

1.   My name is Marc L. Zimmerman.   I am currently
a clinical psychologist in private practice in Baton Rouge,
Louisiana.   I have been in private practice since 1980.

2.   I received my training in clinical psychology
at East Texas State University, from which I received my
Ph.D.  in  psychology  in  1977.    I  have  been  licensed  to
practice in Texas since 1978, and in Louisiana since 1979.
I  have  been  certified  by  the  Council  for  the  National
Register of Health Service Providers in Psychology, and I am
a Diplomat of the American Academy of Behavioral Medicine.
I am a member of the American Psychological Association and
the American Society of Clinic Hypnosis.

3.   I have been a practicing psychologist since
1977, and have practiced in Louisiana since 1980.   From 1977
to  1978,  I  was  Director  of  the  Angelina  County  (Texas)
Mental Health Clinic.   In 1978, I joined the Baton Rouge
Mental Health Center as Chief Psychologist, in which position
I remained until entering private practice in 1980.

4.   On December 5, 1987, I examined Mr. Rushing

in a visitation room at Camp J (Death Row) at Angola State Penitentiary.

5.   From discussions with Mr. Rushing, I have determined the following characteristics of him:

(a)   That Mr. Rushing is vulnerable to peer pressure;

(b)   That Mr. Rushing probably suffers from a personality disorder, most likely a dependent or schizoid disorder.

6.   I administered the Wechsler Adult Intelligence Scale-Revised.

7. From the test, I was able to make the following determinations about Mr. Rushing:

(a)   He suffers from an emotional disorder, either neurotic or psychotic.

(b)   The range of his verbal, performance, and full scale scores are within borderline retarded range.  This does not mean he is retarded, but the range is less than one standard deviation above the scores considered to be retarded.

8.   I also administered the Wide Range Achievement Test-Revised Level Two.

9.   From the test I was able to make the following determinations about Mr. Rushing:

(a)   His reading ability is at beginning third grade level.

(b)   His spelling ability is below third grade level.

(c)   His skills at arithmetic are at the begin-

2

FURTHER AFFIANT SAITH NOT.

_____

Marc L. Zimmermann, Ph.D.

Subscribed and sworn to before

me this ___ day of _____, 1988.


_____

4

APPENDIX

| | Page |
|---|---|
| Cumulative School Records 1970 - 1978 | A-1 |
| School Records by Subject 1970 - 1977 | A-2 |
| School Records 1978 - 1980 | A-3 |
| School Records 1976 - 1980 | A-5 |
| School Records Family Information | A-6 |
| Clark v. Townley, No. 85-6601 (4th Cir. 1986) | A-7 |

## ST. TAMMANY PARISH PUBLIC SCHOOLS — Permanent Cumulative Record

Pupil's Name __Rushing__ __David__ __niel__ __Jr.__
(Last) (First) (Middle)

Birth Certificate No. 117-64055368

Place of Birth __Slidell, La.__

Date of Birth __1964__ __11__ __10__   Race __W__   Sex __M__
(Yr.) (Mo.) (Day)

Father __David D. Rushing__        Mother's Maiden Name __Mary Edith Farmer__        Guardian

| Present Mailing Address | Phone | Date | Name of School Now Attending |
|---|---|---|---|
| Rt. 1, Box 235, Pearl River, La. | 70-71 | | Sixth Ward Jr. High School K-9 |
| 760 | | | (-81.3 7/26-) |
| | | | Mr. McDermott    Ricard Keiner |

| Date | S. P | Sm | Name and Address of Last School Attended (Outside the Parish) |
|---|---|---|---|
| | | | Promoted tracing but n/a page & mature, he was promoted. |

### Attendance Record

| | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Session | 70-71 | 71-72 | 72-73 | 73-74 | 74-75 | 75-76 | 76-77 | 76-77 | 77-78 | | | | | | |
| Grade | 1 | 1 | 2 | 3 | 4 | 5 | 6 | 6 | 6 | | | | | | |
| Date Entered | 8/24 | 8-9-71 | 9/2/72 | 8-29 | 8/21 | 2-24 | 9-24 | 1-24 | | | | | | | |
| Date Left | 5/26 | 5-21-72 | 6/1/73 | 5-30 | 5/21 | 5-27 | 5-26 | 5-26 | | | | | | | |
| Days Present | 167 | 148 | 163 | 155 | 168 | 128 | 52 | 53 | | | | | | | |
| Days Absent | 11 | 28 | 15 | 23 | 50 | 50 | 19 | 36 | | | | | | | |
| Times Tardy | | 0 | 0 | 5 | 8 | 0 | 0 | 0 | | | | | | | |
| Passed: Failed | Failed | 3R | SP | P | P | P | transfer | F | | | | | | | |
| Units Earned | | | | | Sc. Path SCC | | | | | | | | | | |

| Date | Name of School Transferred to Or Reason for Withdrawal |
|---|---|
| 4-21-79 | Bogalusa |

### Extra-Curricular Record

| Session | Activity | Honors or Offices | Year(s) |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

### Standardized, Mental Ability and Other Tests

| Age | | | Title of Tests | M. M. or I. Q. | List Subject Areas |
|---|---|---|---|---|---|
| Day | Month | Year | | | |
| | | | Stanford Ach. | | 3/71 Unable to complete |
| | | | SRA    PMA | 10/70 | 85 |
| | | | SRA    PMA | 12/71 | 93 |
| | | | Stanford Ach. | | Arith. 1.5  Read. 1.14 |
| | | 3/73 | Stanford Ach | | Arith. 2.4  Read. 1.8  Total 2.1 |
| 3 | | 74 | Stanford Ach | | arith 1.7  Read 2.0  man __ |
| | 4 | 74 | Oral Lang. | F.66 | 2.7     3.2 |

Date of Graduation 2-79   Rank   Total Credits ___Stanford Ach. absent for testing___   High School Graduate Transcripts

No. in Class

Pupil's Name—Last __Rushing__        First __David__        Middle __Danielson Jr__

A-1

David Bushliffe 7-72        ELEMENTARY SCHOLARSHIP RECORD

| Subjects | 1st Grade 70-71 | Grade 71-72 | 2 Grade 72-73 | 3 Grade 73-74 | 4 Grade 74-75 | 5 Grade 75-76 | 6 Grade 76-77 | Grade | Grade | Grade |
|---|---|---|---|---|---|---|---|---|---|---|
| Agriculture | | | | | 4 | D | E | | | |
| Arithmetic | D-E-E | D | F | F | | | | | | |
| Art | S-S-S | S | S | S | B | S | S | | | |
| Geography | | | | | 4 | D | | | | |
| H'th & Ph. Ed. | S-N-N | S | S | S | S | S | S | | | |
| History | | | | | | | | | | |
| Home Living | | | | | | | | | | |
| Indus. Arts | | C | F | F | 4 | D | E | | | |
| Language | | | | | | | | | | |
| La. Studies | S-S-S | S | S | S | | S | | | | |
| Music | D-D-D | C | S | C | N | D | N | | | |
| Penmanship | D-F-F | F | F | F | D+ | C+ | D+ | | | |
| Reading | D-D-D | S | D | F | 4 | C | E | | | |
| Science | | F | F | F | 4 | | E | | | |
| Spelling | D-D-D | S | | F | remedial | remedial | remedial | | | |
| Soc. St. | | | | | C | D | remedial | | | |
| Conduct | | | | | C | | | | | |
| | | Social | Social | Soc. | Soc. | | F | | | |
| Passed: Failed | Failed | Promotion | Promotion | Promotion | Promotion | | | | | |

HIGH SCHOOL SCHOLARSHIP RECORD

| Grade Subjects | 1st. Sem. Exam. | 1st. Sem. Sem. Av. | 2nd. Sem. Exam. | 2nd. Sem. Sem. Av. | Final Av. | Grade Subjects | 1st. Sem. Exam. | 1st. Sem. Sem. Av. | 2nd. Sem. Exam. | 2nd. Sem. Sem. Av. | Final Av. | Grade Subjects | 1st. Sem. Exam. | 1st. Sem. Sem. Av. | 2nd. Sem. Exam. | 2nd. Sem. Sem. Av. | Final Av. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |

| Grade Subjects | 1st. Sem. Exam. | 1st. Sem. Sem. Av. | 2nd. Sem. Exam. | 2nd. Sem. Sem. Av. | Final Av. | Grade Subjects | 1st. Sem. Exam. | 1st. Sem. Sem. Av. | 2nd. Sem. Exam. | 2nd. Sem. Sem. Av. | Final Av. | Grade Subjects | 1st. Sem. Exam. | 1st. Sem. Sem. Av. | 2nd. Sem. Exam. | 2nd. Sem. Sem. Av. | Final Av. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |

**ST. TAMMANY PARISH PUBLIC SCHOOLS** · Permanent Cumulative Record

Pupil's Name __Rushing, Jr__ __David__ __Daniel__     ᵇ Certificate No. __117-64 055368__
    (Last)        (First)      (Middle)

Place of __Slidell, La.__     Date of Birth __1964__ __11__ __10__   Race __W__  Sex __M__
Birth                         (Yr.)  (Mo.)  (Day)

Father __David Daniel Rushing__   Mother's Maiden Name __Mary Farmer__   Guardian _____

| Present Mailing Address | Phone | Date | Name of School Now Attending |
|---|---|---|---|
| Rt. 1, Box 235, Slidell, La. | 643-2001 | 8/23/78 | Boyet Jr. High |
| " " " " | Neighbor | 10-30-78 | *Sixth Ward* |
|  |  |  |  |

| Date | Name and Address of Last School Attended (Outside the Parish) |
|---|---|
| 77-78 | Stone Jr. High, Wiggins, Miss. |
|  |  |
|  |  |

### Attendance Record

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Session | 78-79 | 78-79 | 78-79 | 79-80 | | | | | |
| Grade | 6 | 6 | 7 | | | | | | |
| Date Entered | 8/28 | 10/30 | 8-27 | | | | | | |
| Date Left | | 5/30 | 5-29 | | | | | | |
| Days Present | | 71 | 65 | | | | | | |
| Days Absent | | 63 | 123 | | | | | | |
| Times Tardy | | | 0 | | | | | | |
| Passed: Failed | | | F | | | | | | |
| Units Earned | | | | | | | | | |

| Date | Name of School Transferred to Or Reason for Withdrawal |
|---|---|
|  |  |
|  |  |
|  |  |

### Extra-Curricular Record

| Session | Activity | Honors or Offices | Year(s) |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

### Standardized, Mental Ability and Other Tests

| Age | | | Title of Tests | M. M. or I. Q. | List Subject Areas |
|---|---|---|---|---|---|
| Day | Month | Year | | | |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

| Date of Graduation | | | Date | High School Graduate Transcripts |
|---|---|---|---|---|
| No. in Class | Rank | Total Credits | | |

Pupil's Name—Last __~~D.~~ Rushing__     First __David__     Middle __Daniel__ , Jr.

78-79-79-80

| Subjects | 6 Grade | 7 Grade | Grade | Grade | Grade | Grade | Grade | Grade | Grade |
|---|---|---|---|---|---|---|---|---|---|
| Agriculture | | 50-F | | | | | | | |
| Arithmetic | D- | F | | | | | | | |
| Art | S | | | | | | | | |
| Geography | D | | | | | | | | |
| H'th & Ph. Ed. | S | 1 | | | | | | | |
| History | | F | | | | | | | |
| Home Living | | | | | | | | | |
| Indus. Arts | | | | | | | | | |
| Language | D | F | | | | | | | |
| La. Studies | | | | | | | | | |
| Music | S | | | | | | | | |
| Penmanship | S | | | | | | | | |
| Reading | D | F | | | | | | | |
| Science | D | F | | | | | | | |
| Spelling | D- | F | | | | | | | |
| | | | | | | | | | |
| Passed: Failed | P(SP) | F | | | | | | | |

## HIGH SCHOOL SCHOLARSHIP RECORD

| Grade_____ Subjects | 1st. Sem. Exam. | 1st. Sem. Sem. Av. | 2nd. Sem. Exam. | 2nd. Sem. Sem. Av. | Final Av. | Grade_____ Subjects | 1st. Sem. Exam. | 1st. Sem. Sem. Av. | 2nd. Sem. Exam. | 2nd. Sem. Sem. Av. | Final Av. | Grade_____ Subjects | 1st. Sem. Exam. | 1st. Sem. Sem. Av. | 2nd. Sem. Exam. | 2nd. Sem. Sem. Av. | Final Av. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |

| Grade_____ Subjects | 1st. Sem. Exam. | 1st. Sem. Sem. Av. | 2nd. Sem. Exam. | 2nd. Sem. Sem. Av. | Final Av. | Grade_____ Subjects | 1st. Sem. Exam. | 1st. Sem. Sem. Av. | 2nd. Sem. Exam. | 2nd. Sem. Sem. Av. | Final Av. | Grade_____ Subjects | 1st. Sem. Exam. | 1st. Sem. Sem. Av. | 2nd. Sem. Exam. | 2nd. Sem. Sem. Av. | Final Av. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |

# ST. TAMMANY PARISH PUBLIC SCHOOLS - Permanent Cumulative Record

Pupil's Name _Rushing_ (Last) ___ (First) _vid Daniel_ (Middle) ___ th Certificate No. _112-6405 5-3_

Place of Birth _Slidell_     Date of Birth _44_ (Yr.) _11_ (Mo.) _10_ (Day)  Race _W_  Sex _M_

Father _Rushing, David Daniels_     Mother's Maiden Name _Mary Thomas_  Guardian ___

| Present Mailing Address | Phone | Date | Name of School Now Attending |
|---|---|---|---|
| 3004 Front St. | 643-5054 | | St. Tammany Sr. High's |

| Date | Name and Address of Last School Attended (Outside the Parish) |
|---|---|
| | |

## Attendance Record

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Session | 76-77 | 78-79 | 79-80 | | | | | | |
| Grade | 6 | 7 | 7 | | | | | | |
| Date Entered | 12-15 | | 8-27 | | | | | | |
| Date Left | 1-21 | 5-30 | 5-29 | | | | | | |
| Days Present | 20 | 71 | 65 | | | | | | |
| Days Absent | 2 | 63 | 115 | | | | | | |
| Times Tardy | | 0 | 0 | | | | | | |
| Passed: Failed | | P(SP) | F | | | | | | |
| Units Earned | Dropped | | | | | | | | |

| Date | Name of School Transferred to Or Reason for Withdrawal |
|---|---|
| 1-20-77 | Bogalusa, La! |

## Extra-Curricular Record

| Session | Activity | Honors or Offices | Year(s) |
|---|---|---|---|
| | | | |

## Standardized, Mental Ability and Other Tests

| Age | | | | M. M. or | List Subject Areas |
|---|---|---|---|---|---|
| Day | Month | Year | Title of Tests | I. Q. | |
| | | | | | |
| | | | | | |

| Date of Graduation | | Total Credits | Date | High School Graduate Transcripts |
|---|---|---|---|---|
| No. in Class | Rank | | | |

Pupil's Name—Last _Rushing_     First _David_     Middle _Daniel_

A-5

CODE:

| A's NAME LAST | FIRST | MIDDLE | | STAMP PARISH AND CENSUS YEAR |
|---|---|---|---|---|
| RUSHING | DAVID | DANIEL | | St. Tammany 65 |

| EX's NAME LAST | FIRST | MAIDEN | | USE THIS SPACE FOR ADDITIONAL FACTS TO |
|---|---|---|---|---|
| Duncan | MARY EDITH | FARMER | | |

LIVING: [X] YES [ ] NO   PLACE: WHITE
LIVING: [X] YES [ ] NO   PLACE: WHITE

'S COMPLETE ADDRESS
Rt. 1, Box 235 - Pearl River, La. (Lock #1 Rd.)

'S COMPLETE ADDRESS IF NOT SAME AS FATHER'S:
ation of home of Mother as of 12-12-79, Edgewood Drive off Covington Highway

PERSON CHILD LIVES WITH (IF NOT WITH OWN PARENTS)
David Rushing + Melanie Foy Rushing      RELATIONSHIP  Fath. w/ Moth.      COMPLETE ADDRESS  Rt. #1, Box 235 - Pearl River, La.

'E of Losing Parish: Indicate in Red Differences in C-3 Heading      *ENUMERATE CHILD ONLY ON C-3 OF OWN FATHER AND MOTHER

'S NAME LAST | FIRST | MIDDLE     For use of enumerating parish.

'S NAME LAST | FIRST | MAIDEN     Approval requested from ____
                                  Comments: ____

ference (For Use of Enumerating Parish)
Hyponville - Melanie Foy

'S NAME LAST | FIRST | MAIDEN
State - Husband of Mary Edith
Fatum Rushing La. (Ida Rushing)

RECORD OF TRANSFERS
AND WITHDRAWALS
(For use of losing parish)
Use to NR or OK

| | NR | OK | PARISH | INITIAL |
|---|---|---|---|---|
| | | | | |

Use for mixed NR's and OK
| | NR | OK | PARISH | INITIAL |
|---|---|---|---|---|
| | | | | |

| Names of Children / LIST CHILDREN IN CHRONOLOGICAL ORDER, BEGINNING WITH THE OLDEST EDUCABLE — SKIP LINES — | MALE/FEMALE | Date of Birth | | | AUTHORITY | Place of Birth | | | HANDICAPS | School Attendance | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | YEAR | MONTH | DAY | | STATE OR COUNTRY | PARISH OR COUNTY | CITY OR TOWN | | NAME OF SCHOOL | GRADE | |
| Mary Edith BC #12338 | F | 59 | 7 | 18 | BC | Miss. | | Picayune | | Fifth Ward Jr. High | 1 | |
| Debbie A. BC#117-60-033-025 | F | 60 | 6 | 22 | BC | La. | W. Tam. | W. Will | | Carolyn Park | | |
| David Daniel 117-65-056-527 | M | 65 | 11 | 10 | | | | Slidell | | | | |
| Judy Lynn BC#117-65-056-104 | F | 65 | 11 | 5 | BC | La. | Wash. | Bogalusa | | Sixth Ward Jr. High | 1 | |
| Tanya Marie BC# 117-71-119-440 | F | 71 | 3 | 21 | BC | La. | Ward | Bogalusa | | Brock El. | K | |

*SEE CENSUS PROCEDURES FOR ___

STATE OF LOUISIANA                22ND JUDICIAL DISTRICT COURT

VS. #109263                       PARISH OF ST. TAMMANY

DAVID RUSHING                     STATE OF LOUISIANA

EXTRACT OF MINUTE ENTRY
THURSDAY, JUNE 28, 1990

The defendant being present in open Court attended by his Counsel, Nicholas J. Trenticosta, and this matter before the Court having been remanded back to this court for a new sentencing hearing, the State at this time informed the Court that they will not seek the Death penalty in this matter; whereupon the Defense all formal delays and requested that the Court imposed sentence, which was done as follows:

DAVID RUSHING, having declared that he is 25 years of age and having been found guilty by a jury of unlawfully violated R.S. 14:30 by murdering Danny Archer in the first degree, Court sentenced the defendant to life in prison at hard labor with the Department of Public Safety and Corrections and said sentence is to be without benefit of probation, parole or suspension of sentence.

A. CLAYTON JAMES
JUDGE DIVISION "E"

6/26/87

# The Supreme Court of the State of Louisiana

STATE EX REL
DAVID RUSHING

VS

NO.  87-KD-2271

FRANK BLACKBURN, WARDEN
LOUISIANA STATE PENITENTIARY

- - - -

In Re:  Rushing, David; Applying for Supervisory and/or
Remedial Writs and Stay of Execution; Parish of
St. Tammany, 22nd Judicial District Court
Div. "E", Number 109-263.

October 22, 1987

Granted.  The district court's order of September 8, 1987
fixing applicant's execution date for November 17, 1987,
is vacated and set aside.  The case is remanded to the
district court, which is ordered to set a new execution
date in a manner consistent with La. R.S.15:567(c).

                    LFC

                    JAD

                    PFC

                    WFM

                    JCW

                    HTL

Supreme Court of Louisiana
October 22, 1987

Clerk of Court
For the Court

TWENTY-SECOND JUDICIAL COURT
PARISH OF ST. TAMMANY
STATE OF LOUISIANA

DOCKET NUMBER: 108-263, DIV. "F"

STATE OF LOUISIANA
(RESPONDENT/DEFENDANT)

-VERSUS-

DAVID RUSHING
(PETITIONER/APPELLANT)

APPLICATION FOR POST-CONVICTION RELIEF

ORIGINAL APPLICATION IN BEHALF OF DAVID RUSHING, PRO SE

RESPECTFULLY SUBMITTED

DAVID RUSHING, #103801
CAMP F DORM #2
LOUISIANA STATE PENITENTIARY
ANGOLA, LOUISIANA 70712
21 AUGUST 2018

EXHIBIT "4"

UNIFORM APPLICATION FOR POST-CONVICTION RELIEF

State ex Rel  David Kushng                    22nd Judicial District Court
        (Petitioner)

Versus                                        Number  109-263

State of Louisiana                            Section "E"
        (Respondent)

Date Filed _____    _____
                                                Deputy Clerk

Please Serve CUSTODIAN DARREL VANNOY, WARDEN and DISTRICT ATTORNEY WARREN MONTGOMERY ST. TAMMANY PARISH STATE OF LOUISIANA, 22ND JUDICIAL DISTRICT COURT STATE OF LOUISIANA

INSTRUCTIONS – READ CAREFULLY

(1)    This petition must be legibly written or typed, signed by the Petitioner and sworn to before a notary public or its notarized officer authorized to administer an oath. Any false statement of a material fact may serve as the basis for a criminal prosecution. All questions must be answered concisely in the proper space on the form. Additional pages are not permitted except with respect to the facts which you rely upon to support your claims for relief. No citation of authorities or legal arguments are necessary.

(2) Only one judgment may be challenged in a single petition except that convictions on multiple counts of a single indictment or information may be challenged in one petition

(3) When the petition is completed, the original must be mailed to the clerk of the district Court in the parish where you were convicted and sentenced.

(4) You must attach an official documentation showing your sentence and the court for which you have been convicted. You may obtain this documentation from the clerk of court of the district Court in the parish where you were sentenced or from the institution where you are confined. If that documentation is not attached, you must allege that steps were taken to obtain it.

(5) Petitions which do not conform to these instructions will be returned with a notation

as to the deficiency.

PETITION

1.  Name and Location of Court which entered the judgment of conviction challenged:

22nd Judicial District Court, Parish of St. Tammany

2.  Date of judgment of conviction:

October 14, 1983

3.  Length of sentence:

Petitioner was to death. Petitioner was re-sentenced on April 6,

1990 to life imprisonment without the benefit of parole,

probation or suspension of sentence

4.  Nature of offense involved (all counts):

First Degree Murder

5.  What was your plea? (check one)

        (a) Not guilty (X)

        (b) Guilty (  )

        (c) Not guilty and not guilty by reason of insanity (  )

    If you entered a guilty plea to one or more counts and not guilty to other
    counts, give details:

        (d) Name and address of the lawyer representing you at your plea (if you
        had no lawyer, please indicate)

        (e) Was the lawyer appointed (  ) or hired (  )?
            (check one)

6.  Kind of trial: (check one)

        (a) Jury (X)

        (b) Judge only (  )

7.  (a) Name and address of the lawyer or lawyers representing you at trial:

        John R. Simmons, Jr. (PD)   Public Defender's Board, 402 N.
        Jefferson Ave., Covington, LA 70433

    (b) Was the lawyer appointed (X) or hired (  )?
        (check one)

8.  Did you testify at the trial? Yes ( X) No (  )

9.  (a) Give the name and address of the lawyer who represented you at

sentence for the conviction being attacked herein

John R. Simmons, Jr., ESQ

(b) Was the attorney appointed ( ) or hired ( )? (check one)

10. Did you appeal from the judgment of conviction? Yes (X) No ( )

11. If you did appeal, give the following information:

(a) Citation, docket number, and date of written opinion by the appellate Court (if known)

State v. Rushing, 464 So.2d 268, (La.1985)

(b) Name and address of lawyer representing you on appeal:

John R. Simmons, Dwight Doskey, John Craft, Craft & Doskey, New Orleans, for the defendant-appellant

(c) Was the lawyer appointed (X) or hired ( )? (check one)

12. Other than a direct appeal from the judgment of conviction and sentence have you previously filed any application for post-conviction relief with respect to this judgment in any state or federal Court? Yes (X) No ( )

13. If your answer to 12 is "yes", give the following information:

(a) (1) Name of Court:22nd Judicial District Court

(2) Nature of proceeding: P.C.R.

(3) Claims raised: (a) whether the sentence was imposed under the influence of passion, prejudice or any other arbitrary factors, and

(b) Whether the evidence supports the jury's finding of a statutory aggravating circumstance, and

(c) Whether the sentence is disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.

(4) Did you receive an evidentiary hearing on your application? Yes ( ) No (X)

(5) Was relief granted or denied? No

(6) Date of disposition

(7) Citation of opinion (if known)

(8) Name and address of lawyer representing you at hearing (if any)

(9) Was the lawyer appointed ( ) or hired ( )? (check one)

(b) As to any second application give the same information:

(1) Name of Court:22nd Judicial District Court

(2) Nature of proceeding  P C R

(3) Grounds raised: Ineffective Assistance of Counsel.

(4) Did you receive an evidentiary hearing on your application?

Yes ( ) No (X)

(5) Was relief granted or denied? Denied

(6) Date of disposition

(7) Citation of opinion (if known)

(8) Name and address of lawyer representing you (if none, so state).

Doyle and Michales, Stephen Patrick Doyle, Esq., 2124 Dupont
Avenue South, Minneapolis, MN 55405

(9) Was the lawyer appointed (X) or hired ( )? (check one)

(e) Have you filed any other applications for post-conviction relief with
respect to the challenged conviction? Yes ( )   No (X)

If "yes", set forth the details (as above) on separate paper and attach.

(d) Did you appeal or seek writs of review from the denial of any post-
conviction application?

(1) First petition, etc  Yes (X)   No ( )

(2) Second petition, etc.  Yes (X)   No ( )

(e) If you did not appeal or seek writs from the denial of any post-conviction
application, explain briefly why you did not.

(f) Name of the lawyer who represented you on appeal from the denial of any
post-conviction application (if none, so state).

(1) First petition: John R. Simmons, Dwight Doskey, John Craft,
Craft & Doskey, New Orleans, for the defendant-appellant

(2) Second petition: Doyle and Michales, Stephen Patrick Doyle,
Esq., 2124 Dupont Avenue South, Minneapolis, MN 55405

CLAIMS FOR RELIEF

State concisely facts supporting your claim that you are being held
unlawfully. If necessary, you may attach extra paper stating additional
claims and supporting facts. Do not argue points of law.

The following is a list of those claims, and only those claims, that may
provide you with grounds for relief.

(1) Your conviction was obtained in violation of the Constitution of the
United States or the State of Louisiana;

(2) The Court exceeded its jurisdiction;

(3) Your conviction or sentence subjected you to double jeopardy;

(4) The limitations on prosecution had expired;

(5) The statute creating the offense for which you were convicted and

sentence is unconstitutional.

(6) The conviction or sentence constitute the ex post facto application of law in violation of the Constitution of the United States or the State of Louisiana.

A REMINDER: THE ABOVE LIST CONTAINS ONLY THOSE CLAIMS THAT YOU MAY RAISE FOR RELIEF. YOU MUST SET FORTH ALL OF YOUR COMPLAINTS ABOUT YOUR CONVICTION IN THIS APPLICATION. YOU MAY BE BARRED FROM PRESENTING ADDITIONAL CLAIMS AT A LATER DATE. Remember that you must state the FACTS upon which your complaints about your conviction are based. MERE CONCLUSORY ALLEGATIONS WILL NOT SUFFICE.

## REPETITIVE APPLICATIONS

The above claims may not provide grounds for relief if any of the following applies to you.

(1)  Unless required in the interest of justice, any claim for relief which you fully litigated in an appeal shall not be considered.

(2)  Any claim of which you had knowledge and inexcusably failed to raise in the proceeding leading to conviction may be denied by the Court.

(3)  Any claim which you raised in the trial Court and inexcusably failed to pursue on appeal may be denied by the Court.

(4)  A successive application may be dismissed if it fails to raise a new or different claim.

(5)  A successive application may be dismissed if it raises a new or different claim that was inexcusably omitted from a prior application.

This application will provide space for you to explain the reasons why you failed to raise your claims in the proceedings leading to conviction, or failed to urge the claim on appeal, or failed to include the claim in a prior application.

## CLAIM I

Claim: New Interpretation of Constitutional Law is Applicable

(b) Supporting FACTS (tell your story briefly without citing cases or law): SEE

ATTACHED MEMORANDUM

(c) List names and addresses of witnesses who could testify in support of your claim. If you cannot do so, explain why:

(d) If you failed to raise this ground in the trial Court prior to conviction, on appeal or in a prior application, explain why:

## CLAIM II

Claim:

(a) Supporting FACTS (tell your story briefly without citing cases or law):

(b) List names and addresses of witnesses who could testify in support of your claim. If you cannot do so, explain why:

(c) If you failed to raise this ground in the trial court prior to conviction, on appeal or of a prior application, explain why:

## CLAIM III

(a) Supporting FACTS (tell your story briefly without citing cases or law):

(b) List names and addresses of witnesses who could testify in support of your claim. If you cannot do so, explain why:

(c) If you failed to raise this ground in the trial Court prior to conviction, on appeal or in a prior application, explain why:

A. Do you have in state or federal Court any petition or appeal now pending as to the judgment challenged? Yes ( ) No (X) If "yes", name the Court

B. Do you have any future sentence to serve after you complete the sentence imposed by the judgment challenged? Yes ( ) No (X)

(1) If so, give name and location of Court which imposed sentence to be served in the future:

(2) Give date and length of sentence to be served in the future:

(3) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
Yes ( )   No (X)

C. If a copy of the Court order sentencing you to custody is not attached, explain why:

WHEREFORE, Petitioner prays that the Court grant Petitioner relief to which he may be entitled.

_____
Signature of Petitioner

_____ ,2018.
Day / Month / Year

APPLICATION FOR APPOINTMENT OF COUNSEL

I am unable to employ counsel to represent me in this matter because I have no assets or funds except:

(Write "None" above if you have nothing, otherwise list your assets including funds in prison accounts.)

_____
Signature of Petitioner

AFFIDAVIT

STATE OF LOUISIANA, PARISH OF WEST FELICIANA,

_____ being first duly sworn says that he has read the foregoing application for post-conviction relief and swears or affirms that all of the information therein is true and correct. He further swears or affirms that he is unable to employ counsel because he has no assets or funds which could be used to hire an attorney except as listed above. (Delete reference to appointment of counsel if inapplicable.)

Signature of Petitioner

SWORN   TO   AND   SUBSCRIBED   before   me   this ___ day

of _____, 201__.

Notary Public or other person authorized to
administer an oath.

TWENTY-SECOND JUDICIAL DISTRICT COURT
PARISH OF ST. TAMMANY
STATE OF LOUISIANA

NO. 109-263                                        DIVISION " E "

STATE EX REL. DAVID RUSHING
(Appellant/Petitioner)

-VERSUS-

DARREL VANNOY, Warden, et al.
(Respondent/Defendant)

MEMORANDUM IN SUPPORT OF APPLICATION
FOR POST-CONVICTION RELIEF

NOW INTO COURT, an undersigned pro se counsel, comes David Rushing, the
petitioner, who files this verified Application for Post Conviction Relief, Writ of Habeas
Corpus, and Evidentiary Hearing, and support of La. C. Cr. P. art. 924, 930 and article
930 8(A)(2), thereof respectfully shows this Honorable Court the following facts as set
forth in this petition. Petitioner reserves the right to supplement this application.

1.     David Rushing was indicted by a Grand Jury of St. Tammany Parish for
First Degree Murder. (See Exhibit A). The name of location of the Court which entered
the judgment of conviction challenged is the Twenty-Second Judicial District Court, for
the Parish of St. Tammany, Louisiana.

2.     The date of judgment of conviction is October 14, 1983.

3.     On November 4, 1983, the Presiding Judge sentenced the petitioner to
death (See Exhibit "B"). Petitioner was re-sentenced on April 6, 1990 to life
imprisonment without the benefit of parole, probation or suspension of sentence.(See
Exhibit C).

4.     The nature of the offense involved is First Degree Murder.

5.     Petitioner plead Not Guilty and was represented at he plea by John
Sammons, whose mailing address is Public Defenders Office, 300 A. North Columbia

Street, Covington, LA 70433. Mr. Simmons was appointed by the Court to represent petitioner.

6.    Trial was had before a jury.

7.    Petitioner was represented at trial by John Simmons, whose mailing address is Public Defenders Office, 300 A, North Columbia Street, Covington, LA 70433. Mr. Simmons was appointed by the Court to represent Petitioner.

8.    Petitioner did testify at trial.

9.    Petitioner was represented at sentencing by John Simmons, whose mailing address is Public Defenders Office, 300 A, North Columbia Street, Covington, LA 70433. Mr. Simmons was appointed by the Court to represent Petitioner.

10.   Petitioner appealed from the judgment of conviction and sentence to the Louisiana Supreme Court, which denied Petitioner's appeal in opinion State v. Rushing, 464 So.2d 268 (La. 1985)

11.   Petitioner was represented on appeal by John Simmons, whose mailing address is Public Defenders Office, 300 A, North Columbia Street, Covington, LA 70433. Mr. Simmons was appointed by the Court to represent petitioner.

12.   Petitioner sought Writs of Certiorari from the United States Supreme Court who denied cert in Rushing v. Louisiana, 106 S. Ct. 2258 (1986), as was a request for rehearing, Rushing v. Louisiana, 106 S. Ct. 3341 (1986)

13.   Petitioner was represented on Certiorari by John Simmons, whose mailing address is Public Defenders Office, 300 A, North Columbia Street, Covington, Louisiana 70433. Mr. Simmons was appointed by the Court to represent Petitioner

### I. JURISDICTION

Jurisdiction is vested into this Honorable Court under Article V, Section 16 of the Louisiana Constitution of 1974

### II. PROCEDURAL HISTORY

Petitioner and Jeffrey Fussell were indicted in St. Tammany Parish, Louisiana on

April 21, 1983, for the first-degree murder of cab driver Danny Archer during the course of an armed robbery in the early morning hours of April 1, 1983. Petitioner's trial by a jury of twelve in St. Tammany Parish began on October 10, 1983. On October 14, 1983, the jury found him guilty of first degree murder and, after a sentencing hearing that same evening, the jury returned a death sentence. Petitioner was sentenced by the presiding judge on November 4, 1983 to Death by Electrocution, of which sentence and conviction Petitioner appealed.

Petitioner's conviction and sentence were affirmed by the Louisiana Supreme Court on direct appeal State v. Rushing, 464 So. 2D 268 (La. 1985). A writ of certiorari was denied by the United States Supreme Court, Rushing v. Louisiana, 106 S. Ct. 2256 (1986), as was a request for rehearing, Rushing v. Louisiana, 106 S. Ct. 3341 (1986).

On October 8, 1986, Petitioner filed his state post-conviction petition in the Twenty-Second Judicial Court, which was immediately denied that same morning without an evidentiary hearing. Later that day, a writ to review the denial was filed by Petitioner in the Louisiana Supreme Court which was also denied the same day.

Petitioner then filed in the United States District Court for the Eastern District of Louisiana his petition for Writ of Habeas Corpus by a person in state custody, accompanied by a motion for evidentiary hearing on October 9, 1986. The same day the district court granted a stay of petitioner's then pending October 10, 1986 execution date. Briefs were subsequently submitted by Petitioner and respondent with respect to petitioner's motion for evidentiary hearing and his petition for writ of habeas corpus.

By Order dated September 1, 1987, the district court denied the petition without and evidentiary hearing. Petitioner subsequently filed a Motion to Reconsider.

The district court denied the Motion to Reconsider on January 7, 1988. Petitioner then filed an Application for Certificate of Probable Cause to Appeal. This Application was granted by the district court on February 5, 1988.

Petitioner filed an appeal to the United States Court of Appeals for the Fifth

Circuit on April 4, 1988.

The United States Court of Appeals for the Fifth Circuit granted petitioner's appeal in regards to his sentence of death and vacated and remanded the case for re-sentencing, in No.88-3682. Petitioner's conviction was left to stand by this Court.

Petitioner was re-sentence to life imprisonment without the benefit of parole, probation or suspension of sentence after the state waived it's right to a sentencing hearing on April 6, 1990.

Petitioner then filed a second application for post conviction relief in the Twenty-Second Judicial District Court on March 18, 1993. On March 29, 1993, Judge Clayton James denied petitioner's application without written reasons.

Petitioner then filed a third application for post conviction relief in the 22nd Judicial District Court on the claims of unconstitutional exclusion of minorities on petitioner's Grand Jury and ineffective assistance for failure to file a Motion to Quash. On June 16, 2007, Judge William J. Burris denied Petitioner's application. Petitioner then sought Writs of Review from the Court of Appeal, Fist Circuit who denied petitioner's Writ of Review on September 18, 1997 in number 97 KW 1610. Petitioner then sought Supervisory and/or Remedial Writs to the Louisiana Supreme Court who also denied petitioner's application for Writs on November 13, 1998, in number 97-KH-3075.

### III. FACTS

A St. Tammany Parish grand jury indicted Petitioner and Jeffrey Russell for the April 1, 1983, first degree murder of Danny Archer a violation of L.S.A.R.S. 14:33 (1979). Through pleadings the state made it known that the murder allegedly occurred in the course of an attempted armed robbery. Following the denial of motions to suppress both physical evidence and inculpatory statements given by both defendants, the state elected to sever the trials. Presumably this move was to eliminate any problems in introducing the inculpatory statements, but the District Attorney also made known at the

motion hearings that the state was negotiating a plea bargain with Jeffrey Fussell. (Vol. II, Tr. of September 7, 1983, at 26) On October 10, 1983, the trial of Petitioner began. Several days later the jury retired to consider the evidence, and returned with a verdict of guilty as charged. At the penalty phase the jury made a binding recommendation that the Petitioner be executed, and he was so sentenced on November 4, 1983. Jeffrey Fussell was subsequently allowed to plead guilty to second degree murder, and has been sentenced to life imprisonment, without benefit of parole, probation or suspension of sentence.

Twenty-Eighth years later, the United States Supreme Court ruled in <u>Robert Leroy McCoy, vs. State of Louisiana</u>, - - - S. Ct. - - - -, 2018 WL 2186174, here in the instant case, Rushing discovered his case should be applied under the same entitlement as McCoy. The new structural error that was discovered in McCoy's case when the Sixth Amendment guarantees a defendant the right to choose the objective of his defense and to insist that his counsel refrain from admitting guilt, even when counsel's experienced -based view that confessing guilt offers the defendant the best chance to avoid the death penalty.

## IV. TIMELINESS, BURDEN AND JURISDICTION

The Louisiana Code Criminal Procedure provides that "no application for post-conviction relief" shall be considered if it is filed more than two years after the judgment of conviction" La. C. Cr. P. art. 930.8(A) However, Code Criminal Procedure article 930.8(A)(2) provides that the claim is asserted in the petition is based upon a final ruling of an appellate court establishing a therefore unknown interpretation of constitutional law and petitioner can establish that this interpretation is retroactively applicable to his case, and the petition is filed within one year of the finality of such ruling.

Prior to August 1, 2014, a petitioner seeking post-conviction relief was under no obligation to exercise due diligence in the uncovering of potential claims.

As set forth below, Petitioner David Rushing respectfully presents to this Court

his violation of a petitioner's Sixth Amendment-secured autonomy ranks as an error of the kind that is called "structural", when present, such an error is not subject to harmless-error review (U. S. Const Amend. 6) Petitioner presents his structural error through "diligence effort in pursuing his Application for Post Conviction Relief in a timely manner."

Accordingly, Petitioner's successive Application is properly before this Court and not subject to any procedure objections.

## V. NEW INTERPRETATION OF LAW

On May 14, 2018, Robert Leroy McCoy, vs State of Louisiana, - - - S. Ct. - - - -, 2018 WL 2186174, Justice Ginsburg held for the Supreme Court:

1.    The Sixth Amendment guarantees a defendant the right to choose the objective of his defense and to insist that his counsel refrain from admitting guilt, even when counsel's experienced-based view is that confessing guilt offers the defendant the best chance to avoid the death penalty.

It is in the interest of Justice this Honorable Court reach the merits of the claims raised in the instant Application.

## VI. SUMMARY OF ARGUMENT OF McCOY:
### United State Supreme Court, 16-8255

After a jury returned three death verdicts in First degree, now represented by new counsel moved for a new trial arguing that the trial court violated his Constitutional Rights by allowing his prior counsel to concede guilt. During guilt phase of his capital trial, the 26th Judicial District Court of Bossier Parish denied motion and sentenced McCoy to Death.

The United States Supreme Court ruled in McCoy, the Sixth Amendment Right guarantees a defendant the right to choose the objective of his defense and to insist that his counsel refrain from admitting guilt, even when counsel's experience-based view is that concession guilt offers the defendant the best chance to avoid the Death Penalty. Petitioner, David Rushing contends his counsel John R. Simmons was in fact similar in nature as English was in McCoy conceding guilt during the guilt phase of his argument.

The defendant does not surrender control entirely to counsel, for the Sixth Amendment, in "granting to the accused personally the right to make defense," speaks of the assistance of counsel, and an assistant. However, an expert is still an assistant. Faretta v. California 422 U. S 806, 819-826, 95 S Ct 2525, 45 L. Ed. 2D 562.

The Court's ineffective assistance of counsel claim under the jurisprudence of Strickland v. Washington 466 U. S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674, does not apply here where the client's autonomy, not counsel's competence is in issue. To gain redress for an attorney error, a defendant ordinarily must show prejudice. See Id. At 692. But here, the violation of McCoy's protected autonomy right was complete when the court allowed counsel to usurp control of an issue within McCoy's sole prerogative. A violation of a defendant's Sixth Amendment secured autonomy has been ranked "structural" error, when present, such an error is not subject to harmless-error review. See e. g. McKaskle v. Wiggins, 465 U. S. 165, 177, n. 8, 104 S. Ct. 944, 79 L. Ed. 2D 122, United States v. Gonzalez-Lopez, 548 U. S. 140, 126 S. Ct. 2557, 165 L. Ed. 2D 409, Waller v. Georgia, 467 U. S. 39, 104 S. Ct. 2210, 81 L. Ed. 2D 31.

Petitioner now files his Application for Post-Conviction Relief, alleging the following claims for relief:

## VII. CLAIMS FOR RELIEF:
ISSUES PRESENTED FOR REVIEW In Claim One: 1 thru 5

(1)   Trial Court erred in allowing prior counsel's admission of defendant's guilt despite defendants objection is structural error.

(2)   Trial Court erred in allowing defense counsel to tell the jury over objective of the District Attorney, who gave them the shot-gun?"

(3)   Trial Court erred in allowing counsel to tell the jury he's presumed to be innocent until proven guilty beyond a reasonable doubt

(4)   Trial Court erred in allowing counsel to tell the jury over objections by the District Attorney so we have to talk about the alternatives aggravating, mitigating circumstances at guilt phase

(5)   Trial Court erred in allowing defense counsel to plead defendant guilty to a lesser included offense during guilt phase of trial to jury over objections by the District Attorney.

## VIII. LAW AND ARGUMENT

Petitioner, David Rushing makes his argument to claims (1) through (5) in a cumulative form. Petitioner was arrested and charged with La. R. S. 14:30 First Degree Murder of Danny Arches. Petitioner and counsel entered a plea of not guilty at his arraignment. Petitioner has maintained his innocence throughout all motions, pretrial hearings as well as at trial. Petitioner testified that he did not kill Danny Arches and he never conceded to any elements of the charged offense at trial.

Ordinarily, under <u>Strickland v. Washington</u>, 466 U. S. at 692, 104 S. Ct. 2052, 80 L. Ed.2d 674 (1984)), a defendant under the standard of the Strickland Standard, he must show deficiency and prejudice. The prejudice standard was shown when the trial court allowed defense counsel Simmons to tell the jury in his opening statement (See Vol. II, T. Tr. Page 24) that he was going to prove that Mr. Sheridan, (a state witness) was in the company of the defendant David Rushing, and the culpability of Mr. Sheridan provided the shot gun for David Rushing, knowing an Armed Robbery was going to take place. (See, Vol. II, T. Tr. Pg. 26). Mr. David R. Paddison, the Assistant District Attorney insisted that Mr. Simmons do not engage in any potential evidence charged acts and adamantly objected to any admission of guilt in the following objection.

<u>Mr. Paddison:</u>   Your Honor I have to object to the usage of any potential evidence in this matter it hasn't been admitted. (See Vol. II, T. Tr. Pg. 26, Line 12).

<u>Judge James:</u> I'll over-rule the objection.

Petitioner argues, at the point of Judge James over-ruling the District Attorney's objection, and allowing Defense Counsel Simmons to tell the jury about the shot-gun (murder weapon), that the state had never introduced showed prejudice and it was unconstitutional and defendant's autonomy was proven at that point the jury formed there verdict of (guilty) Petitioner point out Mr. Sheridan was never called at trial it was the Court's sole duty as trial judge to protect the defendant's Constitutional Rights to a

8

fair trial. A defendant's Sixth Amendment secured autonomy ranks as an error of the kind in the U. S. Supreme Court in McCoy v. Louisiana, - - - S. Ct - - - 2018 W L 2186174, (U. S. May 14, 2018) are structural and not subject to the harmless error review McKnickle v. Wiggins, 465 U. S. 168, at 177 n8, 104 S, Ct 944, 79 L. Ed.2d 122( 1984).

Petitioner assert the trial court erred in allowing Simmons to tell the jury that the defendant David Rushing is guilty, or when he did it, (See, Vol. II, T. Tr. Pg. 69). Defense counsel Simmons, (rather than direct him, I just wanted to qualify a little better if he remembers when he did this) the trial court allowed defense counsel to concede guilt to the jury, that the defendant committed the murder. At this stage of the opening statements to the jury, Simmons was relieving the State of its burden of proving Rushing guilt beyond a reasonable doubt. Citing, Martinez v. Court of Appeal of Cal,Fourth Appellate Dist., 528 U. S. 152, 165, 120 S. Ct. 684, 145 L. Ed.2d 597 (2000) (Scalia, J., concurring in judgment)("Our system of laws generally presumes that the criminal defendant, after being fully informed, know his own best interest and does not need them dictated by the State.")

Petitioner further argues, the trial Judge should have seen a signal of fundamental unfairness to the defendant, by allowing the defense counsel to play seesaw with the jury.

Counsel Simmons, "states it is not incumbent upon the defense to prove the defendant or D. D. David Rushing, to prove he's innocent. He's presumed to be innocent till proven guilty beyond a reasonable doubt (See, Vol. IV, T. Tr. Pg. 211, Line 11-21).

Defense counsel again was allowed by the Court to address the jury by stating, "I don't know whether either one of these two boys killed him (See, Vol. IV, T. Tr. Page 223, Line 21-22)

The Court allowed defense counsel to take full control, pleading the defendant guilty several times during the trial in the following matter:

Mr. Simmons.    I'm not asking you to go beyond the evidence to seek and acquit I'm not asking you to let him walk out of here. (See Vol. IV, T. Tr. Page 229).

These statements again to the jury took the full burden off the prosecutor, in fact no prosecution was needed. The Court allowed defense counsel John Simmons to act as both taking full control, petitioner argues structure error, which is not subject to harmless error review affects the frame work which the trial proceeds as distinguished from a lapse or flow that is simply in the trial process a self.

In present case, Simmons referring to evidence that had not yet been accepted by the Court in behalf of the State

The U. S. Supreme Court with an individuals liberty, and in a capital case life at stake, it is the defendants prerogative to decide on the objective of his defense, in a capital case murder trial. To admit guilt in hope of gaining mercy at the sentencing stage or to maintain his innocence leaving the State to prove his guilt beyond a reasonable doubt

Petitioner contends, in the closing argument, his defense counsel Simmons conceded guilt (See, Vol IV, T. Tr. Pg. 224). So, we have to talk in the alternative the Court allowed defense counsel to tell the jury, over objections by the District Attorney again in the following manner:

Simmons:    Was the man suffering?

Mr. Paddison: District Attorney, I am willing to have to object, he's talking about aggravating and mitigating circumstances it's in proper at this time

Petitioner further argues in McCoy's case, the U. S. Supreme Court held, trial court erred in allowing defense counsels admission of defendants guilt during guilt phase of capital murder trial despite objections. Id. To such admission was structural and the defendant would be afforded a new trial with out any need to show prejudice admission blocked defendant's rights to make fundamental choices about his defense and effects of the admission would be immeasurable. Because, a jury was most certainly

swayed by counsel's concession of guilt

<u>Mr. Simmons</u>: We have to talk in the alternative, was the man suffering?
(See, Vol. IV, T. Tr. Page 224).

<u>Mr. Paddison</u>: I'll have to object, he is talking about aggravating and mitigating
circumstances it's in proper. (See, Vol. IV, T. Tr. Page 224)

The trial court's allowance of Simmons' admission of Rushing's guilt despite Rushing insistent of maintaining his innocence was incompatible with the Sixth Amendment. Because the error was structural, a new trial is the required corrective.

## IX. CONCLUSION

Petitioner submits to this Honorable Court through his Application. The trial court failed to protect the defendant from erroneous conviction, and his fundamental rights to a fair trial. Louisiana has never identified no ethical rule in McCoy's case. The defense counsel to admit guilt of his client, when client pleads not guilty, and testifies I did not kill him I did not touch him, the transcript is clear of the fact, the state made several objections to the Court of defense counsel's remarks to the jury its time to talk of the alternative, was the man suffering at which time Mr. Paddison (State), I object its in proper at this time. <u>Weaver v. Massachusetts</u> 582 U. S. - - -, (2017)(slip op., at 6)(2017). <u>Walker v. Georgia</u>, 467 U. S. 39, 104 S. Ct. 2210, 81 L. Ed.2d 31 and <u>Faretta v. California</u>, 422 U. S. at 819-820, 95 S. Ct. 2525, 45 L. Ed. 2D 562

Petitioner prays this Honorable Court will GRANT his Application and ORDER defendant a new trial.

## X. CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing motion was served by hand delivery, or first class mail to the District Attorney for 31 day of July, 2018.

_____
David Rushing

<u>All Parties Served:</u>
District Attorney's Office

TWENTY-SECOND JUDICIAL DISTRICT COURT
PARISH OF ST. TAMMANY
STATE OF LOUISIANA

NO. 109-263                                           DIVISION "E"

DAVID RUSHING
(Appellant/Petitioner)

-VERSUS-

DARREL VANNOY, Warden, et al.
(Respondent/Defendant)

ORDER

IT IS ORDERED that the District Attorney in and for the Parish of St. Tammany, State of Louisiana, show cause, if any can, why the foregoing Application for Post-Conviction Relief under L.S.A.-C. Cr. P. Articles 924 thru 930.8(A)(2) should not be Granted to the new interpretation of law.

IT IS FURTHER ORDERED that a Habeas Corpus Ad Testificandum issue directing Darrel Vannoy, Warden, Louisiana State Penitentiary, at Angola, Louisiana to remove David Rushing, #103891, and have his body before the above 32nd Judicial District Court, Parish of St. Tammany, in Covington, Louisiana, on the ____ day of _____, 2018, at ____ : ____ .m.

Witnessed in chambers, Covington, Louisiana this ____ day of _____, 2018

_____
Honorable Judge
Criminal District Court

13

TWENTY-SECOND JUDICIAL DISTRICT COURT
PARISH OF ST. TAMMANY
STATE OF LOUISIANA

NO. 109,263                                     DIVISION "E"

DAVID RUSHING
(Appellant/Petitioner)

-VERSUS-

DARREL VANNOY, Warden, et al.
(Respondent/Defendant)

MOTION REQUESTING AN EVIDENTIARY HEARING

NOW INTO COURT, as an undersigned pro se counsel, comes David Rushing,

the petitioner, in the above entitled and numbered cause, and respectfully shows:

Petitioner is entitled to an evidentiary hearing to address his claim on a Structure

Error, that his trial counsel committed and the trial judge's failure to prevent such error.

Question of fact that cannot properly be resolved by dismissal upon the pleadings, La. C.

Cr. P. Art. 928, or a summary disposition, La. C. Cr. P. Art. 929, mandate an evidentiary

hearing for the taking of testimony or other evidence. La. C. Cr. P. art. 930(A). When

there is such structure error the factual issue therefore be accorded a new trial without

any need first to show prejudice. Citing, McCoy v. Louisiana, ---- S. Ct.---- 2018 W L

2186174. The trial court will not be able to resolve the factual dispute without a full

evidentiary hearing. La. C. Cr. P. art. 929, Official Revision Comment. The nature of

asserted Structure Error violations are such that a record must be developed in order for

the trial court to make a meaningful determination of the claim. Such a record cannot be

developed without an evidentiary hearing.

Respectfully submitted,

_____

David Rushing, #103801
Camp F, Dorm -2
Louisiana State Penitentiary
Angola, Louisiana 70712

EXHIBIT "5"

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing motion was served by hand delivery

or first class mail to the District Attorney for <u>31</u> day of July, 2018.

David Rushing

All Parties Served:

District Attorney's Office
Mr. Warren Montgomery, D. A.
Justice Center,
701 N. Columbia St.
Covington, Louisiana 70433

TWENTY-SECOND JUDICIAL DISTRICT COURT
PARISH OF ST. TAMMANY
STATE OF LOUISIANA

NO.109,263                                           DIVISION "E"

DAVID RUSHING
(Appellant/Petitioner)

-VERSUS-

DARREL VANNOY, Warden, et al,
(Respondent/Defendant)

## ORDER

IT IS ORDERED that the District Attorney in and for the Parish of Washington, State of Louisiana, show cause, if any can, why the foregoing Motion Requesting an Evidentiary hearing under L S A- C. Cr. P. Article 930 (A), pursuant to post-conviction relief's Application should not be Granted.

IT IS FURTHER ORDERED that a Habeas Corpus Ad Testificandum issue, directing Darrel Vannoy, Warden, Louisiana State Penitentiary, at Angola, Louisiana, to remove David Rushing, #103801, and have his body before the above 22nd Judicial District Court, Parish of St. Tammany, in Covington, Louisiana, on the ____ day of _____, 2018, at ____:____.m.

Witnessed in chambers, Covington, Louisiana this ____ day of _____, 2018.

_____
Honorable Judge
22nd Judicial District Court

22ND JUDICIAL DISTRICT COURT
PARISH OF ST. TAMMANY
STATE OF LOUISIANA

NO. 109,263 DIVISION "K"

DAVID RUSHING

VS.

STATE OF LOUISIANA

FILED: _____          DEPUTY CLERK: _____

MOTION AND ORDER FOR DISTRICT ATTORNEY TO FILE RESPONSE

Petitioner David Rushing appearing herein personally moves the Court off an Application for Post-Conviction Relief filed on July 31, 2018.

1.    The Clerk of Court's office, Mrs. Rachelle Euelen, Deputy Clerk notified Mr. Rushing on the Court's ordering the State to file a response in the matter, State v. David Rushing, Case #109,263-1

2.    Petitioner moves this Court to issue an Order upon the District Attorney's Office Ordering a Response Within Ten days or Deem Petitioner be Ordered under Article 930 of the Louisiana Code Criminal Procedure to attend the Court's order for an Evidentiary Hearing to resolve this matter based off a New Interpretation of Law.

WHEREFORE, considering the facts David Rushing has presented he prays that this Honorable Court will grant an evidentiary hearing under article 930 of the Louisiana Code Criminal Procedure to the pending post-conviction relief application upon the new interpretation of law

Respectfully submitted

David Rushing #103804
Camp F, Dorm -2
Louisiana State Penitentiary
Angola, Louisiana 70712

EXHIBIT "G"

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing motion was served by hand delivery

or first class mail to the District Attorney for 29 day of April  2019.

David Rushing

All Parties Served:

District Attorney's Office
Warren Montgomery, D.A.
22nd Judicial District Court
Parish of St  Tammany
Justice Center
701 N. Columbia Street
Covington, Louisiana 76433

22ND JUDICIAL DISTRICT COURT
PARISH OF ST. TAMMANY
STATE OF LOUISIANA

NO. 189263 DIVISION "E"

DAVID RUSHING

VS.

STATE OF LOUISIANA

FILED: _____            DEPUTY CLERK: _____

ORDER

Considering the foregoing motion:

IT IS HEREBY ORDERED that the District Attorney for the Parish of St. Tammany show cause on the ____ day of _____, 201__, at _____ o'clock, __.m., why the Motion herein requested should not be granted.

Covington, Louisiana, this ____ day of _____, 201__.

_____
JUDGE



*Melissa R. Henry* Clerk of Court

22nd Judicial District Court

Parish of St. Tammany

P.O. BOX 1090 ~ Covington, LA 70434 ~ (985) 809-8700

May 17, 2019

David Rushing #103801
Camp F - Dorm 2
Louisiana State Penitentiary
Angola, Louisiana 70712

RE:   |Division E
      STATE OF LOUISIANA
      Vs. #|109263-1
      |DAVID D RUSHING

Dear Sir/Madam:

Enclosed please find a certified copy of the Court's Order for Response filed in the above referenced matter signed by The Honorable William H. Burris on May 17, 2019.

Very Truly Yours,

Amy Novotny Deputy Clerk

EXHIBIT "7"

22ND JUDICIAL DISTRICT COURT FOR THE
PARISH OF ST. TAMMANY

NO. 109,263

DOCKET "E"

STATE OF LOUISIANA

VERSUS

DAVID RUSHING

FILED: May 17, 2019 _____ _____
DEPUTY CLERK

ORDER FOR RESPONSE

IT IS ORDERED that the Office of the District Attorney respond within 30

days to the Motion and Order for Response filed by defendant on May 3, 2019.

Signed this 17th day of May, 2019 in Covington, Louisiana.

_____
WILLIAM H. BURRIS
DISTRICT JUDGE, DIVISION "E"

A TRUE COPY

_____
D. CLERK 22nd - U.S. DIST COURT
ST. TAMMANY PARISH, LA

EXHIBIT "E"

22ND JUDICIAL DISTRICT COURT
PARISH OF ST. TAMMANY
STATE OF LOUISIANA

NO. 109,263 DIVISION "E"

DAVID RUSHING

VS.

STATE OF LOUISIANA

FILED: _____          DEPUTY CLERK: _____

_____

MOTION TO GRANT RELIEF THAT'S REQUESTED
UNDER AN APPLICATION FOR POST CONVICTION RELIEF

_____

Petitioner, David Rushing filing the above motion, before this Hon. Court pro-se:
And requesting this Hon. Court to Grant relief requested in Petitioner's Application for
Post-Conviction Relief timely filed on July 31, 2018.

The Clerk of Court's Office, Mrs. Rashelle Eiselen, Deputy Clerk did notify the
Petitioner about his application had been received and filed with the Hon. Judge
Childress' Issuing an Order to the St. Tammany Parish District Attorney's office to
respond with an answer.

For the next 300 days the district attorneys office has ignored the Court's Order to
respond failing to file a timely response.

On April 29, 2019, Petitioner filed with this Hon Court a motion to order again for
the St. Tammany Parish District Attorneys office to respond. On May 17, 2019 the
Honorable Judge Burris of the 22nd Judicial District Court signed and Granted
Petitioner's motion that was filed by petitioner on April 29, 2019 Ordering the District
Attorney's office to respond within 30 days.

Petitioner respectfully points out that the district attorney's office has failed to
comply with this Court's Order dated May 17, 2019, attached copy of the Court, as of
this date July 1, 2019 43 days have passed or 30 working days have passed with out a
response or answer from the District Attorney's office now in violation of the Court's

Order dated May 17, 2019. And any answer or response should be considered waived by this Hon. Court.

CONCLUSION

WHEREFORE, Petitioner David Rushing Case #109-263-1, now respectfully request this Honorable Court to Grant Petitioner David Rushing request in his Application for Post-Conviction Relief, to wit a new trial.

Respectfully submitted,

David Rushing, #103801<br>
Camp F, Dorm -2<br>
Louisiana State Penitentiary<br>
Angola, Louisiana 70712

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing motion was served by hand delivery or first class mail to the District Attorney for 1st day of July, 2019.

David Rushing

All Parties Served:

District Attorney's Office<br>
Warren Montgomery, D. A.<br>
22nd Judicial District Court<br>
Parish of St. Tammany<br>
Justice Center<br>
701 N. Columbia Street<br>
Covington, Louisiana 70433

22ND JUDICIAL DISTRICT COURT
PARISH OF ST. TAMMANY
STATE OF LOUISIANA

NO. 109,263 DIVISION "E"

DAVID RUSHING

VS.

STATE OF LOUISIANA

FILED: _____                    DEPUTY CLERK: _____

ORDER

Considering the foregoing motion:

IT IS HEREBY ORDERED by this Hon. Court of the 22nd Judicial District Court, St. Tammany. The Petitioner David Rushings Application for Post-Conviction Relief is hereby Granted on this ___ day of_____, 201__, to wit a New Trial is Ordered by this Hon. Court.

Covington, Louisiana, this___day of _____, 201___.

_____
JUDGE

TWENTY-SECOND JUDICIAL DISTRICT COURT
FOR THE PARISH OF ST. TAMMANY
STATE OF LOUISIANA

NO. 109263-I                                          DIVISION "E"

STATE OF LOUISIANA

VERSUS

DAVID RUSHING

FILED: _____          _____
                                                    DEPUTY CLERK

### STATE'S RESPONSE TO DAVID RUSHING'S
### APPLICATION FOR POST-CONVICTION RELIEF

MAY IT PLEASE THE COURT:

This case involves a first-degree murder committed in 1983. The petitioner, David Rushing, seeks a new trial on the theory that the United States Supreme Court's decision in McCoy v. Louisiana, 138 S. Ct. 1500 (2018) applies retroactively and applies to him.

Rushing's argument lacks merit: McCoy does not apply retroactively, and even if it did, he would not fall within the class of persons entitled to the benefit of McCoy.

PERTINENT FACTS AND PROCEDURAL HISTORY

I.

The petitioner, David Rushing, was convicted of first-degree murder and sentenced to death in October 1983. His conviction and sentence were subsequently affirmed on appeal. State v. Rushing, 464 So.2d 268 (La. 1985), cert. denied, 476 U.S. 1153 (1986). Later, his sentence of death was set aside during federal habeas corpus proceedings. Rushing v. Butler, 868 F.2d 800 (5th Cir. 1989). He was re-sentenced to life without parole in 1990. His first four applications for post-conviction relief—filed in 1986, 1993, 1997, and 1999—have all been denied.

Rushing has now filed a fifth application for post-conviction relief, relying on the following exception to the period of limitations:

> The claim asserted in the petition is based upon a final ruling of an appellate court establishing a theretofore unknown interpretation of constitutional law and petitioner establishes that this interpretation is retroactively applicable to his case, and the petition is filed within one year of the finality of such ruling.

La. C.Cr. P. art. 930.8(A)(2).

The State does not allege that the petition is untimely or otherwise procedurally barred.

II.

The Louisiana Supreme Court, in affirming the petitioner's conviction, summarized the testimony adduced at trial as follows:

Between 3:30 and 4:00 a.m. on April 1, 1983, Lloyd Jackson, a route salesman, had completed his deliveries and was driving home when he discovered a cab stopped beside the road with its motor running, lights on, doors shut and its windows rolled up. Jackson found Danny Archer behind the steering wheel leaning over to the passenger side covered with blood. Jackson went to a nearby house and called the police.

When the police arrived on the scene, they found that Archer had been shot in the back and that he had been repeatedly struck on the top of the head. The interior of the car was covered with blood. There was so much blood splattered about the car that the investigating officers initially believed that more than one victim had been killed. The police found a single expended shotgun shell three feet from the cab driver's door. A blood saturated black glove was discovered in the door jam on the driver's side of the car. On the floorboard near the gas pedal, the officers found a portion of a broken wooden gun stock. About 80 feet behind the cab, the officers found a wallet which contained Jeffrey Fussell's driver's license.

This evidence led the officers to Jeffrey Fussell's trailer. Fussell who had been asleep on the couch near the door invited the officers inside where they discovered David Rushing asleep in one of the rooms. On the floor near Rushing's bed, there were thongs, jeans and a black jacket covered with blood stains. When Rushing was awakened, the officers found that his feet were covered with blood. No blood was found on Fussell.

Both men were placed under arrest and a short time later, Fussell led the officers to the place where the shotgun which had been used to kill Archer had been discarded. Approximately 5 hours later, David Rushing voluntarily gave a [recorded] statement to the officers describing the events leading up to the murder of Danny Archer.

In this confession Rushing stated that he and Fussell had taken blue Valiums earlier in the evening and had decided to go to Slidell to rob a gas station. When they found the gas station was closed, they decided to call a cab and rob the driver. In discussing who would actually rob the cab driver, Rushing stated that Fussell had told him that he had the nerve to pull the "cap" (the trigger). However, Rushing related that he then decided he would do it because "I didn't figure I had the nerve."

Rushing stated that he was wearing thongs, jeans, black gloves and Fussell's jacket when he entered the cab and that he had a sawed-off shotgun hidden under his clothing. Rushing told Archer to drive to the Ponderosa Subdivision and Fussell followed in Rushing's car. Rushing stated that at some point along the way he thought Archer was reaching for a gun under the seat. Rushing placed the shotgun to the back of the driver's seat and shot Archer in the right side of the lower back. Rushing stated that Archer then turned around and began swinging at him. Although he denied hitting Archer with the shotgun, Rushing admitted he fought to keep Archer off of him. Thereafter, Fussell who had driven up behind the cab, picked up Rushing and drove away from the murder scene.

At trial, the defendant took the stand and recanted his confession. He claimed that at the time of the murder and confession he was intoxicated

from taking barbiturates and only remembered portions of the evening. Rushing testified that he bought drugs from Leslie Sheridan on the afternoon of March 31, 1983. At approximately 8:00 p.m., Rushing and Fussell drove to the parking lot of the Charter Oak Church in Pearl River. Fussell melted down the drugs and injected them into Rushing's arm. It was then that they decided to drive to Slidell and rob a gas station. To support this testimony the defendant called Nancy Cooper, a newspaper carrier, who testified that she discovered the two men stranded in a ditch about 3:30 a.m. which would have been about an hour after the murder. She stated that she conversed with both men and described them as "feeling good" which she had interpreted to be a sign of alcohol intoxication.

The State introduced the results of tests on a blood sample taken from the defendant at 8:25 a.m. on the morning of the murder which indicated that only trace amounts of Valium were present in his blood. Pathologist Charles Crumpler testified that these trace findings precluded the possibility of any big "fix" of Valium the evening before and ruled out the possibility that the defendant was so intoxicated by the Valium that he could not have formulated the specific intent to murder Archer.

The State presented testimony of a police officer who had stopped the two men about two hours before the murder to tell them the car's brake lights were out. The officer testified that Rushing did not appear to be intoxicated. The State also called Officer Phil Singletary who related that he had seen the defendant at the Oasis Lounge at approximately 3:45 a.m. when he was conducting a bar check. He exchanged greetings with Rushing at that time and stated that Rushing did not appear to be intoxicated.

Scientific tests were performed on the defendant's clothes and on the swabbings taken from the blood on the defendant's feet and each item contained blood of the same type as the victim's. The tests also established that the victim was repeatedly struck on top of the head with the butt of a shotgun as the hairs and blood found embedded in the shotgun were identical to the victim and the broken wooden piece found on the floorboard of the cab fit the end of the shotgun in question. The pathologist who conducted the victim's autopsy testified that the shotgun blast had entered the lower portion of Archer's abdominal cavity, collapsed his lung and perforated his liver. He also found five lacerations from 1½ inches to 3 inches in length, on the rear portion of his head. Three of the blows fractured Archer's skull. He stated that absent the blows to the head, the victim would have bled to death in no more than 45 minutes.

State v. Rushing, 464 So.2d 268, 271-272 (La. 1985).

The audio recorded statement of David Rushing, discussed above, was introduced at trial as Exhibit S-49 and played for the jury. Transcript – October 11, 1983, pp. 151-154.

THE PETITIONER'S CLAIM

The petitioner argues that he is entitled to a new trial based upon McCoy v. Louisiana, 138 S. Ct. 1500 (2018). In that case, the Supreme Court held that "a defendant has the right to insist that counsel refrain from admitting guilt, even when counsel's experienced-based view is that confessing guilt offers the defendant the best chance to avoid the death penalty."

THE FACTS OF THE MCCOY CASE

In McCoy v. Louisiana, 138 S.Ct. 1500 (2018), the Supreme Court explained the case before it as involving a defendant who "vociferously insisted that he did not engage in the charged acts and adamantly objected to any admission of guilt." 138 S. Ct. at 1505. Specifically, when McCoy learned that his counsel intended to conceded his guilt, he "sought to terminate [his attorney]'s representation." 138 S.Ct. at 1506. When the trial court would not let him terminate counsel's representation, he said "I have a right to represent myself"—but the trial court cut him off. State v. McCoy, 14-1449 (La. 10/19/16), 218 So.3d 535, 559. During opening statements, when counsel "told the jury there was 'no way reasonably possible' that they could hear the prosecution's evidence and reach 'any other conclusion than Robert McCoy was the cause of these individual's death,' " McCoy "protested" that his attorney was "selling [him] out." McCoy, 138 S. Ct. at 1506. And after the verdict, he "moved for a new trial, arguing that the trial court violated his constitutional rights by allowing [counsel] to concede [that he] committed three murders." Id. at 1506-1507.

The McCoy majority—in response to the dissent's assertion that the facts of the case were "rare" and "unlikely to recur"—said that "the Louisiana Supreme Court parted ways with three other State Supreme Courts that have addressed this conflict in the past twenty years." The majority characterized those cases as follows: "In each of the three cases, *as here*, the defendant repeatedly and adamantly insisted on maintaining his factual innocence despite counsel's preferred course." McCoy, 138 S. Ct. at 1510 (emphasis supplied). A review of these three cases—is contained in the margin—illuminates what the Supreme Court meant by a defendant who "vociferously" or "repeatedly and adamantly" insisted on maintaining his factual innocence.[1]

---

[1]   In People v. Bergerud, 223 P.3d 686 (Colo. 2010), counsel conceded the defendant's guilt during opening statements. After opening statements, the defendant requested new counsel. When that motion was denied, the defendant elected to proceed pro se rather than permit counsel to admit his guilt. Id. at 690-691.

In State v. Carter, 14 P. 3d 1138 (Kan. 2000), defense counsel brought the disagreement between the attorneys and the client to the attention of the trial court prior to trial. The trial court told the defendant he could proceed with counsel or proceed pro se; the defendant did not like either option and, as between the two options, selected to be represented by counsel. However, during the state's case-in-chief, he asked his attorney to "make a record of" his disagreement with trial counsel's strategy—and did. Id. at 432-433. And during defense counsel's closing arguments, when defense counsel framed the issue as whether or not the defendant's actions were premeditated, the defendant had an outburst to the jury, saying: "How the hell can he say that? That's bull shit. This is my lawyer. Shit. You might as well find me fucking guilty already." Id. at 433.

Finally, in Cooke v. State, 977 A.2d 803 (Del. 2009), defense counsel brought the disagreement between the attorneys and the client to the attention of the trial court prior to trial. The trial court declined to intervene. The prosecution unsuccessfully sought mid-trial appellate review to obtain clarification on the issue. 977 A.2d 803, 812-818 & n. 7. Thereafter, the defendant engaged in several outbursts in the presence of the jury, in which he objected to his counsel's failure to contest his guilt. He also testified, and during his testimony he told the jury (among other things) that his attorneys were "railroad[ing] me" and that he tried to fire his attorneys but the judge wouldn't let him. Id. at 821-839.

## ADDITIONAL FACTS PERTINENT TO DAVID RUSHING'S CASE

A review of the trial proceedings indicates that counsel did not initially concede the defendant's guilt; it was only after the defendant's testimony that counsel conceded guilt. Specifically, before trial, defense counsel filed an alibi notice alleging that "he was in the Oasis Lounge on U.S. 11 Highway near the corner of 3rd Street in the Alton area of St. Tammany Parish." Supplemental Answer to State's Request for Alibi Notice (filed 10/10/1983). And at the beginning of the trial, during opening statements, defense counsel informed the jury during that the petitioner was "not in the subdivision [where the homicide occurred] but that he was with a deputy sheriff for the Parish of St. Tammany, by chance, I'm sure, in the Oasis Bar." Transcript – October 11, 1983, pp. 27-28.

The petitioner testified, and under cross-examination he admitted to being present at the time of the offense. See Transcript – October 13, 1983, pg. 141, lines 25-27 ("Q: You deny participating in the robbery, is that right? A: I was there.").

Following this testimony, and during closing arguments, defense counsel stated: "I'm not asking you to acquit this man, because *he's admitted from that stand that he was there.*" Transcript – October 13, 1983, pg. 229, lines 6-10 (emphasis supplied). In light of this testimony from the defendant during the trial, counsel sought to impress the jury with his candor by acknowledging that that asking for an acquittal would "insult your integrity." Id., pg. 231, lines 15-20.

Rushing did not complain during the trial that this concession was made without his consent. See Transcript – October 13, 1983, pp. 238-299 (transcript of proceedings occurring subsequent to counsel's closing argument); Transcript – October 14, 1983.

Rushing also did not complain *after the trial* that the concession was made without his consent. It was not raised by him in his motion for new trial. See Motion for New Trial (filed 11/02/1983). It was not raised by him in argument during any court proceeding. See Transcript – November 2, 1983; Transcript – November 4, 1983. It was not raised as an assignment of error on appeal. State v. Rushing, 464 So.2d 268 (La. 1985). And finally, although Rushing alleged in his initial application for post-conviction relief that the strategy of conceding guilt was a bad trial strategy, he never alleged that he *personally disagreed with or disapproved of* that strategy. See Application for Post-Conviction Relief (filed 10/08/1986), pp. 6-11.

LAW AND ARGUMENT

1.  <u>McCoy v. Louisiana</u> does not apply retroactively.

    A.   Overview of the applicable legal framework.

This case is initially about the retroactive application of new Supreme Court decisions.

The determination of whether new decisions apply retroactively is governed by <u>Teague v. Lane</u>,

489 U.S. 288 (1989).

<u>Teague</u> established a general rule that "new constitutional rules of criminal procedure will

not be applicable to those cases which have become final before the new rules are announced."

489 U.S. at 310. There are two exceptions: first, for "substantive rules" that place "certain kinds

of primary, private individual conduct beyond the power of the criminal law-making authority to

proscribe," <u>id</u>. at 311; and second, for "watershed rules of criminal procedure" that "implicate the

fundamental fairness of the trial" and "without which the likelihood of an accurate conviction is

seriously diminished," <u>id</u>. at 311-314.

The first exception to <u>Teague</u>'s general rule of non-retroactivity applies to cases which

decriminalize conduct that was previously considered criminal,[2] and has been extended to cases

which prohibit a certain type of punishment for a certain class of offender:

> Although <u>Teague</u> read this [first] exception as focusing solely on new rules
> according constitutional protection to an actor's primary conduct, Justice
> Harlan did speak in terms of substantive categorical guarantees accorded by
> the Constitution, regardless of the procedures followed. This Court
> subsequently held that the Eighth Amendment, as a substantive matter,
> prohibits imposing the death penalty on a certain class of defendants
> because of their status, <u>Ford v. Wainwright</u>, [477 U.S. 399 (1986)]
> (insanity), or because of the nature of their offense, <u>Coker v. Georgia</u>, 433
> U.S. 584 (1977) (rape) (plurality opinion). In our view, a new rule placing a
> certain class of individuals beyond the State's power to punish by death is
> analogous to a new rule placing certain conduct beyond the State's power to
> punish at all. In both cases, the Constitution itself deprives the State of the
> power to impose a certain penalty.

<u>Penry v. Lynaugh</u>, 492 U.S. 302, 329-330 (1989).

The second exception to <u>Teague</u>'s general rule of non-retroactivity, for "watershed" rules,

has been explained as follows: "In order to qualify as watershed, a new rule must meet two

requirements. First, the rule must be necessary to prevent an impermissibly large risk of an

inaccurate conviction. Second, the rule must alter our understanding of the bedrock procedural

---

2  <u>See</u>, <u>e.g.</u>, <u>Texas v. Johnson</u>, 491 U.S. 397, 414 (1989) (First Amendment forbids states from punishing an
individual for burning the American flag); <u>Lawrence v. Texas</u>, 539 U.S. 558, 578 (2003) (Fourteenth Amendment
forbids states from making illegal private, homosexual sodomy between consenting adults).

elements essential to the fairness of a proceeding." Whorton v. Bockting, 549 U.S. 406, 417-418 (2007) (citations omitted).

There is only one case that has ever qualified as a "watershed" rule of criminal procedure: Gideon v. Wainwright, 372 U.S. 335 (1963), which established an affirmative right to counsel in felony cases. See Bockting, *supra*, 549 U.S. at 417-418 (collecting cases, and noting that the exception is "extremely narrow" and that "it is unlikely that any such rules have yet to emerge").

Finally, the Supreme Court has explained: "The standard for determining whether an error is structural is not coextensive with the second Teague exception, and a holding that a particular error is structural does not logically dictate the conclusion that the second Teague exception has been met." Tyler v. Cain, 533 U.S. 656, 666-667 (2001) (citation omitted).

      **B.**    McCoy v. Louisiana **established a new rule.**

The first question in the Teague analysis is whether the rule is a "new" rule. A rule is new it is not "*dictated*" by precedent existing at the time the defendant's conviction became final." Teague v. Lane, 489 U.S. 288, 301 (1989) (emphasis in original).

The precedent existing at the time Rushing's conviction became final was the Supreme Court's general statement that:

> [T]he day-to-day conduct of the defense rests with the attorney. He, not the client, has the immediate and ultimate responsibility of deciding if and when to object, which witnesses, if any, to call, and what defenses to develop. Not only do these decisions rest with the attorney, but such decisions must, as a practical matter, be made without consulting the client. Only such basic decisions as whether to plead guilty, waive a jury, or testify in one's own behalf are ultimately for the accused to make.

Wainwright v. Sykes, 433 U.S. 72, 93 & n. 1 (1997) (Burger, C.J., concurring).

Indeed, on habeas corpus review the U.S. Fifth Circuit Court of Appeal rejected the petitioner's allegation of ineffective assistance of counsel based upon counsel's concession of the petitioner's guilt. See Rushing v. Butler, 868 F.2d 800, 805 (5th Cir. 1989). At that time, and for decades thereafter, the question whether to concede *some* of the elements of an offense but not *all* of them was considered to be a matter of trial strategy ("what defenses to develop"). See, e.g., Haynes v. Cain, 298 F.3d 375 (5th Cir. 2002) (en banc); Florida v. Nixon, 543 U.S. 175 (2004); State v. Tucker, 181 So.3d 590, 620-621 (La. 2015).

It was not until McCoy v. Louisiana was decided in 2018 that the client gained the authority to veto trial counsel's decision of trial strategy. McCoy created a new rule.

### C.      Teague's first exception does not apply.

The first Teague exception applies to cases which decriminalize conduct that was previously considered criminal, and to cases which prohibit a certain type of punishment for a certain class of offender. The McCoy decision did not decriminalize murder, and it did not prohibit any class of defendants from any particular type of punishment.

The first Teague exception therefore does not apply to the holding of McCoy.

### D.      Teague's second exception does not apply.

The second Teague exception is for "watershed rules of criminal procedure." To qualify as a watershed rule, "the rule must be necessary to prevent an impermissibly large risk of an inaccurate conviction." Whorton v. Bockting, supra.

The holding of McCoy was announced its holding as follows: "We hold that a defendant has the right to insist that counsel refrain from admitting guilt, even when counsel's experienced-based view is that confessing guilt offers the defendant the best chance to avoid the death penalty." McCoy, 138 S. Ct. at 1505. The basis of the Court's reasoning was the individual defendant's right to autonomy. See id. at 1509-1510. In finding counsel's usurpation of the client's autonomy to be "structural" in nature, the Court reasoned that the error it found was structural precisely because "the right at issue *is not designed to protect the defendant from erroneous conviction* but instead protects some other interest," namely, "the fundamental legal principle that a defendant must be allowed to make his own choices about the proper way to protect his own liberty." McCoy, slip op. at 12, 138 S.Ct. at 1511 (emphasis supplied; citation omitted).[3]

To qualify as a "watershed" rule of criminal procedure under Teague, however, the rule "must be necessary to prevent an impermissibly large risk of an inaccurate conviction." Because the McCoy rule is not designed to *protect* the defendant from erroneous conviction, it is not "*necessary* to prevent an impermissibly large risk of an inaccurate conviction."

The second Teague exception therefore does not apply to the holding of McCoy.

---

3   In Tyler v. Cain, 533 U.S. 656, 666-667 (2001), the Supreme Court stated: "A holding that a particular error is structural does not logically dictate the conclusion that the second Teague exception has been met."
    McCoy is a prime example of why this is so. The second Teague exception applies to rules which are "necessary to prevent 'an impermissibly large risk' of an inaccurate conviction" and some rules, like the one at issue in McCoy, are not designed to protect the defendant from erroneous conviction.

2.    Even if McCoy v. Louisiana does apply retroactively, David Rushing is not entitled to relief.

As noted above (pp. 4-5), the McCoy case arose out of a peculiar set of facts: "the defendant vociferously insisted that he did not engage in the charged acts and adamantly objected to any admission of guilt." McCoy v. Louisiana, 138 S.Ct. 1500, 1505 (2018).

Those facts are part and parcel of the Court's holding for two reasons. First, the Supreme Court held in an earlier case, Florida v. Nixon, 543 U.S. 175 (2004), that trial counsel need not first obtain a defendant's express approval in order to adopt a strategy involving conceding a defendant's guilt. Second, the Supreme Court in McCoy distinguished Nixon as follows:

> Nixon complained about the admission of his guilt *only after trial*. McCoy, in contrast, opposed [his attorney's] assertion of his guilt *at every opportunity, before and during trial, both in conference with his lawyer and in open court.*

McCoy, 138 S.Ct. at 1509 (emphasis supplied).

In this case, Rushing can be excused for not objecting to counsel's strategy *before the trial* because, as of the time the trial began, counsel was pursuing an alibi defense. It was only after Rushing's trial testimony—which sank counsel's alibi defense—that counsel conceded Rushing's guilt of second-degree murder in an attempt to convince the jury not to return a verdict of guilty of first-degree murder (because if the jury returned a verdict of second-degree murder the petitioner would not have been eligible for the death penalty).

Rushing did not complain *during the trial* that this concession was made without his consent. See Transcript – October 13, 1983, pp. 238-299 (transcript of proceedings occurring subsequent to counsel's closing argument); Transcript – October 14, 1983.

Rushing also did not complain *after the trial* that the concession was made without his consent. It was not raised by him in his motion for new trial. See Motion for New Trial (filed 11/02/1983). It was not raised by him in argument during any court proceeding. See Transcript – November 2, 1983; Transcript – November 4, 1983. It was not raised as an assignment of error on appeal. And finally, although Rushing alleged in his initial application for post-conviction relief that the strategy of conceding guilt was a bad trial strategy, he never alleged that he *personally disagreed with* or *disapproved of* that strategy. See Application for Post-Conviction Relief (filed 10/08/1986), pp. 6-11.

The court record simply contains no evidence that David Rushing insisted that counsel refrain from admitting his guilt—much less that he did so "adamantly" or "vociferously." Therefore, even if McCoy applies retroactively, Rushing is not entitled to relief.

3.      **The petitioner's application for post-conviction relief is without merit.**

Rushing is entitled to post-conviction relief only if he shows that the existence "final ruling of an appellate court establishing a theretofore unknown interpretation of constitutional law" (which he has shown) and also that *"this interpretation is retroactively applicable to his case."* La. C.Cr. P. art. 930.8(A)(2) (emphasis supplied).

For the reasons explained in § 1 above, McCoy v. Louisiana is not retroactively applicable to the Rushing's case—it is a new rule, new rules only apply retroactively in two limited sets of circumstances, and McCoy does not fall within either of those two limited sets of circumstances.

Moreover, for the reasons explained in § 2, above, the petitioner would not benefit from the rule of McCoy v. Louisiana if it did apply retroactively.

The petitioner is therefore not entitled to post-conviction relief.

### CONCLUSION AND PRAYER

David Rushing is not entitled to post-conviction relief. The State respectfully prays that his application for post-conviction relief be DENIED.

Respectfully submitted,

*Matthew C L*
Matthew Caplan, LSBA #31650
Assistant District Attorney

### CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of August, 2019, I mailed a copy of this pleading to the petitioner by first-class mail, postage pre-paid, at the following address:

David Rushing, # 103801
Louisiana State Penitentiary
17544 Tunica Trace
Angola, LA 70712

*Matthew C L*
Matthew Caplan, LSBA #31650
Assistant District Attorney

EXHIBIT "10"

TWENTY-SECOND JUDICIAL DISTRICT COURT
PARISH OF ST. TAMMANY
STATE OF LOUISIANA

NO. 109,263 DIVISION "E"

DAVID RUSHING

VS.

STATE OF LOUISIANA

FILED: _____         DEPUTY CLERK: _____

PETITIONER'S MOTION ADDRESSES
THE STATE'S LATE RESPONDED ANSWER

Petitioner David Rushing filed an Application for Post Conviction Relief, with this Hon. Court on or about August 4, 2018. This motion is filed in behalf of the above entitled motion on the following grounds:

Petitioner seeks a new trial pursuant to the United States Supreme Court decision in McCoy v. Louisiana, 138 S. Ct. 150 (2018), which is timely filed on his 1983 first degree murder conviction, and sentence of death.

Thereafter, Petitioner death sentence was set aside during a federal habeas corpus proceedings, under Rushing v. Butler, 868 F.2d 800, (5th Cir. 1989). Petitioner was then resentenced to life imprisonment without parole eligibility in 1990.

Now, Petitioner addresses the State's late response, and he attaches the Court's Order for Response dated May 17, 2019 that was filed in by the Clerk of Court dated May 17, 2019. Honorable William H. Burris, of Division E, Granted by Ordering the Office of the District Attorney to respond within 30 days to the Motion and Order for response filed by defendant on May 3, 2019. (See attached Exhibit).

On July 1, 2019, Petitioner filed a Motion to Grant Relief that's Requested Under an Application for Post Conviction Relief.(See attached exhibit). On August 1, 2019, the State filed with the Court the State's Response to David Rushing's Application for Post Conviction Relief, which over runs 20 working days late or past the Court 30 day Order

by Hon Judge Burris.(See Attached State's brief).

Petitioner points out to this Honorable Court, that the State failed to comply with this Court's Order as well as failing to filed for a Continuance.

Petitioner respectfully ask this Honorable Court to Dismiss the States response as untimely.

Petitioner refers to the above July 1st 2019s' motion filed in his behalf to grant relief requested in petitioner's post-conviction relief and any answers or response by the State should be considered waived. Petitioner points out his motion is still pending by this Hon. Court, and it would be premature of him to file an answer to the State's untimely response alone with his pending motion now before the Court.

WHEREFORE, Petitioner, respectfully request this Honorable Court to allow Petitioner to Reserve the Right to File a Response or Answer to the States Response after this Hon. Court has Ruled on his pending July 1st 2019s' motion.

Respectfully submitted,

David Rushing, #103801
Camp F, Dorm -2
Louisiana State Penitentiary
Angola, Louisiana 70712

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing motion was served by hand delivery or first class mail to the District Attorney for 12 day of August, 2019.

David Rushing

All Parties Served:

District Attorney's Office
Warren Montgomery, D. A.
22nd Judicial District Court
Parish of St. Tammany
Justice Center
701 N. Columbia Street
Covington, Louisiana 70433

ANGOLA, LA
70712-0388

RECEIVED AUG 21 2009

70712#9011 H000

Melissa R. Henry
Clerk of Court
St. Tammany Parish
P.O. Box 1090
Covington, Louisiana 70434

EXHIBIT "11"

22ND JUDICIAL DISTRICT COURT FOR THE
PARISH OF ST. TAMMANY

NO. 529,796                                    DOCKET "E"

STATE OF LOUISIANA

VERSUS

DAVID RUSHING

FILED: *August 16, 2019*   *Alana Viola*
                     DEPUTY CLERK   Alana Viola, Deputy Clerk

**RESPONSE TO MOTION TO GRANT RELIEF THAT'S REQUESTED UNDER
AN APPLICATION FOR POST CONVICTION RELIEF**

Defendant filed a Uniform Application for Post Conviction Relief on July 31,

2018. The Court requested a response from the Office of the District Attorney

which was received on August 1, 2019.

In his application, defendant wrongly bases his argument for a new trial on

the holding of the United States Supreme Court decision in McCoy v. Louisiana,

138 S.Ct. 1500 (2018).   However, in accordance with the holding in Teague v.

Lane, 489 U.S. 288 (1989),  McCoy v. Louisiana  does not apply retroactively as it

is a new rule and only applies retroactively under circumstances not present here.

Also, even if McCoy did apply retroactively it's ruling is inapplicable to the facts

found in the instant case.

The response from the Office of the District Attorney properly sets forth the

foundation for its conclusion that the defendant is not entitled to a new trial.

Accordingly, defendant's Application is denied.

Signed this _ℓ_th day of August 2019 in Covington, Louisiana.

A TRUE COPY
*[signature]*
DY. CLERK 22nd JUD. DIST. COURT
ST. TAMMANY PARISH, LA

_____
WILLIAM H. BURRIS
DISTRICT JUDGE, DIVISION "E"

22ND JUDICIAL DISTRICT COURT
PARISH OF ST. TAMMANY
STATE OF LOUISIANA

CASE NO: 109263-I                                    SECTION "F"

STATE EX REL. DAVID RUSHING

VERSUS

STATE OF LOUISIANA

NOTICE OF APPEAL

PLEASE TAKE NOTICE, Defendant David Rushing being an undersigned pro
se counsel moves the Court for an order of appeal to the First Circuit. Court of Appeal
This Court rendered its judgment of Denial, upon an Application for Post Conviction
Relief, on the 12 day of August 2019. This ruling was received on August 21, 2019. This
appeal is in pursuant to an Application for Supervisory Writ jurisdiction, that will be
asked to review and annul the above district court's judgment.

Respectfully submitted on this 26th day of August, 2019, at the Louisiana State
Penitentiary Angola, Louisiana

David Rushing, #103801
Camp F - 2 Dorm
Louisiana State Prison
Angola, Louisiana 70712

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing motion was served by hand delivery
or first class mail to the District Attorney for 26 day of August, 2019.

David Rushing

Party Served:
District Attorney's Office

EXHIBIT "12"

22ND JUDICIAL DISTRICT COURT
PARISH OF ST. TAMMANY
STATE OF LOUISIANA

NO. 392263-I                              SECTION "E"

STATE EX REL. DAVID RUSHING

VS.

STATE OF LOUISIANA

FILED: _____
                                          _____
                                              DEPUTY CLERK

MOTION TO SET RETURN DATE FOR SUPERVISORY WRITS

On motion of David Rushing, as petitioner, submits notice to this Court that
he, as a pro se counsel, has given notice to this Court of his intention to apply to the
Court of Appeal, First Circuit, for an application for supervisory writ for the purposes of
appealing the denial of an Application for Post Conviction Relief, in the 22nd Judicial
District Court, Section "E", Honorable Judge William H. Burris, in an abundance of
caution.

Petitioner securing his rights to appeal this notice in a timely manner and filed
in accordance with the appellate court rules. Your mover requests this Honorable Court,
in accordance with Rule 4, paragraph 3 of the Uniform Rules, Courts of Appeal, to
set a return date within which mover may file such application in the Court of Appeal,
First Circuit, and under the La. C. Cr. P. Arts. 911-915.

                                          _____
                                              David Rushing

ORDER

CONSIDERING the notice of appeal being applied for an application for
supervisory writ to the 1st Circuit Court of Appeal received by this Court and the
foregoing application the mover, David Rushing, has until the ____ day of _____
2019, within which to file such application

Done in Covington, Louisiana, this ____ day of _____, 2019

                                          _____
                                              JUDGE-22nd Judicial District Court

COURT OF APPEAL, FIRST CIRCUIT
STATE OF LOUISIANA

DOCKET NO: _____

STATE EX REL DAVID D. RUSHING
(APPELLANT/PETITIONER)

VERSUS

STATE OF LOUISIANA
(RESPONDENT/DEFENDANT)

MEMORANDUM IN SUPPORT OF A SUPERVISORY WRIT

In Re: Rushing David, An Appeal From The 22nd Judicial District Court,
Parish of St. Tammany, Louisiana, Under Case No. 109363-I, Div. E, From An
Application For Post Conviction Relief, To The Court Of Appeal, First Circuit. Case
No _____

In Honorable William H. Burris, Presiding Section.

ORIGINAL WRIT IN BEHALF OF DAVID D. RUSHING, PRO SE.

Respectfully submitted:

David D. Rushing, #103801
Camp F, Dorm – 2
Louisiana State Penitentiary
Angola, Louisiana 79512
Date: September 16, 2?      EXHIBIT "13"

# TABLE OF CONTENTS

(PAGE)

Table of Contents ............................................................................................................. i

Table of Authorities ................................................................................................... ii-iii

Statement of Jurisdiction ................................................................................................ 1

Assignment of Error .......................................................................................................... 1

Statement of the Facts .................................................................................................... 1

Statement of the Case ...................................................................................................... 5

Action of the Trial Court .................................................................................................. 6

Issues Presented ................................................................................................................ 7

      I. Did The Trial Court Erred In Allowing She State's Response To Stand When The State Filed An Untimely Response To Petitioner's Post-Conviction Relief When The State Was Allowed Over 300 Days Without A Response? .......................................................................................... 7

      II. Did Petitioner David Rushing Lay The Foundation Of Robert McCoy On This Same Structure Issue That Wasn't Properly Raise In 1986 And 1993 By Petitioner's Counsel? ......................................................... 19

      III. Whether If Teague v. Lane Did Apply To Petitioner David Rushing, Petitioner Rushing Still Meets The Requirements Of Teague v. Lane To The Exception Rule? ......................................................... 18

Argument .............................................................................................................................. 7

Conclusion ........................................................................................................................ 22

Certificate of Service ...................................................................................................... 22

Appendix ............................................................................................................................ 23

i

# TABLE OF AUTHORITIES
### Table Of Cases

Cases                                                                        Page

## TABLE OF THE FEDERAL CONSTITUTION

Sixth Amendment to the U. S. Constitution............................3,5,7,15,16,22

Sixth and Fourteenth Amendment of the United States Constitution..............7

## FEDERAL OF STATUTORY PROVISIONS

## TABLE OF FEDERAL RULES

## FEDERAL CASES

Arizona v. Fulminante, 499 U. S. 279, 310  111 S. Ct. 1246, 113 L. Ed.2d 302 (1991)
...............................................................................13,15

Batson v. Kentucky, 476 U.S. 79, 99 L. Ed.2d 69, 106 S. Ct. 1712 (1986)..........21

Brookhart v. Janis, 384 U. S. 1, 5-7, 86 S. Ct. 1245, 16 L. Ed.2d 314 (1966)........12

Butler v. McKeller, 494 U. S. 407, 108 L. Ed.2d 347, 110 S. Ct. 1212 (1990)........21

Faretta, 422 U. S., at 834, 95 S. Ct. 2525).1....................................15

Harris v. New York, 401 U. S. 222, 225, 91 S. Ct. 643, 28 L. Ed.2d 1 (1971)........12

McKaskle v. Wiggins, 465 U.S. 168, 177, n.8  104 S. Ct. 944, 79 L. Ed.2d 122........12

Robert Leroy McCoy vs. State of Louisiana  138 S Ct.1500,(U. S.
2018..............................................5,6,7,8,11,12,13, 14,15,19,20,22

Teague v. Lane, 489 U. S. 288 (1989)..............................6,7,20,21,22

United States v. Gonzalez-Lopez, 548 U. S. 140, 126 S. Ct. 2557, 165, 177 L. Ed.2d 409
..............................................................................13

Waller v. Georgia, 467 U.S. 39, 104 S. Ct. 2210 81 L. Ed.2d 31 (1984).........13

Weaver v. Massachusetts, 137 S. Ct. 1899 (U. S. Mass 2017)...........11,13,15

## TABLE OF THE STATE CONSTITUTION

Article I § 16 of the Louisiana Constitution........................................7

Article 1 Sections 16 and 17,.......................................................7

Louisiana Constitution of 1974  pursuant to Article V, Section 10 ...................1

## STATE OF STATUTORY PROVISIONS

Article 905.5 of the La. C. Cr P. ................................................................... 17

LSA- R. S. 14:30 ................................................................................................ 1

Louisiana Code Criminal Procedure, Articles 924, 930, and 930.8(A)(2) .............. 12

Louisiana Code Criminal Procedure, Article 927 ....................................... 1,9,16

930.8 of the Louisiana Code Criminal Procedure ................................................ 9

Louisiana Code Criminal Procedure, Article 930.8(A)(2) ................................. 19

TABLE OF RULES

STATE CASES

State v. Horn, 2511 So.3d 1069, 2016-0559 La. 9/7/18 ............................ 15,21

State of Louisiana v. David Rushing, Number 84-KA-0991 .............................. 4

State v. David Rushing, Case #109263-1 .................................................... 6,7

State ex rel Taylor v. Whitley, 606 So 2d 1292, (La. 1992) ........................ 20,21

OTHER:

ABA Model Rule of Professional Conduct 1.2(a)(2016) ............................... 11,15

Doctor Mar L. Zimmermann, Zimmermann Psychology Clinic, Baton Rouge, Louisiana ............................................................................................... 16

I.    STATEMENT OF JURISDICTION

The supervisory jurisdiction of this Court is invoked under the Provisions of the

Louisiana Constitution of 1974, pursuant to Article V, Section 10.

II.    ASSIGNMENT OF ERROR

1. The District Court Erred in Allowing the State's Response to Stand When
the State Filed an Untimely Response to Petitioner's Post-Conviction Relief
And Were Further Allowed Over 300 Days Without a Response, Under La.
C. Cr. P. art. 927.

2. The Trial Court Further Erred in Denying Petitioner David Rushing
Foundation to A Structural Error Under Robert L. McCoy's Standard That
Wasn't Properly Raised in 1985 and 1993 by Petitioner's Counsels?

3. Hon. Judge Williams H. Burris Erred in Denying Petitioner's Structure
Error When His Claim is Retroactive Under Teague v. Lane, Because It
Was Ruled That Petitioner Rushing Circumstances Are Different From
McCoy v. Louisiana.

III.    STATEMENT OF THE FACTS

On April 1, 1983, between 3:30 and 4:00 a. m., Lloyd Jackson, a route salesman,

had completed his deliveries and was driving home when he discovered the body of

Danny Archer behind the steering wheel leaning over to the passenger side covered with

blood. He immediately called the police. The police searched the crime scene finding a

wallet which contained Jeffrey Fussell's driver license. This evidence led the officers to

Fussell's trailer finding him and David Rushing asleep. Both men were placed under

arrest and a short time later, Fussell led the officers to the place where the shotgun which

had been used to kill Archer had been discarded.

On April 21, 1983, David Rushing and Jeffrey Fussell were both indicted for first

degree murder of Danny Archer, a violation of LSA- R. S. 14:30.¹ Through pleadings

the State made it known that the murder allegedly occurred in the course of an armed

robbery or simple robbery at the time the victim was killed. Following the denial of

motions to suppress both physical evidence and inculpatory statements given by both

defendants, the state elected to severance their trials. Presumably this move was to

¹ See Exhibit " I", Indictment.

1

eliminate any problems in introducing the inculpatory statements, but the State had negotiating a plea bargain with Jeffrey Fussell's testimony. (Vol. II, T. Tr. Pg. 26).

This is a first degree murder charge against the Mr. Rushing and Jeffrey Fussell. Attorney John Simmons was appointed by the Court to represent Mr. Rushing by the Public Defender Board, St. Tammany Parish. Mr. Rushing entered a plea of Not Guilty.

Six months after Rushing and Fussell's indictment for first degree murder charges, the State scheduled David Rushing trial for October 10, 1983. While going through the pretrial stages, Jeffrey Fussell reached an agreement with the prosecutor to testify in behalf of the State. At trial, Attorney John Simmons had his own theory of the case, and he never explained to Mr. Rushing about a guilt concession strategy that Rushing had no idea what he was saying, in his opening statement to the jury. Simmons extensively expressed to the jury in his opening statements, "that he was going to prove that Mr. Sheridan, (a state witness) was in the company of the defendant David Rushing, and the culpability of Mr. Sheridan providing the shot gun for Rushing knowing an Armed Robbery was going to take place". (See Vol. II, T. Tr. Page 24). However, it does appears Simmons intention was to bring his opening statement to the jury before the State introduced any evidence that would be an unexpected encounter defense to his opening statement. Mr. David R. Paddison, the Assistant District Attorney argued that Mr. Simmons do not engage in any potential evidence charged acts and adamantly objected to any admission of guilt in the following objection.

Mr. Paddison:    Your Honor I have to object to the usage of any potential evidence in this matter it hasn't been admitted. (See Vol. II, T. Tr. Pg. 26, Line 12).

Mr. Rushing continue to demonstrate his facts how counsel's involvement in this type of hypothetical theory of sabotage behavior. Moreover, he further stated that "the defendant David Rushing is guilty, or when he did it". (Vol. II, T. Tr. Pg. 69). In this case, specifically, with an individual liberty, and, in capital cases, life, at stake, it is the defendant's prerogative, not counsel's, to decide on the objective of his defense in a

capital murder trial, to admit guilt in the hope of gaining mercy at the sentencing stage, or to maintain his innocence  leaving it to the State to prove his guilt beyond a reasonable doubt. When Rushing expressly asserts to Mr. Simmons that the objective of his defense was to maintain his innocence of the charge criminal acts, however, in closing arguments, defense counsel Simmons continued to usurp control of Mr. Rushing guilt before the jury. He went as far as inadequately perform before the jury by utterly failing to offer the jury any reason to acquit Mr. Rushing of this crime. And, he incredibly told the jury "his client was not innocent" in this respectfully manner:

> "I'm not asking you to go beyond the evidence to seek for reasons to acquit  I'm not asking you to acquit this man, because he's admitted from the stand that he was there. He was there, and he's a principle there." See. (Writ of Habeas Corpus, Pg. 12, & Vol. IV, Pg. 229).

Attorney Simmons continued to usurp control over Rushing protected autonomy rights under the Sixth Amendment to the U. S. Constitution.

> "I'm not saying there's reason to let this man walk out of here. I'm not saying to do that. I wouldn't insult your integrity in any form or fashion in asking you to do that." See. (Writ of Habeas Corpus, Pg. 12, &Vol. IV, Pg. 231)

Mr. Simmons also stated, "that he hoped the jurors would stick by their decision, regardless of the outcome, instead of urging the jury to decide in his client's favor". Counsel's performance was a serious breach of duty to Rushing's criminal case. The jury was confronted with a plea of not guilty when Rushing own attorney was admitting that his own client was not innocent. It can be further highlighted, that counsel for Rushing destroyed any belief by the jury that Rushing's counsel believed or knew that his client was innocent.

Under these circumstances, the Court should find that Rushing's counsel admission of a client's guilt over his client's express objective is error structure in kind, for it blocks the Defendant's right to make a fundamental choice about his own defense. Mr. Rushing was convicted of murder. At the penalty phase the jury made a binding recommendation that Mr. Rushing be executed. On November 4th, 1983, Honorable A

3

Clayton James, Judge, sentenced Mr. Rushing to a death sentence. Jeffrey Fussell was subsequently allowed to plea guilty to second degree murder.

Therefore on June 27 1984 the Louisiana Supreme Court notified Attorney Summons to be advised that he had not filed any brief in behalf of <u>State of Louisiana v. David Rushing</u>, Number 84-KA-0991, unless his brief is received within ten (10) days or some reasonable explanation is given for his failure, he may be subject to a rule for contempt. Months later, A Rule to Show Cause was issued by the Louisiana Supreme Court again upon Attorney John R. Simmons, *Esq.*, and Dwight Doskey, *Esq.* requesting an appeal from the 22nd Judicial District Court, Parish of St. Tammany. Both counsels for the defendant had failed to file a sentence review memorandum. despite numerous and repeated requests by the Court. It was ordered by the Court if a sentence review memorandum is filed by August 31, 1984 or else show cause on September 5, 1984 in the Courtroom of the Supreme Court of Louisiana at 9.30 a. m. These two attorneys were not in best of their clients behalf. and it appears that they were allowing their client to be executed as soon as the law allowed.(See Exhibit **"2"**).

On December 5, 1987, while on death row, Mr. Rushing Attorneys Thomas M. Ross, Doyle and Michales had him examined by Dr. Marc L. Zimmermann, Ph.D., in a Visitation room, Camp J, (Death Row), Louisiana State Penitentiary, Angola, Louisiana. In 1989, The United States Court of Appeals, Fifth Circuit reserved David Rushing death sentence conviction and vacated and case was remanded. Accordingly, to the Extract of Minutes Entry on Thursday, June 23, 1993, Mr. Rushing was re-sentence to life imprisonment without the benefit of parole, probation or suspension of sentence after the state waived it's right to a sentencing hearing on April 6, 1992. Mr. Rushing was present at open Court attended by his counsel, Nicholas J. Trenticosta, for a new sentencing hearing. The State at this time informed the Court that they will not seek the Death penalty in this matter. David Rushing was sentence to life in prison at hard labor

---

2 See Exhibit "2" A Letter from The Louisiana Supreme Court.
3 See Exhibit "3", Extract of Minutes Entry, Thursday, June 23, 1993

4

with the Department of Public Safety and Corrections and said sentence is to be without benefit of probation, parole or suspension of sentence. (See Exhibit "3").

Eighteen years later, in an unforeseeable case arise out of the United States Supreme Court rendering a ruling favorable in behalf of Robert Leroy McCoy, vs. State of Louisiana, 138 S. Ct. 1500 (U. S. 2018). Mr. Rushing discovered his case should be applied under the same entitlement as McCoy. The new structural error that was discovered in McCoy's case when the Sixth Amendment guarantees a defendant the right to choose the objective of his defense and to insist that his counsel refrain from admitting guilt, even when counsel's experienced—based view that confessing guilt offers the defendant the best chance to avoid the death penalty.

Despite all this evidence, petitioner, who seen how his attorney was insisting on his guilty before the jury, and Jeffrey Fussell had received a second degree murder conviction for his cooperation with the State to testify in their behalf. Rushing having no intellectual idea what his counsel was doing".

It is no far stretch to assume that Attorney Simmons making ultimate decisions for his client in admitting his guilt to the jury that, it did greatly factored into the jurors' ultimate decision regarding Rushing fate, if indeed had Attorney Simmons not admitted his guilt the results would have caused a reasonable probability that the trial results would have been different.

IV.    STATEMENT OF THE CASE

David Rushing filed an Application for Post-Conviction Relief alleging *inter alia*, that his counsel violated his Sixth Amendment Rights guarantees a defendant the right to choose the objective of his defense and to insist that his counsel refrain from admitting guilt, even when counsel's experienced—based view that confessing guilt offers the defendant the best chance to avoid the death penalty.

There has been several post-conviction relief application filed in behalf of David Rushing in the 22nd Judicial District Court in which all has been denied.

In the instant case, on July 31, 2019, David Rushing filed his Application Post-Conviction Relief and a Motion Requesting an Evidentiary Hearing.(See Exhibits "4" & "5").

The Clerk of Court's Office, Mrs. Rashelle Eiselen, Deputy Clerk notified Mr. Rushing on the Court's ordering the State to file a response in the matter, State v. David Rushing, Case #109263-1.

On April 29, 2019 Mr. Rushing filed a Motion and Order for the District Attorney to File a Response.(See Exhibit "6"). On May 17, 2019, Hon. William H. Burris filed an Order for Response ordering the District Attorney to respond within 30 days to the Motion and Order for Response filed by defendant on May 3, 2019. (See Exhibit "7").

On July 1st, 2019, Mr. Rushing filed a Motion to Grant Relief that's Requested Under an Application for Post-Conviction Relief. (Exhibit "8").

On August 1st, 2019, the State's Response to David Rushing's Application for Post-Conviction Relief.(Exhibit "9"). In response to the State's Response, Mr. Rushing filed on August 12, 2019, a Motion Addresses the State's Late Responded Answer.(See Exhibit "10"). On August 12, the District Court denied Mr. Rushing post-conviction relief, application he received it on the 21st day of August, 2019. (See Exhibit "11"). On August 26, 2019, Mr. Rushing filed a Notice to Appeal and Motion to Set Return Date for Supervisory Writ (See, Exhibit "12").

Mr. David Rushing requesting this Court to review the District Court's erroneous ruling to his post-conviction relief application.

## V.    ACTION OF THE TRIAL COURT

On August 16, 2019, the district court erred in its findings and conclusion to McCoy v. Louisiana 138 S. Ct. 1500 (2018). Hon. Judge Burris held that in accordance with the holding in Teague v. Lane 489 U. S. 288 (1989), McCoy does not apply retroactively as it is a new rule and only applies retroactively under circumstances not present here. Also, even if McCoy did apply retroactively it's ruling is inapplicable to the

6

facts found in the instant case.

The district court further erred in adopting the District Attorney's paving an erroneous foundation for its conclusion that the defendant is not entitled to a new trial.

## VI.   ISSUES PRESENTED

I. Did The Trial Court Erred In Allowing She State's Response To Stand When The State Filed An Untimely Response To Petitioner's Post-Conviction Relief When The State Was Allowed Over 300 Days Without A Response? ....................................................................................................

II. Did Petitioner David Rushing Lay The Foundation Of Robert McCoy On This Same Structure Issue That Wasn't Properly Raise In 1986 And 1993 By Petitioner's Counsel?

III. Whether If Teague v. Lane Del Apply To Petitioner David Rushing, Petitioner Rushing Still Meets The Requirements Of Teague v. Lane To The Exception Rule?

## VII.   ARGUMENT

David Rushing incorporates by reference all arguments made in his Opposition to the State's Response to his Application for Post-Conviction Relief, filed in the district court in Section "E", under Docket Number 109263-I, and is now being presented to this Court, First Circuit Court of Appeal that's attached as Exhibit "4". He further incorporates all arguments made in pleadings before the district court, included in the Appendix filed with this Writ's Application.

I. THE DISTRICT COURT DISREGARDED CLEAR STATE AND FEDERAL JURISPRUDENCE WHEN IT SUMMARILY DENIED MR. RUSHING POST-CONVICTION RELIEF APPLICATION FROM ITS FINDINGS FOR THE LACK OF A STRUCTURE ERROR.

In the case now before you, Petitioner Rushing has been denied his right to the Sixth and Fourteenth Amendment of the United States Constitution and Article 1 § 16 of the Louisiana Constitution guarantee a defendant have the right to a fair trial to presenting a defense. This Court has long recognized that the protection of Article 1, Sections 16 and 17 may only be realized through a full review of the trial proceedings "[T]he purpose of the right to a defense is when his Sixth Amendment guarantee the accused in a criminal proceeding the right to have the assistance of counsel for his

7

defense; it does not provide merely that a defense shall be made for the accused, it grants to the accused personally the right to make his defense. U. S. Const. Amend. 6.

In the awaking of McCoy v. Louisiana 138 S. Ct. 1500, (U. S. La. 2018) prescribes:

> The Supreme Court, Justice Ginsburg, held that: The Sixth Amendment guarantee a defendant the right to choose the objective of his defense and to insist that his counsel refrain from admitting guilt, even when counsel's experienced-based view is that confessing guilt offers the defendant the best chance to avoid the death penalty. Pp. 1507-1512.

Mr. Rushing will be demonstrating how the trial court has disregarded clear State and Federal jurisprudence to the critical facts that deprived him of his state and federal rights to present a defense. Under the clear precedent of the Louisiana Supreme Court and the United States Supreme Court, a constitutional violation of this magnitude required automatic reversal of Mr. Rushing's conviction and sentence. Such an error can never be seen as harmless.

**A. The 22nd Judicial District Court Erroneously Found That Mr. Rushing's Attorney John Simmons Did Not Commit A Structure Error In His Trial By Telling The Jury He Is Guilty Of The Charge Of 1st Degree Murder.**

Petitioner Rushing argues before this Court that he is entitled to a new trial based upon McCoy Id. In McCoy's case, Rushing having discovered a new right that's found to be by the Court, but is not an issue in the hes case. The Court compounds its error by summarily concluding that a violation of this right "ranks as error of the kind the Court's decisions have called 'structure.'"

First, it is hard to see how the right could come into play in any case other than a capital case in which the jury must decide both guilt and punishment. In all other cases, guilt is almost always the only issue for the jury, and therefore admitting guilt of all charged offenses will achieve nothing. It is hard to imagine a situation in which a competent attorney might take that approach. So the right that the Court has discovered is effectively confined to capital cases.

8

On July 31, 2018, Mr. Rushing filed his P. C. R. with attached exhibits in support of his argument to his right of a new rule of constitutional law. (See, Exhibit "4").

Mr. Rushing contends that the trial court erred in allowing the States response to stand to his filed Post-Conviction Relief Application. The Clerk of Court's Office, Mrs. Rashelle Easelen, Deputy Clerk did notify the Rushing about his pending application had been received and filed with the Hon. Judge Childress' Issuing an Order to the St. Tammany Parish District Attorney's Office to respond with an answer.

The Louisiana Code Criminal Procedure, Article 927. Procedural objections; answer shall be applied in the instant case as following:

A. If an application allege a claim which, if established, would entitle the petitioner to relief, the court shall order the custodian, through the district attorney in the parish in which the defendant was convicted, to file any procedural objections he may have, or an answer on the merits if there are no procedural objection, within a specified period not in excess of thirty days. If procedural objection are timely filed, no answer on the merits of the claim may be ordered until such objections have been considered and rulings thereon have become final.

The prosecutor in an effort to deflect his action for lack of responding to the Court's Order twice in a timely manner under Article 927 A., of the Louisiana Code Criminal Procedure should have been denied by procedural bar. Because, in view of the facts set forth the State cannot offer any explanation for why he did not answer in a timely manner, and in failing to doing so, the Court should reject the State's reasoning. Because, if a defendant is over the time limitation in his writ or response to the Court the defendant will be time barred under 930.8 of the Louisiana Code Criminal Procedure.

The Court allowed the State over 300 days with out a response to Mr. Rushing pending petition. On the 29th day of April 2019 Mr. Rushing filed a Motion and Order for Response filed by defendant and it was filed in the district court on May 3, 2019.(See Exhibit "6").

On the 17th day of May 2019 Hon. Judge William H. Burris Ordered that the Office of the District Attorney to respond within 30 days to the motion and order for a response filed by the Mr. Rushing. In according to the above information the Court has

9

Ordered the District Attorney's Office twice that was failed to be acknowledged from the orders. (See Attached Exhibit "**7**"). Which would expire on June 28, 2019.

Also, see attached for this Court's records is Petitioner's Exhibit "**10**" stating an untimely response dated August 1, 2019, which would be 21 working days late of the Court's Order

On or about July 1, 2019, Petitioner filed a Motion to Grant and Deem the State's Response Waived because of the State's untimely response. Petitioner's motion was denied without a hearing.

The Court has failed to inform Mr. Rushing that the State is allowed a certain amount of time to file his objection besides the rule under LSA- C. Cr. P. art. 927.

On August 1st, 2019 the Assistant District Attorney Matthew Caplan filed the State's Response to David Rushing's Application for Post-Conviction Relief rendering David Rushing is not entitled to post-conviction relief and must be denied.

The District Court failed to allow the District Attorney to answer Mr. Rushing motions that were filed in his behalf to the prosecutor's failure to answer all pending motions These motions were a key factor to grant and deem the State's response waived because the Court based its findings and conclusion from adopting the State's response in a shorter version of the State's denial.

Furthermore, the Court's Order denying Mr. Rushing's P. C. R. failed to address his motions that was Granted  In fact, the State's response should be considered waived because of the State's 21 days should be considered a late response  Through Attorney John Simmons statements to the jury concerning Rushing's guilt, the new structural error from McCoy's case and Mr. Rushing demonstrating Simmons behavior that meets the standard of McCoy's structural error presents critical information regarding his Sixth Amendment guarantee right and in part to defense counsel's ineffective performance.

Mr. David Rushing, requesting this Court to Vacate the August 12, 2019's ruling from the District Court and Remand back to the trial for a new trial

ISSUE NUMBER TWO:

II.    Whether The Decision To Admit Guilt In A Capital Case As Part
       Of The Defense Objective Belongs To Counsel Or To The
       Accused?

Petitioner David Rushing argues before the Court that the Sixth Amendment guarantees a defendant the right to choose the objective of his defense and to insist that his counsel refrain from admitting guilt, even when counsel's experienced-based view is that confessing guilt offers the defendant the best chance to avoid the death penalty. Citing, McCoy, Id.

Mr. Rushing asserts the course of his pretrial stages and during his capital murder trial, his counsel Simmons decided to choose his own objective of a defense, and never informing Rushing of this type of trial strategy for him. Simmons choose his own objective for Rushing defense when counsel continued to admit his guilt before the jury in the Opening Statements and Closing Arguments before the jury.

It must be pointed out after learning his attorney trial strategy was in opposition to his defense. Mr. Rushing planned to make the State prove his guilt beyond a reasonable doubt, instead John Simmons were pleading his guilt before the jury. While David Rushing was on the stand, "he answered tell Simmons no, sir, I never touched him. I was never in the back of that taxicab". (Vol. __, T. Tr. Pg. 146). See Weaver v. Massachusetts, 137 S. Ct. 1899 (U. S. Mass. 2017), when a client asserts that the objective of "his defense" is to maintain innocence of the charge criminal acts, his lawyer must abide by that objective and may not override it by conceding guilt. See ABA Model Rule of Professional Conduct 1.2(a)(2016)a "lawyer shall abide by a client's decisions concerning the objective of the representation". In such a capital case if the evidence is not clear and precise to guilt, that evidence must be of the caliber to have required the jury to vote "not guilty" and if the evidence that the defendant presents before the jury cast the case in a completely different light so as to undermine confidence in the jury verdict he must be acquit of the charge(s). See, Weaver v

11

Massachusetts, 137 S. Ct. 1899 (U. S. Mass. 2017).

Rushing's defense was to take the stand, recant his confession because at the time of the murder and his confession was under the intoxication of barbiturates and his only remembrance were portions of the evening the other was like he had a black out.

Upon examining the records concerning counsel persistence to admit his guilt. Mr. Rushing made it plain that the objective of "his defense" is to maintain innocence of the charged criminal acts and he pressed Simmons' to pursue an acquittal, but his attorney did not abide by his objective and he did override it by conceding his guilt. Simmons continued to to tell the jury that when some of the officers had given their statement there was a confession made by Mr. Fussell that implicated them both. (See, Vol. II, T. Tr. Pg. 223). And, Deputy Cousin could had been call to testify concerning Fussell exculpatory remarks. (Habeas Corpus Writ Page 14, #46.). Under current precedent, there are some decisions on which a criminal defendant has the final say. A defendant cannot be forced to enter a plea against his wishes, See Brookhart v. Janis, 384 U. S. 1, 5-7, 86 S. Ct. 1245, 16 L. Ed 2d 314 (1966). Similarly, no matter what counsel thinks best, a defendant has the right to insist on a jury trial and to take the stand and testify in his own defense. See Harris v. New York, 401 U. S. 222, 225, 91 S. Ct. 643, 28 L. Ed.2d 1 (1971).

Due to the new ruling of law in McCoy v. Louisiana. Rushing immediately filed an Application for Post-Conviction Relief under the Louisiana Code Criminal Procedure, Articles 924, 930, and 930.8(A)(2) he relied on the following exception to the period of limitation.

> The claim asserted in the petition is based upon a final ruling of an appellate court establishing a therefore unknown interpretation of constitutional law and petitioner establishes that this interpretation is retroactive applicable to his case, and the petition is filed within one year of the finality of such ruling.

Here, in Mr. Rushing's case the violation of his protected autonomy right was complete when the court allowed Mr. Simmons to usurp control of an issue within

Rushing sole prerogative. Citing, McKaskle v. Wiggins, 465 U. S. 168, 177, n 8, 104 S. Ct. 944, 79 L. Ed.2d 122; United States v. Gonzalez-Lopez, 548 U. S. 140, 126 S. Ct 2557, 165, 177 L. Ed.2d 409; Waller v. Georgia, 467 U. S. 39, 104 S. Ct. 2210,81 L. Ed.2d 31 (1984)(public trial is structural). Structural error "affect[s] the framework within which the trial proceeds," as distinguished from a lapse or flaw that is "simply an error "affect[s] the framework within which the trial proceeds," as distinguished from a lapse or flaw that is "simply an error in he trial process itself." Arizona v. Fuminante, 499 U. S. 279, 310, 111 S. Ct 1246, 113 L. Ed.2d 302 (1991). An error may be ranked structural, "if the right at issue is not designed to protect the defendant from erroneous conviction but instead protects some other interest," such as "the fundamental legal principle that a defendant must be allowed to make his own choices about the proper way to protect his own liberty." Weaver, 582 U. S., at - - - -137 S. Ct. at 1908. Mr. Rushing insisted that his counsel refrain from admitting his guilt, even when counsel's experienced-based view is that confessing guilt offers the defendant the best chance to avoid the death penalty. McCoy, Pp. 1507-1512.Id.

In beginning of Rushing trial, Simmons did initially concede in his opening statement to the jurors by revealing on two separate occasions that his client is guilty of this murder by stating:

"that he was going to prove that Mr. Sheridan, (a state witness) was in the company of the defendant David Rushing, and the culpability of Mr Sheridan providing the shot gun for Rushing knowing an Armed Robbery was going to take place" (See, Vol. II, T. Tr. Page 24)

And, "the defendant David Rushing is guilty, or when he did it". (Vol. II, T. Tr. Pg. 69) and throughout his client's trial. Id., at 509 of McCoy

In Simmons closing argument to the jury he incredibly told the jury his client was not innocent in the respectful manner of:

"I'm not asking you to go beyond the evidence to seek for reasons to acquit. I'm not asking you to acquit this man, because he's admitted from the stand that he was there. He was there, and he's a principle there." See, (Rec. Vol. IV, Pg. 229).

13

Attorney Simmons continued to usurp control over Rushing protected autonomy rights under the Sixth Amendment to the U. S. Constitution.

"I'm not saying there's reason to let this man walk out of here. I'm not saying to do that. I wouldn't insult your integrity in any form or fashion in asking you to do that." See, (Rec. Vol. IV, Pg. 231).

Petitioner's counsel stated during the sentencing stage that "his client was guilty as charged". (See, Writ of Habeas Corpus, Page 14, #46).

It can be highlighted by Simmons stating, "that he hoped the jurors would stick by their decision, regardless of the outcome, instead of urging the jury to decide in his client's favor". Counsel's performance was a serious breach of duty to Rushing's criminal case he was repetitive in telling the jury that his client was guilty as charge (See, Writ of Habeas Corpus Page 14, #46.). The jury was confronted with a plea of not guilty when Rushing own attorney was admitting that his own client was not innocent McCoy, Id. In Simmons subterfuge behavior in Rushing's trial it should be noted that he destroyed any belief of those twelve jurors that Rushing's counsel believed or knew that his client was innocent. And the effects of the admission would be immeasurable, because a jury would almost certainly be swayed by a lawyer's concession of his client's guilt. Rushing too, as McCoy must be accorded a new trial without any need first to show prejudice.

Simmons took full control of violating Rushing Sixth Amendment Rights, by a right that the amendment-secured his autonomy has been ranked "structure" error, when present, such an error is not subject to harmless error review. See, McCoy id. Furthermore during closing arguments, defense counsel Simmons stated to the jury the following

"It has come to the time we must talk about aggravating and mitigating circumstances was the man suffering"? "The State jumps up and object to Attorney Simmons talking about aggravating and mitigation circumstances this is not the proper time Mr. Simmons knows that he may get the opportunity later"! Rushing never had the opportunity to object because the State made the objections for him.(See, Vol. IV, T. Tr. 224).

During counsel's brief closing argument, he told the jury the only mitigating

evidence he could offer is that "dying can never be pleasant." (Writ of Habeas Corpus, Pg. 15, #49, Rec. Vol. V, p. 92).

The presence of "Structure defects in the constitution of the trial mechanism . . . defy analysis by 'harmless-error' standards . . . these constitution deprivations . . affect[] the framework with which the trial proceeds, rather than simply an error in the trial process itself." An error is structure if it is not designed to protect defendants from erroneous conviction, but instead protects some other interest, such as "the fundamental legal principle that a defendant must be allowed to make his own choice about the proper way to protect his own liberty" *Id.* Weaver, 582 U. S., at - - - -, 137 S. Ct. At 1908 (Citing Faretta, 422 U. S., at 834, 95 S. Ct. 2525).

The District Court offered no legal support for adopting the State's ruling, that is found to be erroneously illustrated by the prosecutor in the instant case, and granted no deference to the district attorney who failed to observe Attorney Simmons admitting his guilt to the jury on several different occasions that his client was guilty. Significantly, the District Court adopted the prosecutor findings that McCoy does not apply retroactively as it is a new rule and only applies retroactively under circumstances not present in Rushing case. Also, the Court stated, even if McCoy did apply retroactively it's ruling is inapplicable to the facts found in the instant case.

Simmons violated his own client's Sixth Amendment Rights when the Constitution guarantees a defendant the right to choose his own objective of his defense and to insist that his counsel refrain from admitting guilt, even when counsel's experienced-based view is that confessing guilt offers the defendant the best chance to avoid the death penalty. *Id.* McCoy, Pp. 1507-1512 See ABA Model Rule of Professional Conduct 1.2(a)(2016)(a "lawyer shall abide by a client's decisions concerning the objectives of the representation")

Citing, State v. Horn, 2511 So.3d 1069, 2016-0559 La. 9/7/18, Horn argues his Sixth Amendment right to counsel was violated when his attorney conceded his guilt

15

over his explicit objection. The similarities between the two cases are similar in nature to one another. In Horn, trial counsel's concession that defendant killed the victim over defendant's explicit objection constituted deficient performance and was structure error; during prosecution for first degree murder, a criminal defendant's decision whether to concede guilt implicated fundamental constitutional rights and defendant had the right to choose the objective of his defense. (U. S. Const. Amend. 6.). Attorney Simmons in the instant case stated, "I'm not asking you to go beyond the evidence to seek for reasons to acquit. I'm not asking you to acquit this man, because he's admitted from the stand that he was there. He was there, and he's a principle there." See, (Vol. IV, Pg. 229).

The structure error affects the framework within which the trial proceeds, "as distinguished from a lapse or flaw that is simply and error in the trial process itself". Arizona v. Fulminante, 499 U. S. 279, 310, 111 S. Ct. 1246, 113 L. Ed.2d 302 (1991).

Accordingly, Rushing did not make an outburst in the meddle of trial during the 5 day(s) of his trial; however, he did tell Mr. Simmons at the table on several occasions to stop pleading him guilty. Counsel's action and character before the Court was shown how he was upset with his client for not going along with him on his plea of guilt to the jury.

Contrariwise, to the trial court ruling and the State findings and conclusion, Mr. Rushing contends during the time of his trial he was unable to understand why counsel Simmons was usurping upon his rights to the jury that he was guilty of the offense to the jury. A few years later, in 1988, Mr. Rushing was presently assigned to Death Row and was waiting to be executed. Rushing received new attorneys in his behalf to provide him representation while being on Death Row. Mr. Rushing new appointed attorneys had David Rushing, evaluated by a Psychologist.

Psychological Evaluation:

Prior to 1987, David Rushing had been appointed new counsels Doyle and Michales Lawyers, who had requested a psychological evaluation of the subject for

16

purposes of legal representation. On December 5, 1987 Doctor Mar L. Zimmermann, Zimmermann Psychology Clinic, Baton Rouge, Louisiana examined Mr. Rushing in a visitation room at Camp J (Death Row) at Angola, La.

The report provides the following answers within the scope of forensic psychological science.

(a) Mr. Rushing is vulnerable to peer pressure;

(b) Mr. Rushing probably suffers from a personality disorder, most likely a dependent or schizoid disorder.

6. Dr. Zimmermann administered the Wechsler Adult Intelligence Scale-Revised.

7. From the test, he was able to make the following determinations about Mr. Rushing:

(a) He suffers from an emotional disorder, either neurotic or psychotic.

(b) The range of his verbal, performance, and full scale scores are within borderline retarded range. This does not mean he is retarded, but the range is less than one standard deviation above the scores considered to be retarded.

8. He also administered the Wide Range Achievement Test-Revised Level Two.

9. From the test I was able to make the following determinations about Mr. Rushing:

(a) His reading ability is at beginning third grade level.

(b) His spelling ability is below third grade level.

(c) His skills at arithmetic are at the beginning fifth grade level.

10. The data from the discussion and tests mentioned above strongly supports the conclusion above.

11. It is the doctor professional opinion that the condition described above is a mental disease and/ or mental defect within the meaning of Article 905.5, Louisiana Code Criminal Procedure.

12. As a professional, I feel that David Rushing's mental condition relates very well to the mitigating circumstances set out in Article 905.5 of the Louisiana Code Criminal Procedure. It is my belief that a lay jury would have been assisted by the testimony of a psychiatric witness in understanding David Rushing's mental disorder and how it could relates to the statutory mitigating circumstances set forth in Article 905.5 of the La C Cr. P.

History of David D. Rushing Mental Disorder:

David Rushing mental disorder makes it likely that he was suffering from this condition on April 1, 1983, impairing his capacity to appreciate the criminality of this conduct or to conform his conduct to the requirements of law. Moreover it is likely that David Rushing was suffering from this condition in October 1983, impairing his competence to stand trial on the charge of first degree murder. (See, in Pertinent Part

17

Exhibit "13").

Mr. Rushing further argues that he had a serious learning disability in school and at the age of 15 he dropped out of the seventh grade. His reading and writing skills are extremely limited. However, in spite of his limited education, lack of a permanent home, difficulty in obtaining regular employment at the time, and again, suffering from an undermined learning disability or mental disorder played an essential part in his ability to understand the objective procedures of objecting to his counsel admitting his guilt in open court. However, Rushing contends he's not an attorney and he should not be held to the standard of an attorney.

It appears from the record that Rushing's appointed death penalty counselors' were concerned with counsel John J. Simmons' inadequate representation in trial. The presence of new counsels does not in itself erase the shadow of inadequate representation previously cast upon Rushing jury by Simmons. Attorney Simmons and Attorney Dwight Doskey were both ordered twice to file briefs in behalf of Mr. Rushings appeal to the Supreme Court of Louisiana after his conviction.(See Supreme Court's Order Exhibit "3").

In 1986, new counselors for Rushing filed an Ineffective Assistant Counsel's Claim upon Attorney Simmons that was the same issue as McCoy had. McCoy received his benefits of a reverse to a structural error. Rushing's new counsels unfortunately utilized the wrong vehicle to the same issue as McCoy's issue or the Courts over looked the Structural Error in Rushing case in his Writ of Habeas Corpus. (Please See Writ of Habeas Corpus, Pages 12, Rec. Vol. IV., p. "229 & 231").

Now, this Court has an opportunity to conclusively establish Rushing's trial Court allowed counsel the right to usurp control over Rushing's prerogative, which establish ranking as a "structure" error when present, and such error is not subject to harmless error review. Id. Rushing prays that this Court reverse the district court ruling, thereby ordering that Rushing be granted a new trial.

ISSUE NUMBER THREE:

III    Did The District Court Erred In Denying That McCoy v. Louisiana Is
       Not Retroactive to David Rushing's Case Who Is On Collateral
       Review?

David Rushing, contends the State erroneously held that his case is not applicable

to the retroactivity of McCoy v. Louisiana. However, Hon. Judge Burris held in a written

opinion of his denial that McCoy does not apply retroactively as it is a new rule and only

applies retroactively under circumstances not present in the instant case.

Mr. Rushing, utilizes the Louisiana Code Criminal Procedure, Article 930.8(A)(2)

as his vehicle which provides the follows:

> 2  The claim asserted in the petition is based upon a final ruling of an
> appellate court establishing a therefore unknown interpretation of
> constitutional law and petitioner establishes that this interpretation is
> retroactive applicable to his case, and the petition is filed within one year of
> the finality of such ruling. *Id.*

Indeed, in the instant case, Rushing is asserting equal protection and due process

violations. McCoy does not address due process violations whatsoever. Further, a simple

review of the plain language of McCoy will show that it is a Sixth Amendment

guarantees a defendant the right to choose the objective of his defense and to insist that

his counsel refrain from admitting guilt, even when counsel's experienced-based view is

that confessing guilt offers the defendant the best chance to avoid the death penalty.

At the striking part in this brief, Hon. Judge Burris states Rushing circumstances

is not applicable to McCoy's structure error that is guaranteed by both the State and

Federal Constitutions. The United States Supreme Court as well as the State Supreme

Court has specifically found that it is one of the core concepts of the criminal justice

system which is a "fundamental right of criminal defendants; it assures the fairness, and

thus the legitimacy of our adversary process". Without counsel, the right to a fair trial

itself would be meaningless, for it is only through counsel that the accused may secure

his other rights. Secondly, there can be no dispute for decades the constitutionality of

structure errors has developed over the years from Courts scrutinizing the right of the

Sixth Amendment guarantees the accused in a criminal proceeding the right to have the assistance of counsel for his defense. In the issue before the Court, it was sustained until the decision in McCoy v. Louisiana, that a defendant have the right to choose the objective of this defense even in capital cases and insist that his counsel refrain from admitting guilt, even when counsel's experienced-based view is that confessing guilt offers the defendant the best chance of avoid the death penalty. McCoy. Pp. 1507-1512. Id. Thus, there can be no dispute that the ruling of McCoy v. Louisiana constitutes a new rule of constitutional law. And, there can be no dispute, based on the evidence presented, that substantial rights of the accused have been effected. Finally, there is no dispute that the present application is filed within one year of said ruling. Thus the only issue is retroactivity.

This Court's precedents addressing the nature of substantive rules, their differences from procedural rules, and their history of retroactive application establish that the Constitution requires substantive rules to have retroactive effect regardless of when a conviction became final.

In State ex rel Taylor v. Whitley, 606 So.2d 1292, (La. 1992), the Supreme Court dealt with the retroactivity issue. The first type of retroactivity dealt with errors according to the law in effect when a conviction became final. As a general rule, these errors would not be given retroactive effect on collateral review but would be applied to cases on direct review. However, there are two exceptions to this general retroactivity rule.

The first exception dealt with substantial due process rules which place certain kinds of primary and/or private conduct beyond the power of the criminal law making authority to proscribe. The second exception, the one applicable to the instant case referred to new rules which required the observance of "those procedures that . . . are implicit in the concept of ordered liberty" and altered our understanding of the "bedrock procedural elements" of a fair trial. See Teague v. Lane, 489 U. S. 288, 103 L. Ed. 2d

354, 109 S. Ct. 1060(1988). It was Teague court that finally adopted Justice Harlan's view of retroactivity for cases on collateral review. The Teague court was called upon to review whether or not a defendant should receive the benefit of the court's decision in Batson v. Kentucky, 476 U. S. 79, 90 L. Ed.2d 69, 106 S. Ct. 1712 (1986). This was despite the fact that his conviction was final at the time that Batson was decided. In essence, a case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final  109 S. Ct. at 1070; Taylor, *supra*. 1294. The Taylor court adopted the finding of Teague as' a matter of state law and found that retroactive application of new rules was appropriate when those rules required "the observance of those procedures that are implicit in the concept of ordered liberty." Teague *supra* , at 1075; Taylor, *supra*., at 1295. It was clear that the court intended the second exception to apply to "watershed" rules of criminal procedure.

The Taylor court went on to acknowledge to apply a number of other federal supreme court cases wherein the courts admitted that the Teague definition of a new rule could be difficult to apply where the new decision was reached by an extension of the reasoning of previous cases. Essentially, the court distinguished between situations as follows: "between situations where a decision was dictated by a precedent existing at the time the defendant's conviction became final (which would preclude the decision from being a new rule) and situations where a decision was merely controlled by existing precedent (which would not preclude the decision from being a new rule). See Butler v. McKeller 494 U. S. 407, 108 L. Ed.2d 347, 110 S  Ct. 1212 (1990) Taylor *supra*., at 1296

Only the Supreme Court of the United States have jurisdiction to decide the question of McCoy being retroactive, because Louisiana has voluntarily incorporated into its law a wholly Federal standard. The Louisiana Supreme Court reversed a conviction in State of Louisiana v. Brain D. Horn, 251 So.3d 1069, 2016-0559, (La. 2018) The Supreme Court, Johnson, C. J., held that trial counsel's concession that

defendant killed the victim over defendant's explicit objection constitution deficient performance and was structure error. *Id.*

In McCoy, *supra.*, the State Supreme Court specifically adopted the standard set forth in Teague, *supra*. Secondly, it obvious they found that McCoy v. Louisiana set forth a new rule of law. However, the court found that Teague exceptions apply to the McCoy's Sixth Amendment guarantees a defendant the right to choose the objective of his defense and to insist that his counsel refrain from admitting guilt, even when counsel's experienced-based view is that confessing guilt offers the defendant the best chance to avoid the death penalty.

Teague's conclusion establishing the retroactivity of new substantive rules is best understood as resting upon constitutional premises. That constitutional command is, like all federal law, binding on state courts.

In essence, the United States Supreme Court has found that a violation of a defendant's Sixth Amendment-secured autonomy ranks as an error of the kind that is called "structural"; when present, such an error is not subject to harmless-error review, a watershed rule, so fundamental to the concept of ordered liberty that it can never be harmless error, that it can never be waived by a failure to object and therefore must be retroactively applicable as a substantial right of the accused. Mr. Rushing contends that upon his findings that where a defendant is denied his right to a structural error "he does not have to make an additional showing of injury resulting from the court's action".

### VIII. CONCLUSION

WHEREFORE, Petitioner Rushing prays that this Court grant the instant supervisory writ and vacate the conviction and sentence and such other and further relief as the Court deems just and necessary.

Respectfully submitted,

David Rushing, #103801
Camp F, Dorm -2
Louisiana State Penitentiary

Angola, Louisiana 70712

IX.   CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing motion was served by hand delivery or first

class mail to the District Attorney for 16 day of September, 2019.

David D. Rushing

All Parties Served:

District Attorney's Office
D A. Warren Montgomery
Justice Center
701 N. Columbia Street
Covington, Louisiana 70433

X. INDEX OF EXHIBITS

APPENDIX

1. Exhibit "1", Indictment.

2. Exhibit "2" A Letter from The Louisiana Supreme Court.

3. Exhibit "3", Extract of Minutes Entry, Thursday, June 28, 1990.

4. Exhibits "4" & "5", Application for Post-Convictin Relief & Motion Requesting an Evidentiary Hearing.

5. Exhibit "6", Motion and Order for the District Attorney to File a Response.

6. Exhibit "7" Hon. William H. Burris filed an Order for Response ordering the District Attorney to respond within 30 days to the Motion and Order for Response.

7. Exhibit "8" Motion to Grant Relief that's Requested Under an Application for Post-Conviction Relief

8. Exhibit "9" State's Response to David Rushing's Application for Post-Conviction Relief.

9. Exhibit "10" Motion Addresses the State's Late Responded Answer.

10. Exhibit "11" District Court denied Mr. Rushing post-conviction relief application.

11. Exhibit "12" Notice of Appeal and a Motion to Set Return Date for Supervisory Writs

12. Exhibit "13" Mar L. Zimmermann, Zimmermann Psychology Clinic, Baton Rouge, Louisiana.

**Trial Transcripts:**

1 Vol. II, T. Tr. Pg. 26

2. Vol. II, T. Tr. Page 24.

3. Vol. II, T. Tr. Pg. 26. Line 12

4. Vol. II, T. Tr. Pg. 69.

5. Writ of Habeas Corpus Pg. 13, Vol. IV, Pg. 229.

6. Vol. IV, Pg. 231.

7. Vol. ___ T. Tr. Pg. 146.

8. Vol. II, T. Tr. Pg. 223.

9. Habeas Corpus Writ Page 14, #16.

10.   Vol. II, T. Tr. Page 34.

11.   Vol. II, T. Tr. Pg. 69.

12.   Rec. Vol. IV, Pg. 229.

13.   Rec. Vol. IV, Pg. 231.

14.   Writ of Habeas Corpus, Page 14, #46.

15.   Vol. IV, T. Tr. 224.

16.   Writ of Habeas Corpus, Pg. 15, #49, Rec. Vol. V, p. 92.

16.   Vol IV, T. Tr. 229.

17.   Writ of Habeas Corpus, Pages 12, Rec. Vol. IV., p. "229 & 231".



Office Of The Clerk
## Court of Appeal, First Circuit
State of Louisiana
www.la-fcca.org

**Rodd Naquin**
**Clerk of Court**

**Notice of Writ**

September 23, 2019

Post Office Box 4408
Baton Rouge, LA
70821-4408
(225) 382-3000

2019-KW-1259

State Of Louisiana
   Versus
David D. Rushing

TO:   David D. Rushing
     Louisiana State Penitentiary
     Angola, LA 70712

Warren LeDoux Montgomery
701 N. Columbia Street
Covington, LA 70433
wmontgomery@22da.com

Re: 22nd Judicial District Court, No. 1092631, ""

The application for writs by **David D. Rushing** in the matter entitled and bearing the Court of Appeal Docket number as shown above in which you are listed as counsel of record has been received and filed.

Cordially yours,

RODD NAQUIN
CLERK OF COURT

cc:   William H. Burris     22nd Judicial District Court

# EXHIBIT "14"

# STATE OF LOUISIANA
# COURT OF APPEAL, FIRST CIRCUIT

STATE OF LOUISIANA

VERSUS

DAVID D. RUSHING

NO. 2019 KW 1259

DEC 0 6 2019

In Re:   David D. Rushing, applying for supervisory writs, 22nd
         Judicial District Court, Parish of St. Tammany, No.
         109263-1.

BEFORE:   McCLENDON, WELCH, AND HOLDRIDGE, JJ.

   WRIT DENIED.

                    PMc
                    GH

   Welch, J., concurs.  Considering the United States Supreme
Court's ruling in **Teague v. Lane**, 489 U.S. 288, 109 S.Ct. 1060,
103 L.Ed.2d 334 (1989), **McCoy v. Louisiana**, ___ U.S. ___, 138
S.Ct. 1500, 200 L.Ed.2d 821 (2018), does not apply retroactively
in the circumstances presented in the instant case.

COURT OF APPEAL, FIRST CIRCUIT

RECEIVED

JAN 02 2020

Legal Programs Department

INTO THE
LOUISIANA SUPREME COURT
STATE OF LOUISIANA

SCANNED at LSP and Emailed
1-2-2020 by KB , 151 pages
date        initials   No.

CASE NO.: _____

STATE OF LOUISIANA
(Respondent/Defendant)

VERSUS

DAVID RUSHING
(Appellant/Petitioner)

---

SUPERVISORY WRIT OF REVIEW

---

In re Rushing, David; applying for Supervisory Writ of Review, from Parish of
St. Tammany, 1st Judicial District Court, 109-263, Division "E", No., Louisiana, from
the Court of Appeal, First Circuit Denial under Case No. 2019-KW-1259 into this
Honorable Court.

ORIGINAL BRIEF IN BEHALF OF DAVID RUSHING, PRO SE FILINGS

Respectfully submitted,

David Rushing

David Rushing, #103801
Camp F, Dorm – 2
Louisiana State Penitentiary
Angola, Louisiana 70712
Date: December 30, 2019

# EXHIBIT "15"

David Rushing, #103801
Camp F, Dorm - 2
Louisiana State Penitentiary
Angola, LA 70712-9818

December 30, 2019

Clerk of Court,
Louisiana Supreme Court
400 Royal Street
New Orleans, LA 70130

RE: Application for Writ of Certiorari or Review; State of Louisiana vs. David Rushing, off Supervisory Writ from the 22nd Judicial District Court, Parish of St. Tammany Criminal Case No.#109263-1, First Circuit Court of Appeal, Docket No. 2019-KW-1259.

Dear Clerk:

Enclosed please find my pro se Application for Writ of Certiorari or Supervisory Writ of Review with attached required exhibits. I respectfully request that your office file the instant writ application and present same to the Court for consideration.

In addition, I respectfully request that your office notify me of the filing date and the docket number assigned thereto.

I thank you in advance for your time, help and consideration in this matter.

With kindest regards,

_____
David Rushing, #103801

Enclosures

Cc: w/encl. District Attorney, Parish of St. Tammany

COURT RULES

APPENDIX C. SUPREME COURT OF LOUISIANA
WRIT APPLICATION FILING SHEET

No._____

TO BE COMPLETED BY COUNSEL
or PRO SE LITIGANT FILING APPLICATION

TITLE

Applicant: David Rushing

STATE OF LOUISIANA

Have there been any other filing in this
Court in this matter? [ ] Yes          [X] No

VERSUS.

Are you seeking a Stay Order?          No
Priority Treatment?   No

DAVID RUSHING

If so you MUST complete & attach a
Priority Form

LEAD COUNSEL PRO SE LITIGANT INFORMATION

APPLICANT:
Name: David Rushing
Address: Camp F, Dorm - 2
La. State Penitentiary, Angola, LA 70712-9818
Phone: N/A    Bar Roll No. N/A
Pleading being filed: [ X ] In Proper Person,

RESPONDENT:
Name: Warren Montgomery
Address: Justice Center, 701 N. Columbia St.
Covington, LA 70433
Phone: Unknown ____ Bar Roll No. Unknown
[ ] In Forma Pauperis

Attach a list of additional counsel/pro se litigants, their addresses, phone numbers and the parties they represent.

TYPE OF PLEADING

[ ] Civil, [ X ] Criminal, [ ] Bar, [ ] Civil Juvenile, [ ] Criminal Juvenile, [ ] Other

ADMINISTRATIVE OR MUNICIPAL COURT INFORMATION

Tribunal/Court:_____    Docket No.
Judge/Commission/Hearing Officer:_____    Ruling Date:

DISTRICT COURT INFORMATION

Parish and Judicial District Court: Parish of St. Tammany, 22rd Judicial District Court, Docket Number: 109-263
Judge and Section:           Date of Ruling/Judgment: August 12, 2019, Denial.
Hon. William H. Burris, Division "E"

APPELLATE COURT INFORMATION

Circuit: 1st Circuit Court of Appeal,  Filing Date: September 16, 2019, Docket Number: 2019-KW-1259
Applicant in Appellate Court: David Rushing, First Circuit Court of Appeal
Ruling Date:           Panel of Judges:           En Banc: [ ]
December 6, 2019 Denial/Received 12/10/19, McClendon, Welch and Holdridge, JJ.

REHEARING INFORMATION

Applicant:_____    Date Filed:_____    Action on Rehearing:
Ruling Date:_____    Panel of Judges:_____    En Banc: []

PRESENT STATUS

[ ] Pre-Trial, Hearing/Trial Scheduled Date:_____, [ ] Trial in Progress, [ X ] Post Trial
Is there a stay now in effect?  No  Has this pleading been filed simultaneously in any other court?          No
If so, explain briefly

VERIFICATION

I certify that the above information and all of the information contained in this application is true and correct to the best of my knowledge and that all relevant pleadings and rulings, as required by Supreme Court Rule X, are attached to this filing.  I further certify that a copy of this application has been mailed or delivered to the appropriate court of appeal (if required), to the respondent judge in the case of a remedial writ, and to all other counsel and unrepresented parties.

DATE
December 30, 2019

SIGNATURE

_____

## TABLE OF CONTENTS

(PAGE)

Table of Contents.............................................................................................i

Table of Authorities....................................................................................ii, iii

Application for Supervisory Writ of Review..............................................................1

Statement of Jurisdiction....................................................................................1

Rule X. Writ Application....................................................................................1

Summary of the Argument....................................................................................2

Statement of the Facts....................................................................................3

Statement of The Case....................................................................................6

Issue Presented....................................................................................7

     I. Did The Trial Court Erred In Allowing The State's Response To Stand When The State Filed An Untimely Response To Petitioner's Post-Conviction Relief When The State Was Allowed Over 300 Days Without A Response?

     II. Did Petitioner David Rushing Lay The Foundation Of Robert McCoy On This Same Structure Issue That Wasn't Properly Raise In 1986 And 1993 By Petitioner's Counsel?

     III. Whether If Teague v. Lane Did Apply To Petitioner David Rushing, Petitioner Rushing Still Meets The Requirements Of Teague v. Lane To The Exception Rule?

Argument....................................................................................7

Conclusion....................................................................................21

Certificate of Service....................................................................................21

Appendix....................................................................................23

TABLE OF AUTHORITIES
Table Of Cases

Cases                                                                                                          Page

Table of the Federal Constitution

Eighth Amendment rights and Fourteenth Amendment rights of the United States Constitution..........1

5th Amendment Rights...............................................................................................11

Fourth, Fifth, Sixth, Eighth and Fourteenth Amendment to the United States Constitution................1

Sixth Amendment to the United States.................................................1, 2, 7, 8, 10, 14, 21

Sixth and the Fourteenth Amendment to the United States Constitution..................................2, 7

Federal Statutory

Federal Cases

Arizona v. Fuminante, 499 U. S. 279, 310, 111 S. Ct.1246, 113 L. Ed.2d 302 (1991)................12, 15

Atkins v. Virginia, 536 U. S. 304, 122 S. Ct. 2242 (U.S. 2002)............................................17

Batson v. Kentucky, 476 U. S. 79, 90 L. Ed.2d 69, 106 S. Ct. 1712 (1986)................................20

Brookhart v. Janis, 384 U. S. 1, 5-7, 86 S. Ct. 1245, 16 L. Ed.2d 314 (1966)..............................12

Butler v. McKeller, 494 U. S. 407, 108 L. Ed.2d 347, 110 S. Ct. 1212 (1990)..............................20

Faretta, 422 U. S., at 834, 95 S. Ct. 2525).................................................................14

Harris v. New York, 401 U. S. 222, 225, 91 S. Ct. 643, 28 L. Ed.2d 1 (1971)..............................12

McCoy v. Louisiana, 138 S. Ct. 1500, 200 L. Ed.2d 821 (2018)...1, 2, 6, 7, 8, 9, 10, 11, 13, 14, 18,19,21

McKaskle v. Wiggins, 465 U. S. 168, 177, n.8, 104 S. Ct. 944, 79 L. Ed.2d 122............................12

Penry v. Lynaugh, 109 S. Ct. 2934..........................................................................17

Rushing v. Butler, 868 F.2d 800, (C. A.5 (La) 1989)........................................................18

State ex rel Taylor v. Whitley, 606 So.2d 1292, (La. 1992)..................................................19

Taylor, supra. 1294.........................................................................................20

Teague v. Lane...........................................................................................7,20

United States v. Gonzalez-Lopez, 548 U. S. 140, 126 S. Ct. 2557, 165, 177 L. Ed.2d 409...............12

Waller v. Georgia, 467 U. S. 39, 104 S. Ct. 2210,81 L. Ed.2d 31, (1984)..................................12

Weaver v. Massachusetts, 137 S. Ct. 1899 (U. S. Mass. 2017)............................11, 12, 13, 14

Table of the State Constitution

Article V, § 5 (D) of the Louisiana Constitution.............................................................1

Article I §§ 2 and 13 of the Louisiana Constitution.........................................................2

Article I, Sections 2, 3, 5, 13, 14, 16, 17, 20, 22 & 24 of the Louisiana Constitution of 1974............1

Article 1 § 16 and 17 of the Louisiana Constitution...............................................................7

Article 1 § 20 of the Louisiana Constitution......................................................................1

### State of Statutory Provisions

Application for Post-Conviction Relief under the Louisiana Code Criminal Procedure, Articles 924, 930, and 930.8(A)(2)...........................................................................................10

Article 770. (4) and Article 771. Admonition.....................................................................11

Article 905.5 of the La. C. Cr. P.............................................................................18

LSA- R. S. 14:30.............................................................................................3

Louisiana Code Criminal Procedure, Article 927.............................................................8, 9

930.8 of the La. C. Cr. P..................................................................................9, 18

### State Rules

La. S. Ct. R. X(1)(a)(1)......................................................................................1

La. S. Ct. R. X (1)(a)(4)......................................................................................1

Rule X. Writ Application.......................................................................................1

### State Cases

State of Louisiana v. David Rushing, Number 84-KA-0991.......................................................5

State v. David Rushing, Case #109263-1........................................................................6

State v. Horn, 2016-0559, 251 So.3d 1069, (La. 2018).......................................................11,20

State v. Williams, 2001-1650 (La. 11/1/02), 831 So.2d 835..................................................16, 17

### Other

ABA Model Rule of Professional Conduct 1.2(a)(2016).........................................................12

ABA Mode Rule of Professional Conduct Rule 1.0 Terminology, (f)............................................14

## APPLICATION FOR SUPERVISORY WRIT OF REVIEW

Petitioner, David Rushing, moves this Court pursuant to the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendment to the United States Constitution, and Article I, Sections 2, 3, 5, 13, 14, 16, 17, 20, 22 & 24 of the Louisiana Constitution of 1974. Specifically, the Sixth Amendment to the United States, to grant his application for supervisory writ of review, and reverse the ruling of the First Circuit Court of Appeal, and the district court's denial.

## STATEMENT OF JURISDICTION

Jurisdiction is vested into this Honorable Court pursuant to Mr. Rushing's Application for Supervisory Writ of Review and Memorandum of Law pursuant to Article V, § 5 (D) of the Louisiana Constitution.

## RULE X. WRIT APPLICATION

SECTION 1.          WRIT GRANT CONSIDERATIONS

Following years of litigation, the late Judge A. Clayton James, J., sentenced Mr. Rushing to first degree murder and he appealed. Years later the United States Court of Appeals Fifth Circuit reversed his death sentence vacated and remanded it back to district court. The Court of Appeals, Johnson, Circuit Judge, held that introduction of victim impact testimony during sentencing phase of trial violated Mr. Rushing's Eighth Amendment rights and Fourteenth Amendment rights of the United States Constitution and Article 1 § 20 of the Louisiana Constitution. In a single sentence, the First Circuit Court of Appeal stated that McCoy v. Louisiana, 138 S. Ct. 1500, 200 L. Ed.2d 821 (2018) does not apply retroactively in the circumstances Rushing has presented.

Four grounds warrant this Court's discretionary review, and reversal of the First Circuit:

1.       The lower court decision conflicts with decisions rendered by other courts; the decision of the First Circuit Court of Appeal conflicts with decisions of this Court, and the Supreme Court in McCoy v. Louisiana, 138 S. Ct. 1500 (U.S. La. 2018) La. S. Ct. R. X(1)(a)(1);

2.       Significant unresolved issues of law involved in the case presented for review, the decision of the First Circuit Court of Appeal conflicts with the decisions of this Court and the Supreme Court of the United States that the denial of right to benefits an error of the kind that is called "structure"; when presented, such an error is not subject to harmless-error review. La. S. Ct. R. X(1)(a)(1);

3.       The First Circuit Court of Appeal erroneously interpreted the precedent of this Court and the Supreme Court of the United States in failing to reverse the district court's ruling that Rushing was denied his right to expressly asserts that the objective of his defense is to maintain innocence of the charged criminal acts, his lawyer must abide by that objective and may not override it by conceding guilt. La. S. Ct. R. X (1)(a)(4); and

4.       The First Circuit Court of Appeal erroneously interpreted the precedent of this Court and the Supreme Court of the United States when it found that the district court properly denied Rushing's briefs for relief, La. S. Ct. R. X(1)(a)(4).

1

## SUMMARY OF THE ARGUMENT

In 1983, David Rushing stood trial for the murder of a taxi-cab driver Danny Archer. Lloyd Jackson, a route salesman, had completed his deliveries and was driving home when he discovered a cab stopped beside the road with its motor running, lights on, doors shut and its windows rolled up. Mr. Jackson found Danny Archer behind the steering wheel leaning over to the passenger side cover with blood. Jackson went to a nearby house and called the police.

Given the facts of this capital case, Mr Rushing had a vested interest right under the Sixth, and the Fourteenth Amendment to the United States Constitution and Article I §§ 2 and 13 of the Louisiana Constitution who insisted to his prior counsel to stop mentioning his guilt to the jurors. Yet despite Rushing telling his attorney at the table to stop admitting his guilt and to maintain his innocence, Attorney Simmons would do it again in a periodic manner. Rushing contends that Attorney John Simmons had to reasonably believed that admitting his guilt would afforded him the best chance to avoid being convicted of the death penalty. Attorney Simmons conceded his guilt during closing arguments citing the following comments made during his closing to the jury:

> I'm not asking you to go beyond the evidence to seek for reasons to acquit.
> I'm not asking you to acquit this man, because he's admitted from the stand that he was there. He was there, and he's a principle.
>
> ***
>
> I'm not saying there's reason to let this man walk out of here. I'm not saying to do that. I wouldn't insult your integrity in any form or fashion in asking you to do that.[1]

However, it appears that not one court envisioned the Sixth Amendment right to counsel when John Simmons conceded Rushing guilt during trial that was in violation of his Sixth Amendment-secured autonomy ranks as an error of the kind that is called "structural"; when present, such an error is not subject to harm-error review. (U. S. Const. Amend. 6).

Thereafter, the Court of Appeals, Johnson, Circuit Judge accentuates the reviewing of the records, stating we weren't prepared to conclude, as Rushing had requested, that his counsel's performance in making the above referenced and isolated remarks was indicative of a deficiency performance in pleading him guilty before the jury that he had requested him not to do. In McCoy v. Louisiana, 138 S. Ct. 1500, (U. S. La. 2018), Justice Ginsburg, stated that when a client expressly asserts that the objective of his defense is to maintain innocence of the charge criminal acts, his lawyer must abide by that objective and may not override it by conceding guilt. Attorney Simmons were sporadically admitting his client's guilt to the jury and his remarks, they are an accurate reflection of

---

1.See, Record Vol. IV at 229 & 31

the record in this case.

In this case, Attorney Simmons actions may in a given case such as this one lose focus on the forest because of a focus on an individual tree, and the Honorable Judge James were more likely to maintain a focus on the entire justice system when this trial was being taken place.

The First Circuit held that Rushing case does not reach the benefits of McCoy without explanation, that the district court did not err in "denying Rushing Post Conviction Relief". Rushing did demonstrated in his two briefs. David Rushing's conviction is the product of a "structural"; when present, such an error is not subject to harmless-error review. This Court should reverse the First Circuit and the district court's order and grant Rushing a new trial.

## STATEMENT OF THE FACTS

On April 1, 1983, between 3:30 and 4:00 a. m., Lloyd Jackson, a route salesman, had completed his deliveries and was driving home when he discovered the body of Danny Archer behind the steering wheel leaning over to the passenger side covered with blood. He immediately called the police. The police searched the crime scene finding a wallet which contained Jeffrey Fussell's driver license. This evidence led the officers to Fussell's trailer finding him and David Rushing asleep. Both men were placed under arrest and a short time later. Fussell led the officers to the place where the shotgun which had been used to kill Mr. Archer had been discarded.

On April 21, 1983, David Rushing and Jeffrey Fussell were both indicted for first degree murder of Danny Archer, a violation of LSA- R. S. 14:30.[2] Through pleadings the State made it known that the murder allegedly occurred in the course of an armed robbery or simple robbery at the time the victim was killed. Following the denial of motions to suppress both physical evidence and inculpatory statements given by both defendants, the state elected to severance their trials. Presumably this move was to eliminate any problems in introducing the inculpatory statements, but the State had negotiating a plea bargain with Jeffrey Fussell's testimony.[3]

This is a first degree murder charge against Rushing and Fussell. Attorney John Simmons was appointed by the Court to represent David Rushing for the Public Defender Board of St. Tammany Parish. Mr. Rushing entered a plea of Not Guilty.

Six months after Rushing and Fussell's indictment for first degree murder charges, the State scheduled David Rushing trial for October 10, 1983. While going through the pretrial stages, Jeffrey Fussell reached an agreement with the prosecutor to testify in behalf of the State. At trial, Attorney

2. See Exhibit " I", Indictment.
3. Vol. II, T. Tr. Pg. 26

3

John Simmons had his own theory of the case, and he never explained to Rushing about a guilt concession strategy that Rushing lack the understanding to why he was saying in his opening statement to the jury about him being guilty. Simmons extensively expressed to the jury in his opening statements, "that he was going to prove that Mr. Sheridan, (a state witness) was in the company of the defendant David Rushing, and the culpability of Mr. Sheridan providing the shot gun for Rushing knowing an armed robbery was going to take place".[4] However, it does appears Simmons intention was to bring his opening statement to the jury first, before the State introduced any evidence that would be an unexpected encounter defense to his opening statement. Mr. David R. Paddison, the Assistant District Attorney argued that Mr. Simmons to not engage in any potential evidence charged acts and he adamantly objected to any admission of guilt in the following objection:

Mr.Paddison:  Your Honor I have to object to the usage of any potential
            evidence in this matter it hasn't been admitted.[5]

Mr. Rushing continue to demonstrate the facts of his counsel's involvement with possessing autonomous character and subterfuge behavior. Moreover, he further stated that, "the defendant David Rushing is guilty, or when he did it".[6] In this case, specifically, with an individual liberty, and, in capital cases, life, at stake, it is the defendant's prerogative, not counsel's, to decide on the objective of his defense in a capital murder trial; to admit guilt in the hope of gaining mercy at the sentencing stage, or to maintain his innocence, leaving it to the State to prove his guilt beyond a reasonable doubt. When Rushing expressly asserts to Mr. Simmons that the objective of his defense was to maintain his innocence of the charge criminal acts; however, in closing arguments, defense counsel Simmons continued to usurp control of Rushing guilt before the jury. He went as far as inaccurately perform before the jury by utterly failing to offer the jury any reason to acquit Mr. Rushing of this crime. And, he incredibly told the jury, "his client was not innocent" in this respectfully manner:

"I'm not asking you to go beyond the evidence to seek for reasons to acquit. I'm not
asking you to acquit this man, because he's admitted from the stand that he was there.
He was there, and he's a principle there."[7]

Attorney Simmons continued to usurp control over Rushing protected autonomy rights
under the Sixth Amendment to the U. S. Constitution.

"I'm not saying there's reason to let this man walk out of here. I'm not saying to do that.
I wouldn't insult your integrity in any form or fashion in asking you to do that."[8]

Mr. Simmons also stated, "that he hoped the jurors would stick by their decision, regardless of the outcome, instead of urging the jury to decide in his client's favor". Counsel's performance was a

4.See Vol. II, T. Tr. Page 24
5.See Vol. II, T. Tr. Pg. 26, Line 12
6.Vol. II, T. Tr. Pg.69 & 70
7.See, Writ of Habeas Corpus, Pg. 12, and in Vol. IV, Pg. 229
8.See, Writ of Habeas Corpus, Pg. 12, &Vol. IV, Pg. 231

serious breach of duty to Rushing's criminal case. The jury were confronted with a plea of not guilty when Rushing own attorney was admitting that his own client was not innocent. It can be further highlighted, that counsel for Rushing destroyed any belief of the jury that Rushing's counsel believed or knew that his client was innocent.

Under these circumstances, the Court should find that Rushings' counsel admission of a client's guilt over his client's express objective is error structure in kind, for it blocks the Defendant's right to make a fundamental choice about his own defense. Mr. Rushing was convicted of murder. At the penalty phase the jury made a binding recommendation that Mr. Rushing be executed. On November 4th, 1983, Honorable A. Clayton James, Judge, sentenced Mr. Rushing to a death sentence. Jeffrey Fussell was subsequently allowed to plea guilty to second degree murder.

Therefore, on June 27, 1984, the Louisiana Supreme Court notified Attorney Simmons to be advised that he had not filed any brief in behalf of State of Louisiana v. David Rushing, Number 84-KA-0991, unless his brief is received within ten (10) days or some reasonable explanation is given for his failure, he may be subject to a rule for contempt.[9] Months later, the Louisiana Supreme Court issued an order upon the attorneys John R. Simmons, Esq., and Dwight Doskey, Esq., requesting an appeal from the 22nd Judicial District Court, Parish of St. Tammany. Both counsels for the defendant had failed to file a sentence review memorandum, despite numerous and repeated requests by the Court. It was ordered by the Court if a sentence review memorandum is filed by August 31, 1984 or else show cause on September 5, 1984 in the Courtroom of the Supreme Court of Louisiana at 9:30 a. m. The two assigned attorneys were not in the best of Rushing's behalf, and it appears that their behavior lack the proper performance that were needed in protecting their client from being executed.[10]

On December 5, 1987, while on death row, Mr. Rushing's new Attorneys Thomas M. Ross, Doyle and Michaels had him examined by Dr. Marc L. Zimmermann, Ph. D., in a Visitation room, Camp J, (Death Row), Louisiana State Penitentiary, Angola, Louisiana.

In 1989, the United States Court of Appeals, Fifth Circuit reserved David Rushing death sentence conviction and vacated and case was remanded. Accordingly, the Extract of Minutes Entry on Thursday, June 28, 1990, Mr. Rushing was re-sentence to life imprisonment without the benefit of parole, probation or suspension of sentence after the state waived it's right to a sentencing hearing on April 6, 1990.[11] Mr. Rushing was present in open Court attended by his counsel, Nicholas J. Trenticosta, for a new sentencing hearing. The State at this time informed the Court that they will not

9. See Exhibit "2" A Letter from The Louisiana Supreme Court.
10. See Exhibit "2"
11. See Exhibit "3", Extract of Minutes Entry, Thursday, June 28, 1990.

seek the Death penalty in this matter. David Rushing was sentence to life in prison at hard labor.[12.]

Eighteen years later, in an unforeseeable case by the United States Supreme Court discovered a new "structural error" in behalf of Robert Leroy McCoy, vs. State of Louisiana, 138 S. Ct.1500, (U. S. 2018). Rushing will demonstrate that his case should be applied under the same entitlement as McCoy. The new structural error that was discovered in McCoy's case when the Sixth Amendment guarantees a defendant the right to choose the objective of his defense and to insist that his counsel refrain from admitting guilt, even when counsel's experienced—based view that confessing guilt offers the defendant the best chance to avoid the death penalty.

Despite all this evidence, Rushing seen how his attorney was insisting on his guilty before the jury, and Jeffrey Fussell had received a second degree murder conviction for his cooperation with the State to testify in their behalf. Rushing having no intellectual idea why his counsel was admitting his guilt to the jury?

STATEMENT OF THE CASE

David Rushing filed an Application for Post-Conviction Relief alleging, *inter alia*, that his counsel violated his Sixth Amendment Rights guarantees a defendant the right to choose the objective of his defense and to insist that his counsel refrain from admitting guilt, even when counsel's experienced—based view that confessing guilt offers the defendant the best chance to avoid the death penalty.

In the instant case, on July 31, 2019, David Rushing filed his Application Post-Conviction Relief and a Motion Requesting an Evidentiary Hearing.[13.]

The Clerk of Court's Office, Mrs. Rashelle Eiselen, Deputy Clerk notified Mr. Rushing on the Court's ordering the State to file a response in the matter, State v. David Rushing, Case #109263-1.

On April 29, 2019 Mr. Rushing filed a Motion and Order for the District Attorney to File a Response.[14.] On May 17, 2019, Hon. William H. Burris, Judge filed an Order for Response ordering the District Attorney to respond within 30 days to the Motion and Order for Response filed by defendant on May 3, 2019.[15.]

On July 1st, 2019, Mr. Rushing filed a Motion to Grant Relief that's Requested Under an Application for Post-Conviction Relief.[16.]

On August 1st, 2019, the State's Response to David Rushing's Application for Post-Conviction

12.See Exhibit "3"
13.See Exhibits "4" & "5"
14.See Exhibit "6"
15.See Exhibit "7"
16.Exhibit "8"

Relief.[17] In response to the State's Response, Mr. Rushing filed on August 12, 2019, a Motion Addresses the State's Late Responded Answer.[18] On August 12, the District Court denied Mr. Rushing post-conviction relief, application he received it on the 21st day of August, 2019.[19] On August 26, 2019, Mr. Rushing filed a Notice to Appeal and Motion to Set Return Date for Supervisory Writ.[20] On September 16, 2019, Rushing filed to the Court of Appeal, First Circuit.[21] On December 6, 2019 the First Circuit Court of Appeal rendered its denial, but Rushing received this ruling on December 10, 2019.[22]

This Writ now ensues.

## ISSUES PRESENTED

I. Did The Trial Court Erred In Allowing The State's Response To Stand When The State Filed An Untimely Response To Petitioner's Post-Conviction Relief When The State Was Allowed Over 300 Days Without A Response?

II. Did Petitioner David Rushing Lay The Foundation Of Robert McCoy On This Same Structure Issue That Wasn't Properly Raise In 1986 And 1993 By Petitioner's Counsel?

III. Whether If Teague v. Lane Did Apply To Petitioner David Rushing, Petitioner Rushing Still Meets The Requirements Of Teague v. Lane To The Exception Rule?

## ARGUMENT

David Rushing incorporates by reference all arguments made in his Opposition to the State's Response to his Application for Post-Conviction Relief.[23]

I. THE DISTRICT COURT DISREGARDED CLEAR STATE AND FEDERAL JURISPRUDENCE WHEN IT SUMMARILY DENIED MR. RUSHING POST-CONVICTION RELIEF APPLICATION FROM ITS FINDINGS FOR THE LACK OF A STRUCTURE ERROR

In the case now before you, Mr. Rushing has been denied his right to the Sixth and Fourteenth Amendment of the United States Constitution and Article 1 § 16 of the Louisiana Constitution that guarantee a defendant have the right to a fair trial in presenting a defense. This Court has long recognized that the protection of Article 1, Sections 16 and 17 may only be realized through a full review of the trial proceedings. "[T]he purpose of the right to a defense is when his Sixth Amendment guarantee the accused in a criminal proceeding the right to have the assistance of counsel for his defense; it does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense. U. S. Const. Amend. 6.

In the awaiting of McCoy v. Louisiana, 138 S. Ct. 1500, (U. S. La. 2018) prescribes:

17. Exhibit "5"
18. See Exhibit "10"
19. See Exhibit "11"
20. See, Exhibit "12"
21. See, Exhibit "13"
22. See, Exhibit "14"
23. Exhibit "4"

The Supreme Court, Justice Ginsburg, held that: The Sixth Amendment guarantee a defendant the right to choose the objective of his defense and to insist that his counsel refrain from admitting guilt, even when counsel's experienced-based view is that confessing guilt offers the defendant the best chance to avoid the death penalty. Pp. 1507-1512.

Rushing will be demonstrating how the trial court has disregarded clear State and Federal jurisprudence to the critical facts that deprived him of his state and federal rights to present a defense. Under the Louisiana Supreme Court and the United States Supreme Court, a constitutional violation of this magnitude required automatic reversal of Mr. Rushing's conviction and sentence. Such an error can never be seen as harmless.

A. The District Court Erroneously Found That Mr. Rushing's Attorney John Simmons Did Not Commit A Structure Error In His Trial By Telling The Jury He Is Guilty Of The Charge Of 1st Degree Murder.

Rushing argues that he is entitled to a new trial based upon McCoy Id. In McCoy's case, Rushing having discovered a new right that's found to be by the Court, but the State stated it is not an issue in the his case. The Court compounds its error by summarily concluding that a violation of this right "ranks as error of the kind the Court's decisions have called 'structure.' "

First, it is hard to visualize how the right could come into play in any case other than a capital case in which the jury must decide in tandem the guilt and punishment. In all other cases, guilt is almost always the only issue for the jury have to decide, and therefore admitting guilt of all charged offenses will achieve nothing. It is hard to imagine a situation in which a competent attorney might take that approach. So the right that the Court has discovered is effectively confined to capital cases.

On July 31, 2018, Mr. Rushing filed his P. C. R. with attached exhibits in support of his argument to his right of a new rule of constitutional law.[24]

Rushing asserts that the trial court erred in allowing the State's response to stand to his filed Post-Conviction Relief Application. The Clerk of Court's Office, Deputy Clerk did notify Rushing concerning his pending application had been received and filed with Hon. Judge Childress' who issued an Order to the District Attorney's Office to respond with an answer under Article 927:

The Louisiana Code Criminal Procedure, Article 927. Procedural objections; answer shall be applied in the instant case as following:

A. If an application allege a claim which, if established, would entitle the petitioner to relief, the court shall order the custodian, through the district attorney in the parish in which the defendant was convicted, to file any procedural objections he may have, or an answer on the merits if there are no procedural objection, within a specified period not in excess of thirty days. If procedural objection are timely filed, no answer on the merits of the claim may be ordered until such objections have been considered and rulings thereon have become final.

---

24. See, Exhibit "4"

The prosecutor subterfuge his effort to deflect his action for lack of responding to the Court's Order twice in a timely manner under **Article 927 A., of the La. C. Cr. P.** should have been denied by procedural bar. Because, in view of the facts that will be set forth the State cannot offer any explanation for why he did not answer in a timely manner, and in failing to doing so, this Court should reject the State's reasoning. Because, if a defendant is over the time limitation in his writ or response to the Court the defendant will be time barred under 930.8 of the La. C. Cr. P.

The Court allowed the State over 300 days with out a response to Mr. Rushing pending petition. On the 29th day of April 2019, Mr. Rushing filed a Motion and Order for Response filed by defendant and it was filed in the district court on May 3, 2019.[25.]

On the 17th day of May 2019, Hon. Judge W. H. Burris Ordered that the Office of the District Attorney to respond within 30 days to the motion and order for a response filed by Mr. Rushing. Accordingly, the District Attorney's Office were ordered twice by the Court that were failed to be acknowledged from those orders.[26.] Which would expire on June 28, 2019.

Also, see attachment for this Court's records is Petitioner's[27] stating an untimely response dated August 1, 2019, which would be 21 working days late of the Court's Order.

On or about July 1, 2019, Petitioner filed a Motion to Grant and Deem the State's Response Waived. Because, the State's untimely response, and Petitioner's motion was denied without a hearing. Under LSA- C. Cr. P. Art. 707, the State had an opportunity to file a Motion for Continuance is not limited to cases set for trial, but also applies with respect to other matters.

The Court has failed to inform Mr. Rushing that the State is allowed a certain amount of time to file his objection besides the rule under LSA- C. Cr. P. art. 927.

On August 1st, 2019 the Assistant District Attorney Matthew Caplan filed the State's Response to David Rushing's Application for Post-Conviction Relief rendering David Rushing is not entitled to post-conviction relief and must be denied.

The district court failed to allow Mr. Caplan to answer Mr. Rushing motions that were filed in his behalf to the prosecutor's failure to answer all pending motions. These motions were a key factor to grant and deem the State's response waived, because the Court based its findings and conclusion from adopting the State's response in a shorter version of the State's denial.

The gist of this argument is raised in behalf of an issue that has been recently ruled a new structural error from McCoy's case in <u>Robert Leroy McCoy v. Louisiana</u>, 138 S. Ct. 1500, (U.S. La.

25. See Exhibit "6"
26. See Exhibit "6" and Attached Exhibit "7"
27. Exhibit "10"

2018). Mr. Rushing will be demonstrating below how his attorney John Simmons behavior illustrates the same similarities that has been found in McCoy's structural error.

David Rushing, requesting this Court to Vacate the August 12, 2019's ruling from the District Court and Remand back to the trial for a hearing or in alternative a new trial.

ISSUE NUMBER TWO:

II.      Whether the Decision to Admit Guilt in a Capital Case as Part of the
         Defense Objective Belongs to Counsel Or to the Accused?

David Rushing presents a cognitive claim under the Sixth Amendment that guarantees his right to choose the objective of his defense and to insist that his counsel refrain from admitting guilt, even when counsel's experienced-based view is that confessing guilt offers the defendant the best chance to avoid the death penalty. Citing, McCoy v. Louisiana, 138 S. Ct.1500, 200 L.Ed.2d 812 (2018).

Due to the new ruling of law that established in Robert Leroy McCoy v. Louisiana, Justice Ginsburg held, the Sixth Amendment guarantees a defendant the right to choose the objective of his defense and to insist that his counsel refrain from admitting guilt, even when counsel's experienced-based view is that confessing guilt offers the defendant the best chance to avoid the death penalty. Pp.1507-1512. Upon receiving notice Rushing immediately commenced an Application for Post-Conviction Relief under the Louisiana Code Criminal Procedure, Articles 924, 930, and 930.8(A)(2) he relied on the following exception to the period of limitation;

> The claim asserted in the petition is based upon a final ruling of an appellate court establishing a therefore unknown interpretation of constitutional law and petitioner establishes that this interpretation is retroactive applicable to his case, and the petition is filed within one year of the finality of such ruling.

Mr. Rushing asserts at the beginning of his capital murder trial, his counsel John Simmons decided in his opening statement to the jury admitting his client's guilt, and Mr. Sheridan provided the shotgun for Mr. Fussell and Rushing that was used in the armed robbery of this murder trial to the jury. Attorney Simmons appeared that he had his own strategic plan. And, immediately A. D. A. Paddison had to object to Simmons unethical behavior because he said, "Your Honor, I have to object to the usage of any potential evidence in this matter it hasn't been admitted". *Id.*[28] Simmons continued to show his strategic defensive methods by admitting Rushing guilt even over the District Attorney's objects on several different occasions besides the opening statements, in the middle of his trial admitting his guilt; and, in his closing statement before the jury he admitted Rushing guilt leaving an immense impact on the jurors mind of guilt.

It is no far stretch at this stage of the argument that it is unequivocally shown by Attorney

---

[28] See Vol. II, T. Tr. Pg. 24, Line 15-27 and Pg. 26, Lines 4-7

Simmons making this ultimate decision to tell the jury that his client was guilty. Those dreadful words greatly factored the jurors' ultimate decision regarding Rushing fate of finding him guilty. Rushing concedes that his attorney's unethical behavior was an unforeseeable act in his admittance to the jury about his guilt. This behavior resulted in a conclusion by the jurors that caused Rushing jurists of reason would find it debatable whether this petition is stating a valid claim of a denial to his constitutional right.

Honorable A. Clayton James, Judge did erred when he allowed Attorney Simmons to commence in his opening statement to the jurors stating, "the defendant David Rushing is guilty, or when he did this",[29] and throughout his client's trial. *Id.*, at 509 of McCoy. The judge being a gatekeeper for the Court allowed Rushing's attorney concede guilt to the jury without questioning Rushing is this your plea? And, if it was Rushing plea, Judge James had to inform him of his Boykin Rights to plea guilty, or he had to Order a hearing or a mistrial to counsel unethical behavior as an officer of the Court. But, Judge James failed to honor the law to Article 770. (4) and Article 771. Admonition.

Citing, State v. Horn, 2016-0559, 251 So.3d 1069, (La. 2018), this Court held by Chief Judge B. Johnson, stated that trial counsel's concession that defendant killed the victim over defendant's explicit objection constituted deficient performance and was structural error.

It must be pointed out after learning his attorney's trial strategy was in opposition to Rushing defense. Mr. Rushing asserts that his Attorney John Simmons never asked him what is your defense or what type of alibi do you have for a defense? Neither did Attorney Simmons ask Rushing what defense do you wish me defend you on, nor did he tell Rushing what his defense was? Rushing remained pragmatic under the most emotional critical circumstances of his trial.

Rushing contends he was consistent and a very persistent defendant in his instruction to his attorney after hearing his opening statement to the jury that he specifically told counsel "stop admitting my guilt"! Rushing even went as far as taking the stand despite his Attorney John Simmons' pleading him guilty before the jury. Rushing was forced to give up his 5th Amendment Rights by being compelled to take the stand to testify. Because, he had no other alternative but to tell his Attorney Simmons and those twelve jurors in their faces that he has never touched the victim nor was he ever in the backseat of that taxicab". Rushing testimony represented his not guilty plea and there could be no better way than telling the jury face to face that he did not kill the man.[30] In Weaver v. Massachusetts, 137 S. Ct. 1899 (U. S. Mass. 2017), when a client asserts that the objective of "his defense" is to

---

29. See, Vol. II, T. Tr. Pg. 69 thru 70
30. Vol. __, T. Tr. Pg. 146

maintain innocence of the charge criminal acts, his lawyer must abide by that objective and may not override it by conceding guilt. See, **ABA Model Rule of Professional Conduct 1.2(a)(2016)**(a "lawyer shall abide by a client's decisions concerning the objective of the representation"). In such a capital case, if the evidence is not clear and precise to guilt, that evidence must be of the caliber to have required the jury to vote "not guilty" and if the evidence that the defendant presents before the jury cast the case in a completely different light so as to undermine confidence in the jury verdict he must be acquit of the charge(s). See, Weaver v. Massachusetts, 137 S. Ct. 1899 (U. S. Mass. 2017).

Rushing's defense was to take the stand, recant his confession because at the time of the murder and his confession that he was under the intoxication of barbiturates and his only remembrance were in portions of the evening and the other was when he had a black out of no remembrance.

This Court will be able to examine the records of Rushing's counsel being persist on admitting his guilt. Simmons continued to tell the jury that "when some of the officers had given their statement there was a confession made by Mr. Fussell that implicated them both".[31.] And, Deputy Cousin could had been call to testify concerning Fussell exculpatory remarks.[32.] Under current precedent, there are some decisions on which a criminal defendant has the final say. A defendant cannot be forced to enter a plea against his wishes, See Brookhart v. Janis, 384 U. S. 1, 5-7, 86 S. Ct. 1245, 16 L. Ed.2d 314 (1966). Similarly, no matter what counsel thinks best, a defendant has the right to insist on a jury trial and to take the stand and testify in his own defense. See Harris v. New York, 401 U. S. 222, 225, 91 S. Ct. 643, 28 L. Ed.2d 1 (1971).

Here, Rushing's rights were violated, and his protected autonomy right were completed when the court allowed counsel to usurp control of an issue within Rushing sole prerogative. Citing, McKaskle v. Wiggins, 465 U. S. 168, 177, n.8, 104 S. Ct. 944, 79 L. Ed.2d 122; United States v. Gonzalez-Lopez, 548 U. S. 140, 126 S. Ct. 2557, 165, 177 L. Ed.2d 409; Waller v. Georgia, 467 U. S. 39, 104 S. Ct. 2210,81 L. Ed.2d 31. (1984)(public trial is structural). Structural error "affect[s] the framework within which the trial proceeds," as distinguished from a lapse or flaw that is "simply an error "affect[s] the framework within which the trial proceeds," as distinguished from a lapse or flaw that is "simply an error in his trial process itself." Arizona v. Fuminante, 499 U. S. 279, 310, 111 S. Ct.1246, 113 L. Ed.2d 302 (1991). An error may be ranked structural, "if the right at issue is not designed to protect the defendant from erroneous conviction, but instead protects some other interest," such as "the fundamental legal principle that a defendant must be allowed to make his own choices

31.See, Vol. II, T. Tr. Pg. 223
32.Rushing v. Butler, 868 F.2d 800, (C. A.5 (La.)1989). Habeas Corpus Writ Page 14, f46.

about the proper way to protect his own liberty." Weaver, 582 U. S., at - - - -137 S. Ct. at 1908. Mr. Rushing insisted that his counsel refrain from admitting his guilt, even when counsel's experienced-based view is that confessing guilt offers the defendant the best chance to avoid the death penalty. McCoy, Pp. 1507-1512. *Id.*

The contours of Attorney Simmons' trial strategy were outlined from the opening of the his statement to the jury, throughout his entire trial; to the closing argument to the twelve jurors who were there to decide the different incriminating statements, upon his revealing to the jury on separate occasions that his client is guilty of this murder by stating:

> "that he was going to prove that Mr. Sheridan, (a state witness) was in the company of the defendant David Rushing, and the culpability of Mr. Sheridan providing the shot gun for Rushing knowing an Armed Robbery was going to take place".[33]

> And, "the defendant David Rushing is guilty, or when he did it",[34] and throughout his client's trial. *Id.*, at 509 of McCoy.

In Simmons closing argument to the jury he incredibly told the jury his client was not innocent in a respectfully manner:

> "I'm not asking you to go beyond the evidence to seek for reasons to acquit. I'm not asking you to acquit this man, because he's admitted from the stand that he was there. He was there, and he's a principle there."[35]

> Attorney Simmons continued to usurp control over Rushing protected autonomy rights under the Sixth Amendment to the U. S. Constitution.

> "I'm not saying there's reason to let this man walk out of here. I'm not saying to do that. I wouldn't insult your integrity in any form or fashion in asking you to do that."[36]

> Petitioner's counsel stated during the sentencing stage that "his client was guilty as charged".[37]

It can be highlighted that Rushing's jury was confronted with an equivocal situation to Rushing plea of not guilty, and in tandem Simmons was admitting his own client was not innocent. McCoy, *Id.* Simmons illustrated behavior demonstrated that he destroyed any belief of those twelve jurors that Rushing's counsel believed or knew that his client wasn't innocent. And, the effects of that admission would be immeasurable, because his jury were certainly swayed by his counsel's concession of his guilty. Especially, when Judge James allowed counsel admission of defendant's guilt despite the defendant's objections, was structural, and thus, defendant would be accorded a new trial without any need to show prejudice, because he failed to interrupt or ordered a hearing or mistrial in behalf of the defendant. McCoy, *id.*

---

33.See, Vol. II, T. Tr. Page 24
34.Vol. II, T. Tr. Pg. 69
35 See, Rec. Vol. IV, Pg. 229
36.See, Rec. Vol. IV, Pg. 231
37.See, Writ of Habeas Corpus, Page 14, #46

In this present case, Rushing asserts that the trial judge is consider as a gatekeeper who administer the law in a court of justice; he's the chief member of a court, charged with the control of proceedings and the decision of questions of law or discretion. He is further assigned to be strongly encourage to make greater use of their inherent authority.

Simmons disregarded Rushing wishes, and took full control of violating Rushing's Sixth Amendment Rights, by a right that the amendment-secured his autonomy has been ranked "structure" error; when present, such an error is not subject to harmless error review. See, McCoy, *id.* Simmons closing arguments stated to the jury the following:

> "It has come to the time we must talk about aggravating and mitigating circumstances was the man suffering"? "The State jumps up and object to Attorney Simmons talking about aggravating and mitigation circumstances this is not the proper time Mr. Simmons knows that he may get the opportunity later"! The State made the objections to Simmons unethical behavior to his clients guilt.[38]

> During counsel's brief closing argument, he told the jury the only mitigating evidence he could offer is that "dying can never be pleasant."[39]

The presence of "Structure defects in the constitution of the trial mechanism . . . defy analysis by 'harmless-error' standards . . . these constitution deprivations . . affect[] the framework with which the trial proceeds, rather than simply an error in the trial process itself." An error is structure if it is not designed to protect defendants from erroneous conviction, but instead protects some other interest, such as "the fundamental legal principle that a defendant must be allowed to make his own choice about the proper way to protect his own liberty."*Id.* Weaver, 582 U. S., at - - - -, 137 S. Ct. At 1908 (Citing Furetta, 422 U. S., at 834, 95 S. Ct. 2525).

On August 12, the District Court denied Rushing P. C. R. offered no legal support other than adopting the State's ruling that is found to be erroneously illustrated by the prosecutor in the instant case.

This is a prima facie case when Rushing's Sixth Amendment Rights are found to be violated from his own counsel pleading his guilt, and when Rushing was defending his innocence. See, **ABA Model Rule of Professional Conduct 1.2(a)(2016).** *Id.* The records shows that his attorney failed to comply with the standards, practices, or procedures applicable in the **ABA Mode Rule of Professional Conduct Rule 1.0 Terminology, (f)** "Knowingly," "known," or "knows" denotes actual knowledge of the fact in question. A person's knowledge may be inferred from circumstances.

The fact of the structural error from Simmons unethical behavior, in itself, establish that the attorney failed to use due care towards his relationship with his client. The attorney failed to comply

---

38.See, Vol. IV, T. Tr. 224
39.Writ of Habeas Corpus, Pg. 15

with the standards, practices, or procedures applicable to the structural error that McCoy established in State v. Horn, Mr. Horn's counsel explicitly conceded guilt over his client's objections, thus violating Horn's Sixth Amendment rights. Given this violation, there was no choice but to vacate the conviction and sentence and remand this matter to the district court for a new trial.

Rushing's attorney did deviate from the applicable standards of professional conduct, that was a direct cause of this "structure error" that convicted him. The jury could not had known or determine, from the juror's collective experience, what the professional standards are, so they could not determine whether the attorney violated the standards. It takes testimony from someone who is familiar with the standards of the profession, usually a member of the profession to describe the applicable standards for the jury, like the judge who is the Gatekeeper to the trial mechanism, but he also failed to recognize counsel unethical behavior. And, Judge James committed errors as well for not stopping trial.

When counsel pleaded his client guilty is more than a confession which admits the accuse did various acts; it is itself a conviction nothing remains but to give judgment and determine punishment. Judge James deliberately allowed the admissibility of counsel's confession to go before the jury based on the counsel's credibility in his determination on the voluntariness of his guilt.

The structure error affects the framework within which the trial proceeds, "as distinguished from a lapse or flaw that is simply and error in the trial process itself". Arizona v. Fulminante, 499 U. S. 279, 310, 111 S. Ct. 1246, 113 L. Ed.2d 302 (1991).

Accordingly, Rushing did not make an outburst in the middle of trial during the 5 day(s) trial; however, he did tell Mr. Simmons at the table on several occasions to stop pleading him guilty! Counsel's action and character before the Court was shown how he was upset with his client for not going along with him on his plea of guilt to the jury. And, it appears that Simmons and David R. Paddison were both acting unethical with one another before the jurors who was elected to decide Rushing's faith.

A few years later, in 1988, Rushing was presently assigned to Death Row and was waiting to be executed. In the meanwhile Rushing received new attorneys: Thomas M. Ross, Dole and Michales of Minneapolis, MN, in his behalf to provide him representation while being on Death Row. Mr. Rushing new appointed attorneys had him evaluated by a Psychologist to the following:

Psychological Evaluation:

The new counsels who had requested a psychological evaluation of the subject for purposes of legal representation. On December 5, 1987 Doctor Mar L. Zimmermann, Zimmermann Psychology

Clinic, Baton Rouge, Louisiana examined Mr. Rushing in a visitation room at Camp J (Death Row) at

Angola, La.

The report provides the following answers:

(a) Mr. Rushing is vulnerable to peer pressure;
(b) Mr. Rushing probably suffers from a personality disorder, most likely a dependent or
schizoid disorder.
6. Dr. Zimmermann administered the Wechsler Adult Intelligence Scale-Revised.
7. From the test, he was able to make the following determinations about Mr. Rushing:
(a) He suffers from an emotional disorder, either neurotic or psychotic.
(b) The range of his verbal, performance, and full scale scores are within borderline
retarded range. This does not mean he is retarded, but the range is less than one standard
deviation above the scores considered to be retarded.
8. He also administered the Wide Range Achievement Test-Revised Level Two.
9. From the test I was able to make the following determinations about Mr. Rushing:
(a) His reading ability is at the beginning third grade level.
(b) His spelling ability is below third grade level.
(c) His skills at arithmetic are at the beginning fifth grade level.
10. The data from the discussion and tests mentioned above strongly supports the
conclusion above.
11. It is the doctor professional opinion that the condition described above is a mental
disease and/ or mental defect within the meaning of Article 905.5, Louisiana Code
Criminal Procedure.
12. As a professional, I feel that David Rushing's mental condition relates very well to
the mitigating circumstances set out in Article 905.5 of the Louisiana Code Criminal
Procedure. It is my belief that a lay jury would have been assisted by the testimony of a
psychiatric witness in understanding David Rushing's mental disorder and how it could
relates to the statutory mitigating circumstances set forth in Article 905.5 of the La. C.
Cr. P.

**History of David D. Rushing Mental Disorder:**

David Rushing mental disorder makes it likely that he was suffering from this condition on

April 1, 1983, impairing his capacity to appreciate the criminality of this conduct or to confirm his

conduct to the requirements of law. Moreover, it is likely that David Rushing was suffering from this

condition in October 1983, impairing his competence to stand trial on the charge of first degree

murder.[40]

Rushing requesting this Court to consider his mitigating evidence that is in compliance with his

serious learning disability during the time of this trial in not knowing why his counsel was entering his

guilt to the jury. His reading and writing skills were extremely limited. Dr. Zimmermann stated,

Rushing's (IQ) reading ability is at the beginning of a third grade level, and his spelling (IQ) ability is

below third grade level.[41]

Rushing contends that this Court implementing Atkins' mandate in State v. Williams, 2001-1650

(La. 11/1/02), 831 So.2d 835. The court held that "a diagnosis of mental retardation has three distinct

components: (1) sub-average intelligence, as measured by objective standardized IQ tests; (2)

---

40. See, in Pertinent Part Exhibit " 15" Dr. M. L. Zimmermann, Ph.D.
41. See, Page 2, Lines 9 (a) &(b) of doctor's report Dr. M. L. Zimmermann, Ph.D.

significant impairment in several areas of adaptive skills; and (3) manifestations of this neuron-psychological disorder in the developmental stage." *Id.* At 854.

The Williams' court also clarified that "not everyone faced with a death penalty sentence" would "automatically be entitled to a post-Atkins hearing"; rather, it would "be an individual defendant's burden to provide objective factors that will put at issue that fact of mental retardation." 831 So.2d, at 857. This Court further held that an Atkins evidentiary hearing is required when an inmate has put forward sufficient evidence to raise a " 'reasonable ground' " to believe him to be intellectually disabled. See *id.*, at 861; see also *id.*, at 858, n. 33 (characterizing the requisite showing as one raising a " 'reasonable doubt' ").(FN2)

During the time of Rushing's trial, the State of Louisiana Supreme Court was permitting the imposition of the death penalty on intellectually disabled person. However, it was several years later, in Atkins v. Virginia, 536 U. S. 304, 122 S. Ct. 2242 (U.S. 2002), the Supreme Court, Justice Stevens, held that executions of mentally retarded criminals were "cruel and unusual punishments" prohibited by Eight Amendment, abrogating Penry v. Lynaugh, 109 S. Ct. 2934.

However, in spite of his limited education, lack of a permanent home, difficulty in obtaining regular employment at the time, and suffering from an undermined learning disability or mental disorder played an essential part in his ability to understand the objective procedures of objecting to his counsel's admitting his guilt in open court. However, Rushing contends Judge James was assigned as the gatekeeper of his trial, and he allowed counsel to enter his guilt without stopping the trial or excusing the jury to hold a hearing to his admittance of guilt before the jury.

Moreover, Rushing states that he's not a career criminal in committing crimes, neither were he capable of being intellectually able to recognize when his attorney was imposing words that were much advance than Rushings' IQ level of understanding nor was his comprehension capable of understanding his attorney's behavior.

In citing, Atkins, *Id.*, Justice Stevens further stated that, mentally retarded person frequently know the difference between right and wrong and are competent to stand trial. Because of their impairments, however, by definition they have diminished capacities to understand and process information, to communicate, to abstract from mistakes and learn from experience, to engage in logical reasoning, to control impulses, and to understand the reactions of others. There is no evidence that they are more likely to engage in criminal conduct than others, but there is abundant evidence that they often act on impulse rather than pursuant to a premeditated plan, and that in group settings they are followers

rather than leaders. The deficiencies, do not warrant an exemption from criminal sanctions, but they do diminish their personal culpability.

In light of these deficiencies, our death penalty jurisprudence provides two reasons consistent with the legislative consensus that the mentally retarded should be categorically excluded from execution.

Attorney Ross raised an ineffective assistance of counsel on appeal to the U. S. Court of Appeals, 5th Circuit, Rushing v. Butler, 868 F.2d 800, (C. A.5 (La) 1989), Rushing argued that the trial counsel was ineffective by conceding guilt during closing argument to his jury. Rushing ineffective claim on his counsel conceding guilt is identical to McCoy v. Louisiana that was a structural error.

Rushing also raised another claim on a sanity issue under ineffective assistance of counsel that Dr. Zimmermann stated that, "As a professional, I feel that David Rushing's mental condition relates very well to the mitigating circumstances set out in Article 905.5 of the La. C. Cr. P. It is my belief that a lay jury would have been assisted by the testimony of a psychiatric witness in understanding David Rushing's mental disorder and how it could relate to the statutory mitigating circumstances set forth in article 905.5 of the Louisiana Code of Criminal Procedures.[42]

It appears from the record that Rushing's appointed death penalty counselors' were concerned with counsel John Simmons' inadequate representation in trial, and Attorney Dwight Doskey were ordered to file briefs in behalf of Mr. Rushing's appeal to the Supreme Court of Louisiana after his conviction.[43]

In the conclusion of McCoy's case stating the trial court's allowance of English's admission of McCoy's guilt despite McCoy's insistent objections was incompatible with the Sixth Amendment. Because the error was structural, a new trial is the required corrective.

Now, Rushing prays that this Court reverse the district court ruling, thereby ordering that Rushing be granted a new trial.

### ISSUE NUMBER THREE:

III.   Did The District Court Erred In Denying That McCoy v. Louisiana Is
       Not Retroactive to David Rushing's Case Who Is On Collateral Review?

David Rushing contends the State erroneously held that his case is not applicable to the retroactivity of McCoy v. Louisiana. However, Hon. Judge Burris held in a written opinion of his denial that McCoy does not apply retroactively to Rushing case.

Mr. Rushing utilizes the Louisiana Code Criminal Procedure, Article 930.8(A)(2) as his vehicle

---

42.See, Page 3 of Dr. Zimmermann Examination of David Rushing
43.See, Supreme Court's Order Exhibit "3" & Please See Writ of Habeas Corpus, Pg. 12, Rec. Vol. IV., Pg. "229 & 231"

which provides the follows:

>   2. The claim asserted in the petition is based upon a final ruling of an appellate court establishing a therefore unknown interpretation of constitutional law and petitioner establishes that this interpretation is retroactive applicable to his case, and the petition is filed within one year of the finality of such ruling. *Id.*

Indeed, in the instant case, Rushing is asserting equal protection and due process violations. McCoy does not address due process violations whatsoever. Further, a simple review of the plain language of McCoy will show that it is a Sixth Amendment guarantees a defendant the right to choose the objective of his defense and to insist that his counsel refrain from admitting guilt, even when counsel's experienced-based view is that confessing guilt offers the defendant the best chance to avoid the death penalty.

At the striking point in this brief, Hon. Judge Burris states Rushing circumstances is not applicable to McCoy's structure error that is guaranteed by both the State and Federal Constitutions. The United States Supreme Court as well as the State Supreme Court has specifically found that it is one of the core concepts of the criminal justices system which is a "fundamental right of criminal defendants; it assures the fairness, and thus the legitimacy of our adversary process". Without counsel, the right to a fair trial itself would be meaningless, for it is only through counsel that the accused may secure his other rights. Secondly, there can be no dispute for decades the constitutionality of structure errors has developed over the years from Courts scrutinizing the right of the Sixth Amendment guarantees the accused in a criminal proceeding the right to have the assistance of counsel for his defense. In the issue before the Court, it was sustained until the decision in McCoy v. Louisiana, that a defendant have the right to choose the objective of this defense even in capital cases and insist that his counsel refrain from admitting guilt, even when counsel's experienced-based view is that confessing guilt offers the defendant the best chance of avoid the death penalty. McCoy. Pp. 1507-1512. *Id.* Thus, there can be no dispute that the ruling of McCoy v. Louisiana constitutes a new rule of constitutional law. And, there can be no dispute, based on the evidence presented, that substantial rights of the accused have been effected. Finally, there is no dispute that the present application is filed within one year of said ruling. Thus the only issue is retroactivity.

This Court's precedents addressing the nature of substantive rules, their differences from procedural rules, and their history of retroactive application establish that the Constitution requires substantive rules to have retroactive effect regardless of when a conviction became final.

In State ex rel Taylor v. Whitley, 606 So.2d 1292, (La. 1992), the Supreme Court dealt with the retroactivity issue. The first type of retroactivity dealt with errors according to the law in effect when a

conviction became final. As a general rule, these errors would not be given retroactive effect on collateral review but would be applied to cases on direct review. However, there are two exceptions to this general retroactivity rule.

The first exception dealt with substantial due process rules which place certain kinds of primary and/or private conduct beyond the power of the criminal law making authority to proscribe. The second exception, the one applicable to the instant case, referred to new rules which required the observance of "those procedures that . . . are implicit in the concept of ordered liberty" and altered our understanding of the "bedrock procedural elements" of a fair trial. See Teague v. Lane, 489 U. S. 288, 103 L. Ed. 2d 334, 109 S. Ct. 1060(1988). It was Teague court that finally adopted Justice Harlan's view of retroactivity for cases on collateral review. The Teague court was called upon to review whether or not a defendant should receive the benefit of the court's decision in Batson v. Kentucky, 476 U. S. 79, 90 L. Ed.2d 69, 106 S. Ct. 1712 (1986). This was despite the fact that his conviction was final at the time that Batson was decided. In essence, a case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final. 109 S. Ct., at 1070; Taylor, supra. 1294. The Taylor court adopted the finding of Teague as' a matter of state law and found that retroactive application of new rules was appropriate when those rules required "the observance of those procedures that are implicit in the concept of ordered liberty." Teague supra., at 1075; Taylor, supra., at 1295. It was clear that the court intended the second exception to apply to "watershed" rules of criminal procedure.

The Taylor court went on to acknowledge to apply a number of other federal supreme court cases wherein the courts admitted that the Teague definition of a new rule could be difficult to apply where the new decision was reached by an extension of the reasoning of previous cases. Essentially, the court distinguished between situations as follows: "between situations where a decision was dictated by a precedent existing at the time the defendant's conviction became final (which would preclude the decision from being a new rule) and situations where a decision was merely controlled by existing precedent (which would not preclude the decision from being a new rule). See Butler v. McKeller, 494 U. S. 407, 108 L. Ed.2d 347, 110 S. Ct. 1212 (1990); Taylor, supra., at 1296.

Only the Supreme Court of the United States have jurisdiction to decide the question of McCoy being retroactive, because Louisiana has voluntarily incorporated into its law a wholly Federal standard. The Louisiana Supreme Court reversed a conviction in State of Louisiana v. Brain D. Horn, 251 So.3d 1069, 2016-0559, (La. 2018) The Supreme Court, Johnson, C. J., held that trial counsel's

concession that defendant killed the victim over defendant's explicit objection constitution deficient performance and was structure error. *Id.*

In *McCoy*, *supra*, the State Supreme Court specifically adopted the standard set forth in *Teague*, *supra*. Secondly, it obvious they found that *McCoy v. Louisiana* set forth a new rule of law. However, the court found that *Teague* exceptions apply to the McCoy's Sixth Amendment guarantees a defendant the right to choose the objective of his defense and to insist that his counsel refrain from admitting guilt, even when counsel's experienced-based view is that confessing guilt offers the defendant the best chance to avoid the death penalty.

Teague's conclusion establishing the retroactivity of new substantive rules is best understood as resting upon constitutional premises. That constitutional command is, like all federal law, binding on state courts.

Mr. Rushing has presented ample evidence that he has received a structural error. A claim were trial court violated his constitutional rights by allowing his trial counsel to concede that he committed the robbery and murder over his objection during the trial of capital trial is *bona fide* evidence.

CONCLUSION

For the reasons stated above, as well as additional reasons as stated in Mr. Rushing's Opposition to the State's Opposition in the trial court, Mr. Rushing respectfully asks this Court to grant this Supervisory Writ of Review, by reversing the ruling of the First Circuit Court of Appeal, and the district court post-conviction relief's denial.

Respectfully submitted,

_____

David Rushing, #103801
Camp F, dorm –2
Louisiana State Penitentiary
Angola, Louisiana 70712

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing motion was served by hand delivery or first class mail to the District Attorney for 30 day of December, 2019.

_____

David Rushing

<u>All Parties Served:</u>
District Attorney's Office
Warren Montgomery, D. A.
22nd Judicial District Court
Parish of St. Tammany
Justice Center
701 N. Columbia Street
Covington, Louisiana 70433

APPENDIX EXHIBITS

APPENDIX:

1.  Vol. IV at 229-31

2. Exhibit "1" Indictment

3. Vol. II, T. Tr. Pg. 26

4. Vol. II, T. Tr. Page 24

5.  Vol. II, T. Tr. Pg. 26, Line 12

6. Vol. II, T. Tr. Pg. 69 thru 70

7. Writ of Habeas Corpus, Pg. 12, & Vol. IV, Pg. 229

8. Writ of Habeas Corpus, Pg. 12, &Vol. IV, Pg. 231

9. Exhibit "2" A Letter from The Louisiana Supreme Court

10. See Exhibit "2"

11. See Exhibit "3", Extract of Minutes Entry, Thursday, June 28, 1990

12. See Exhibit "3"

13. See Exhibits "4" & "5"

14. See Exhibit "6"

15. See Exhibit "7"

16. Exhibit "8"

17. Exhibit "9"

18. See Exhibit "10"

19. See Exhibit "11"

20.See, Exhibit "12"

21. See, Exhibit "12"

22.See, Exhibit "14"

23. Exhibit "14"

24. Exhibit "4"

25. See, Exhibit "6"

26. See Exhibit "6" and Attached Exhibit "7"

27. Exhibit "10"

28. See Vol. II, T. Tr. Pg. 24, Line 15-27 and Pg. 26, Lines 4-7

29. See, Vol. II, T. Tr. Pg. 69 thru 70

30. Vol. ___, T. Tr. Pg. 146

31. See, Vol. II, T. Tr. Pg. 223

32. Rushing v. Butler, 868 F.2d 800, (C. A. 5 (La.)1989). Habeas Corpus Writ Page 14, #46.

33. See, Vol. II, T. Tr. Page 24

34. Vol. II, T. Tr. Pg. 69

35. See, Rec. Vol. IV, Pg. 229

36. See, Rec. Vol. IV, Pg. 231

37. See, Writ of Habeas Corpus, Page 14, #46

38. See, Vol. IV, T. Tr. 224

39. Writ of Habeas Corpus, Pg. 15,

40. See, in Pertinent Part Exhibit " 13"

41. See, Page 2, Lines 9 (a)&(b) of doctor's report

42. See, Page 3 of Dr. Zimmermann Examination of David Rushing

43. See Supreme Court's Order Exhibit "3" & Please See Writ of Habeas Corpus, Pages 12, Rec. Vol. IV, p. "229 & 231"

# The Supreme Court of the State of Louisiana

**STATE OF LOUISIANA**

No.2020-KH-00054

**VS.**

**DAVID D. RUSHING**

— — — — — —

IN RE: David D. Rushing - Applicant Defendant; Applying For Supervisory Writ, Parish of St. Tammany, 22nd Judicial District Court Number(s) 109263-1, Court of Appeal, First Circuit, Number(s) 2019 KW 1259;

— — — — — —

**September 23, 2020**

Writ application denied. See per curiam.

JLW

JDH

SJC

JTG

WJC

JHB

Supreme Court of Louisiana
September 23, 2020

Second Deputy        Clerk of Court
                     For the Court

EXHIBIT "16"



**Supreme Court**
STATE OF LOUISIANA
New Orleans

CHIEF JUSTICE
  BERNETTE J. JOHNSON
JUSTICES
  WILLIAM J. CRAIN
  SCOTT J. CRICHTON
  JAMES T. GENOVESE
  MARCUS R. CLARK
  JEFFERSON D. HUGHES III
  JOHN L. WEIMER

Seventh District

First District
Second District
Third District
Fourth District
Fifth District
Sixth District

JOHN TARLTON OLIVIER
CLERK OF COURT

400 Royal St., Suite 4200
NEW ORLEANS, LA 70130-8102

TELEPHONE (504) 310-2300
HOME PAGE http://www.lasc.org

January 08, 2020

David D. Rushing, #103801
Louisiana State Prison
Camp F, Dorm - 2
Angola, LA 70712

Re:   STATE OF LOUISIANA VS. DAVID D.
      RUSHING
      2020-KH-00054

Dear Counsel:

This is to advise that the pleadings in the above entitled matter were filed on January 08, 2020. The
filing was Angola E-Filed on January 02, 2020. The case bears the above number on the Docket of this
Court.

By copy of this letter, all counsel are advised that in cases not involving a request for a stay or priority
treatment an opposition or response may be filed without leave of court within fifteen days of the filing
of this writ application.

With kindest regards, I remain,

                          Very truly yours,


                          John Tarlton Olivier
                          Clerk of Court


JTO: EB

SUPREME COURT OF LOUISIANA
NO. 2020-KH-0054[1.]

STATE EX REL. DAVID RUSHING
APPELLANT/PETITIONER

VERSUS

STATE OF LOUISIANA
RESPONDENT/DEFENDANT

_____

APPLICATION FOR PETITION FOR REHEARING[2.]

_____

Now comes David Rushing Pro se, (Hereinafter "Petitioner") and ask this court to

not hold petitioner pleading to the same standards as attorneys who respectfully

represents:[3]

1.

On December 30, 2019, Petitioner David Rushing filed a Supervisory Writ of

Review to this Honorable Court appealing the district court's denial under Docket

Number:10926-1 and the Court of Appeal, First Circuit denial under Case Number: 2019

KW 1259.

2.

On the 23 day of September 2020, this Honorable Court rendered a denial of

Rushing's appeal. Petitioner received this Court's ruling on September 25, 2020 from the

institution mail room security.

3.

Mr. Rushing requesting this Court to adopt the Statement of Case's History from

his Supervisory Writ of Review to his procedural filings under Case No. 2020-KH-0054

that was denied on 09/23/20..

_____

1.  Here insert the docket number of the Supreme Court.
2.  Cr. P. Art. 922 and La. Sup. Ct. Rule XI. C. Cr. P. Art. 922 provides that the application for rehearing must be filed
    "within 14 days of rendition of the judgment of the Supreme Court."
3.  Haines v. Kerner, 404 U. S. 519 (1972), "we hold pro se complaints to less stringent standards than formal
    pleading drafted by attorneys).

1                    **EXHIBIT "17"**

4.

It is respectfully urged that a rehearing should be granted in this case for the following reasons:

## TIMELINESS, BURDEN AND JURISDICTION

A direct and explicit conflict of decision has arisen since petitioner's denial of supervisory writ of review in the instant case. Petitioner's petition sought review of both the lower courts denials into this Honorable Court.

Petitioner moves the Court for a rehearing on this Court's written reasons for denying his writ for not being timely filed in the district court, and petitioner fails to carry his burden to show that an exception applies. La. C. Cr. P. art.930.8.

As set forth by law, "no application for post-conviction relief "shall be considered if it is filed more than two years after the judgment of conviction. . . ." La. C. Cr. P. art. 930.8(A).

Petitioner utilizes the law in **Section (2)**. . . "to present his claim asserted in the petition is based upon a final ruling of an appellate court establishing a therefore unknown interpretation of constitutional law . . ." La. C. Cr. P. art. 930.8 A.(2).

Prior to August 1, 2014, a petitioner seeking post-conviction relief was under no obligation to exercise due diligence in the uncovering of potential claims.

Petitioner David Rushing respectfully presents to this Court his violation of a defendant's Sixth Amendment-secured autonomy ranks as an error of the kind that is called "structural", when present, such an error is not subject to harmless-error review. (U. S. Const. Amend. 6). Petitioner presents his structural error through "diligence effort in pursuing his Application for Post Conviction Relief in a timely manner."

Accordingly, Petitioner's successive Application is properly before the Court and not subject to any procedure objections.

## NEW INTERPRETATION OF LAW

2

In the awakening of <u>Robert Leroy McCoy v. State of Louisiana</u>, 138 S. Ct.1500, 200 L. Ed.2d 812, (U.S.2018), Justice Ginsburg held for the Supreme Court:

> The Sixth Amendment guarantees a defendant the right to choose the objective of his defense and to insist that his counsel refrain from admitting guilt, even when counsel's experienced-based view is that confessing guilt offers the defendant the best chance to avoid the death penalty.

On July 31, 2018, David Rushing filed his Memorandum of Law in Support of Application as being timely filed within one year.

### 5.

The principle issue presented to this case is whether David Rushing's case is filed in a timely manner into the district court? In particular, the court held that applicant was not timely filed in the district court, and applicant fails to carry his burden to show that an exception applies. La. C. Cr. P. art. 930.8

Rushing discovered his case should be applied under the same entitlement as McCoy. The new structural error that was discovered in McCoy's case when the Sixth Amendment guarantees a defendant the right to choose the objective of his defense and to insist that his counsel refrain from admitting guilt, even when counsel's experienced -based view that confessing guilt offers the defendant the best chance to avoid the death penalty.

On August 12, 2019, the district court <u>denied</u> petitioner's (P C R) on his counsel John R. Simmons conceding guilt, however, Petitioner did not receive this ruling until August 21, 2019. (See, **Exhibit "11", Supervisory Writ of Review Statement of Case**). During the closing argument by petitioner's counsel to his Memorandum of Law in Support of Post-Conviction Relief in the following manner of counsel's unethical behavior:

> I'm not asking you to go beyond the evidence to seek for reasons to acquit. I'm not asking you to acquit this man, because he's admitted from that he was there. He was there, and he's a principle there.

I'm not saying there's reason to let this man walk out of here. I'm not saying to do that. I wouldn't insult your integrity in any form or fashion in asking you to do that. **(Record Vol. IV at 229-31)**.

In addition, the case poses direct constitutional injuries are directly caused by Attorney John R. Simmons conceding guilt to the jury for his client in order to avoid the death penalty or what ever selfish unknown motivations he had.

On certiorari, the United States Supreme Court reversed McCoy's conviction and held that, regardless of the trial attorney experienced opinion and advice, a defendant has the right to insist that counsel not admit guilt. *Id.* at 1505. In other words, admission of guilt is not a matter of strategy for trial counsel, but rather concerns the client's objectives and therefore is a decision reserved for the client. *Id.* The court was unequivocally in explaining:

> With individual liberty—and in capital cases, life—at stake, it is the defendant's prerogative, not counsel's, to decide on the objective of his defense; to admit guilt in the hope of gaining mercy at the sentencing stage, or to maintain his innocence, leaving it to the state to prove his guilt beyond a reasonable doubt. . .
>
> Trial management is the lawyer's province. . . some decisions, however are reserved for the client—notably, whether to plead guilty, waive the right to a jury trial, testify in one's own behalf, and forgo an appeal. . . Autonomy to decide that the objective of the defense is to assert innocence belongs in this latter category. . . These are not strategic choices about how best to achieve a client's objectives; they are choices about what the client's objectives in fact are.

McCoy, 138 S. Ct. At 1505,1508.

Petitioner presents his avenue under: **Article 930.8 in subsection (2)** provides as follows:

> 2. "the claim asserted in the petition is based upon a final ruling of an appellate court establishing a therefore an unknown interpretation of constitutional law and petitioner establishes that this interpretation is retroactively applicable to his case, and the petition is filed within one year of the finality of such ruling. . . ." La. C. Cr. P. Art. 930.8(2)

There can be no dispute that for decades the constitutionality of any counsel conceding guilt in behalf of their client avoiding the death penalty has recently been

argued before this State Supreme Court who's case was on appeal. (Citing, State v. Horn,
2511 So.3d 1069, 2016-0559 La. 9/7/18). Thus there can be no dispute that the ruling of
McCoy v. Louisiana constitutes a new rule of constitutional law. Secondly, there can be
no dispute, based on the evidence presented, that substantial rights of the accused have
been effected. Third, there is no dispute that the present application is filed within one
year of said ruling. Thus the only issue is retroactivity.

Because the admission of guilt over a defendant's objection "blocks the
defendant's right to make the fundamental choices about his own defense" and because
"the effects of the admission would be immeasurable," the Court concluded that the
error is structural, and defendants are automatically entitled to a new trial. Id. at 1511.

In State ex rel. Taylor v. Whitley, 606 So.2d 1219, (La. 1992), the Supreme Court
dealt with the retroactivity issue. The first type of retroactivity dealt with errors
according to the law in effect when a conviction became final. As a general rule, these
errors would not be given retroactive effect on collateral review but would be applied to
cases on direct review. However, there are two exceptions to this general retroactivity
rule.

The first exception dealt with substantive due process rules which place certain
kinds of primary and/or private conduct beyond the power of the criminal law making
authority to proscribe. The second exception, the one applicable to the instant case,
referred to new rules which required the observance of "those procedures that. . . . are
implicit in the concept of ordered liberty" and altered our understanding of the "bedrock
procedural elements" of a fair trial. See Teague v. Lane, 489 U. S. 288, 103 L. Ed.2d
334, 109 S. Ct. 1060 (1988). It was the Teague court that finally adopted Justice Harlan's
view of retroactivity for cases on collateral review. The Teague court was called upon to
review whether or not a defendant should receive the benefit of the court's decision in
Batson v. Kentucky, 476 U. S. 79, 90 L. Ed.2d 69, 106 S. Ct. 1712 (1986). As to the

5

similarities of the facts to these two cases are despite the fact that Rushing conviction was final at the time that McCoy was decided. In essence, a case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final. In Taylor, 109 S. Ct. at 1070; *supra* 1294. The Taylor court adopted the finding of Teague as a matter of state law and found that retroactive application of new rule was appropriate when those new rules required "the observance of those procedures that are implicit in the concept of ordered liberty." Teague, *supra* at 1075; Taylor, *supra* at 1295. It was clear that the court intended the second exception to apply to "watershed" rules of criminal procedure.

The Taylor court went on to acknowledge a number of other federal supreme court cases wherein the court admitted that the Teague definition of a new rule could be difficult to apply where the new decision was reached by an extension of a new rule could be difficult to apply where the new decision was reached by an extension of the reasoning of previous cases. Essentially, the court distinguished between situations as follow: "between situations where a decision was dictated by a precedent existing at the time the defendant's conviction became final (which would preclude the decision from being a new rule) and situations where a decision was merely controlled by existing precedent (which would not preclude the decision from being a new rule). See Butler v. McKeller, 494 U. S. 407, 108 L. Ed.2d 347, 110 S. Ct. 1212 (1990); Taylor, *supra* at 1296.

The District Court Judge William H. Burris' argument is to the contrary:

"In his contrariness, states the following: "the defendant wrongly bases his argument for a new trial on the holding of the United States Supreme Court decision in McCoy v. Louisiana, 138 S. Ct. 1500 (2018). However, in accordance with the holding in Teague v. Lane, 489 U. S. 288 (1989), McCoy v. Louisiana, does not apply retroactively as it is a new rule and only applies retroactively under circumstances not present here. Also, even if McCoy did apply retroactively it's ruling is inapplicable to the facts found in the instant case".

6

Petitioner contends, the district court erred in its ruling that's found to be contrary to his argument in opposition to the following below:

## TEAGUE CONTROLS THE RETROACTIVITY OF MCCOY

In Teague v. Lane, 489 U. S. 288 (1989), the Supreme Court set out the analytical framework for determining the retroactivity of its decisions to cases on collateral review. This framework is "applicable to [Louisiana] state courts in cases on collateral review." State ex rel. Taylor v. Whitley, 606 So.2d 1292, 1300 (La. 1992).[4.]

Under Teague, a court should first ask whether the decision announced a "new rule"—that is, whether it "br[oke] new ground or impose[d] a new obligation on the States. Teague, 489 U. S. at 301. If the decision did not—or, put differently, if it was "*dictated* by precedent existing at the time the defendant's conviction became final"—then there is no bar to apply it retroactively to already-final conviction became final"—then there is no bar to applying it retroactively to already-final convictions. *Id.*; see also Whitley, 606 So.2d at 1297.

If the case did announce a new rule, the court should move to the second step and determine whether the rule falls into one of two exceptions. The first exception encompasses rules that "place[] 'certain kinds of primary, private individual conduct beyond the power of the criminal lawmaking authority to proscribe.'" Teague, 489 U. S. at 311. The second encompasses bedrock rules of criminal procedure—specifically "' those procedural elements that must be found to vitiate the fairness of the particular conviction." *Id.* If it falls into neither exception, the new rule will apply only to future cases and to those still pending on direct review.

A transition toke place in the Supreme Court refining the meaning of "new rule" and the scope of the two Teague exceptions in subsequent decisions that stems from Montogery v. Louisiana. Petitioner bring to this Court's attention his exception that his

4.   Under Danforth v. Minnesota, 552 U. S. 264, 266 (2008), States may give retroactive effect to decisions that would not apply retroactively under Teague, Mr. Rushing respectfully presents that Louisiana courts should apply McCoy retroactively even if retroactive application were not required under Teague.

exception applies.

FIRST EXCEPTION:

Citing, <u>Penry v. Lynaugh</u>, 492 U. S. 302 (1989), the Court held that <u>Teague's</u> first exception "cover[s] not only rules forbidding criminal punishment of certain primary conduct but also rules prohibiting a certain category of punishment for a class of defendants because of their status or offenses." *Id.* at 330. Subsequent decisions have referred to the rules encompassed by this exception as substantive" rules. See, e. g. <u>Schriro v. Summerlin</u>, 542 U. S. 348 351-352 (2004) (2004)("New substantive rules . . . include[] . . . constitutional determinations that place particular conduct or persons covered by the statute beyond the state's power to punish[.]" (citation omitted)). In <u>Montgomery v. Louisiana</u>, 136 S. Ct. 718 (2016), the Court held that the rule of <u>Miller v. Alabama</u>, 567 U. S. 460 (2012), was substantive for purposes of <u>Teague's</u> first exception because Miller "rendered life without parole an unconstitutional penalty for 'a class of defendants because of their status'—that is, juvenile offenders whose crimes reflect the transient immaturity of youth." <u>Montgomery</u>, 136 S. Ct. At 734. Thus, if <u>McCoy</u> announces a new rule, it would still apply retroactively if it rendered a "class of defendants" exempt from a criminal punishment "because of their status." See *Id.*

SECOND EXCEPTION:

New procedural rules will apply retroactively if they meet the criteria for <u>Teague's</u> second exception, under which new "watershed rules of criminal procedure' implication the fundamental fairness and accuracy of the criminal proceeding" are retroactive. <u>Saffle v. Parks</u>, 494 U. S. 484, 495 (1990) (quoting <u>Teague</u>, 489 U. S. at 311). This second exception extends to rules that "not only improve accuracy," but also "alter our understanding of the bedrock procedural elements" essential to the fairness of a proceeding. <u>Sawyer v. Smith</u>, 497 U. S. 227, 242 (1990)(quoting <u>Teague</u>, 4889 U. S. at 311); see also <u>Whorton v. Bocking</u>, 549 U. S. 406, 421 (2007).

8

Thus, the rule announced in McCoy applies retroactively if it belongs to any of the three categories: (1) it is not a new rule; (2) it is a new substantive rule; or (3) it is a new bedrock procedural rule. As explained in the following section, McCoy did not announce a new rule; it applied longstanding Supreme Court precedent to a new set of facts. See *infra* Section IV. A. Moreover, even if McCoy did announce a new rule, that rule is substantive, because it exempts a class of defendants—those whose attorneys admit their guilt against their wishes—from criminal punishment. See *infra* Section IV. B. Finally, if this Court were to find that McCoy announced a new rule and that its rule is not substantive, it should conclude that it is a bedrock procedural rule. See *infra* Section IV. C. On any of these bases, this Court should hold that McCoy applies retroactively.

Mr. Rushing asserts, McCoy applies retroactively because it announces a substantive rule. Even if this Court determines that the rule articulated in McCoy is new, it applies retroactively on collateral review because it is a "substantive rule[] of constitutional law." Montgomery, 136 S. Ct. at 728.

Substantive rules "set forth categorical constitutional guarantees that place certain criminal laws and punishment altogether beyond the State's power to impose." Montgomery, 136 S. Ct. At 729-730. The Supreme Court has held that a substantive rule under Teague may extend a categorical guarantee to criminal defendants on the basis of either conduct or status. *Id.* at 729. Thus, rules restricting the State's ability to punish a "particular class of persons" qualify as substantive. Saffle, 494 U. S. at 495; see also Penry, 492 U. S. at 330 (rules prohibiting punishment for a "class of defendants because of their status or offense" are substantive). Under Teague, therefore, new substantive rules include ones that "alter[] . . . the range of conduct or class of persons that the law punishes." Welch v. United States, 136 S. Ct. 1257, 1266 (2016).

The Supreme Court has explained that substantive rules should have retroactive effect because "the need for finality in criminal cases" must be balanced against "the

9

countervailing imperative to ensure that criminal punishment is imposed only when authorized by law," Welch, 136 S. Ct. At 1266. Finally concerns are "at their weakest" when examining rules that modify the "range of conduct or class of persons that the law punishes," because concerns regarding unauthorized punishment are heightened. *Id* The balance of interests therefore shifts strongly in favor of retroactivity for such rules. See *Id*; see also Mackey v. United States, 401 U. S. 667, 693 (1971)(opinion of Harlan, J.) ("There is little societal interest in permitting the criminal process to rest at a point where it ought properly never to repose.").

McCoy makes clear that defendants whose guilt was admitted over their objection fall into a class of people whom the State may not punish. This is a substantive rule that fits within the first Teague exception and should apply retroactively.

The presence of even counsel who is representing defendant is bias in conceding his client guilt is structural error, mandating reversal of the defendant's conviction. "Structural defects in the constitution of the trial mechanism . . . defy analysis by 'harmless-error' standards. . . these constitutional deprivations . . . affect[] the framework within which the trial proceeds, rather than simply an error in the trial process itself." Arizona v. Fulminante, 499 U. S. 279, 309-10 (191).

FIRST CIRCUIT COURT OF APPEAL DECISION

On September 16, 2019, Petitioner filed his Supervisory Writ into the Court of Appeal, First Circuit. On September 23, 2019, the Clerk of Court's Office notified Mr. Rushing of the Clerk Office is in receipt of Rushing's writ being filed by the Clerk's office under Docket Number: 2019-KW-1259.

On December 6, 2019, the court of appeal rendered the following, McCoy v. Louisiana, 138 S. Ct. 1500, 200 L. Ed.2d 821 (2018), does not apply retroactively in the circumstances presented in the instant case. On December 9, 2019, petitioner received the court's ruling through the institution mail room security.(**See, Exhibit "19" of the**

10

Supervisory Writ of Review).

PETITIONER'S SUPREME COURT MAILING PROOF

On the 30 day of December, 2019 Petitioner David Rushing filed his writ through the Legal Program Department Scanning device to this Honorable Court was received on January 2, 2020, and the mail-room received it on the above mentioning date.

Rushing contends that McCoy is an "unknown interpretation of" the Sixth Amendment and Article I section 13. On May 14, 2018, the appellate court ruling became final when the United States Supreme Court rendered its ruling to the structural error. Again, petitioner utilized Article 930.8(A)(2) as his vehicle that provides him one year to file to time limit. Petitioner is timely filed into the district court.

On the 23 day of September 2020, this Honorable Court rendered a denial of Rushing's appeal under Case Number:2020-KH-0054. Petitioner received this Court's ruling on September 25, 2020 from the institution mail room security.

CONCLUSION

Petitioner David Rushing request this Court to find that he is timely filed and does meet the exception to receive the McCoy benefits and applies retroactively to this case that he is entitled to relief for a new trial under McCoy v. Lousiana.

Respectfully submitted,

David Rushing, #103801
Camp F, dorm –2
Louisiana State Penitentiary
Angola, Louisiana 70712

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing writ was served by hand delivery or first class mail to the District Attorney for 5th day of October, 2020.

David Rushing

11

The Supreme Court of the State of Louisiana

STATE OF LOUISIANA

No.2020-KH-00054

VS.

· DAVID D. RUSHING

— — — — —

IN RE: David D. Rushing - Applicant Defendant; Applying for Reconsideration, Parish of St. Tammany, 22nd Judicial District Court Number(s) 109263-1, Court of Appeal, First Circuit, Number(s) 2019 KW 1259;

— — — — —

April 07, 2021

Application for reconsideration not considered. See Louisiana Supreme Court Rule IX, § 6.

WJC

JLW

JDH

SJC

JTG

JBM

PDG

Supreme Court of Louisiana
April 07, 2021

*Katie Marjanovic*

Chief Deputy Clerk
For the Court

EXHIBIT "18"