### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

DAVID RUSHING                                   CIVIL ACTION

VERSUS                                          NO. 21-929

STATE OF LOUISIANA, ET AL.                      SECTION "R"(4)


### REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* **28 U.S.C. § 2254(e)(2)**.[1]

## I.    Factual and Procedural Background

Petitioner David Rushing ("Rushing") is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2] On April 21, 1983, Rushing and co-defendant Jeffery J. Fussell ("Fussell") were indicted by a St. Tammany Parish Grand Jury for first degree murder.[3]

According to the record, Danny Archer's ("Archer") body was found in the early morning hours on April 1, 1983, by Lloyd Jackson ("Jackson"), a route salesman who was returning home from work.[4] Jackson saw a cab stopped beside the road with its motor running, lights on, doors shut, and windows rolled up. Jackson approached the vehicle and saw a man, Archer, covered in

---

[1] Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.
[2] ECF No. 1.
[3] St. Rec. Vol. 1 of 8, Indictment, 4/21/83.
[4] The facts are taken from the published direct appeal opinion of the Louisiana Supreme Court. *State v. Rushing*, 464 So. 2d 268, 271-72 (La. 1985); St. Rec. Vol. 8 of 8, La. S. Ct. Order, 84-KA-0991, 1/14/85.

blood sitting in the driver's seat, and leaning over to the passenger side.  Jackson went to a nearby house and called the police.

Police determined that Archer, the cab driver, had been shot in the back and repeatedly struck on the top of the head.  The interior of the cab had so much blood splatter that police initially questioned whether there was a second victim. The police found an expended shotgun shell three feet from the driver's door, and a blood saturated black glove in the door jam on the driver's door. On the floorboard near the gas pedal, police found a piece from a wooden gun stock.  About 80 feet behind the cab, police also found a wallet which held Fussell's driver's license.

Investigators went to Fussell's trailer where he had been asleep on the couch near the door. He invited the officers inside, and they located Rushing asleep in one of the rooms. On the floor near Rushing's bed, the officers found a pair of thongs, jeans, and a black jacket covered with blood stains. When Rushing rose from the bed, the officers found that his feet were also covered with blood. They did not find blood on Fussell.

Sometime after their arrest, Fussell led officers to the shotgun used to kill Archer. Approximately five hours later, Rushing voluntarily gave a statement to officers and described the events leading up to Archer's murder.  He told police that he and Fussell had taken blue Valiums earlier in the evening and decided to go to Slidell to rob a gas station.  The gas station was closed when they arrived, so they decided to call a cab and rob the driver.  The two men discussed who would rob the driver, and Fussell told Rushing he had nerve enough to pull the "cap" (the trigger). Rushing decided to commit the robbery because he did not think he would kill the person.

Rushing admitted that he was wearing thongs, jeans, black gloves and Fussell's jacket when he entered the cab.  He also had a sawed-off shotgun hidden under his clothing.  Rushing told Archer, the cab driver, to drive to the Ponderosa Subdivision.  Fussell followed the cab in

Rushing's car.  Rushing told officers that, at some point, he thought Archer was reaching for a gun under the seat.  Rushing put the shotgun up to the back of the driver's seat and shot Archer in the right lower back.  Archer turned around and began swinging his fists at Rushing.  Rushing admitted that he fought to keep Archer off of him, but denied hitting Archer with the shotgun.  In the meantime, Fussell had driven up behind the cab.  Rushing got into the car with Fussell, and they drove away from the murder scene.  Rushing later recanted his confession at trial and claimed that he was intoxicated from taking barbiturates, thus, he only remembered portions of the evening.

However, scientific tests would later establish that the blood on Rushing's clothes belonged to Archer.  Also, the tests showed that Archer was repeatedly struck on top of the head with the butt of a shotgun and his hair and blood were found embedded in the shotgun turned over by Fussell.  The broken wooden piece found on the floorboard of the cab also matched a piece missing from the end of the shotgun Fussell located for police.  The autopsy also showed that the shotgun blast entered the lower portion of Archer's abdominal cavity, collapsed his lung, and perforated his liver.  Additionally, Archer suffered five lacerations ranging from 1½ to 3 inches in length to the rear of his head.  Three of the blows fractured Archer's skull.  Even without the strikes to the head, the pathologist determined that Archer would have bled to death in no more than 45 minutes from the shotgun wound.

On November 17, 1983, Fussell pleaded guilty to a reduced charge of second degree murder and was sentenced to life imprisonment without benefit of probation, parole or suspension.[5]

About one month prior to that, Rushing was tried before a jury on October 10 through 13, 1983, and was unanimously found guilty as charged of first degree murder.[6]  On October 14, 1983,

---

[5] St. Rec. Vol. 1 of 8, Indictment, 4/21/83 (amended as to Fussell, 11/17/83); *Rushing*, 464 So. 2d at 271 n.2; St. Rec. Vol. 8 of 8, La. S. Ct. Order, 84-KA-0991, at 3 n.2, 1/14/85.
[6] St. Rec. Vol. 1 of 8, Trial Minutes, 10/10/83; *id*., Trial Minutes, 10/11/83; *id*., Trial Minutes, 10/12/83; *id*., Trial Minutes, 10/13/83; *id*., Jury Verdict, 10/13/83; St. Rec. Vol. 2 of 8, Trial Transcript, 10/10/83; St. Rec. Vol. 3 of 8,

the jury also recommended that he be sentenced to death.[7]   On November 4, 1983, he was sentenced to death by electrical execution.[8]

On January 14, 1985, the Louisiana Supreme Court affirmed his conviction and sentence.[9] The United States Supreme Court denied Rushing's petition for writ of certiorari on May 27, 1986, and denied his request for rehearing on July 7, 1986.[10]

Prior to his scheduled execution, Rushing sought habeas corpus review in this federal court in Civ. Action 86-4421"C".   On September 1, 1987, the previously assigned District Judge rejected Rushing's claims as meritless.[11]   However, on March 30, 1989, the United States Fifth Circuit Court of Appeals found grounds to vacate Rushing's death sentence and remanded the matter for this District Court to enter judgment accordingly.[12]   The District Judge complied on May 1, 1989.[13]

On June 28, 1990, the prosecutors notified the state trial court that they would not seek the death penalty.[14]   That same day, Rushing waived legal delays and was sentenced to serve life in prison without benefit of parole, probation, or suspension of sentence.[15]

Rushing's conviction and new sentence became final 30 days later, on Monday, July 30, 1990,[16] when he did not seek review after his resentencing.   *Scott v. Hubert*, 635 F.3d 659 (5th.

---

Trial Transcript (continued), 10/10/83; *id*., Trial Transcript, 10/11/83; St. Rec. Vol. 4 of 8, Trial Transcript (continued), 10/11/83; *id*., Trial Transcript, 10/12/83; St. Rec. Vol. 5 of 8, Trial Transcript (continued), 10/12/83; *id*., Trial Transcript, 10/13/83; St. Rec. Vol. 6 of 8, Trial Transcript (continued), 10/13/83.

[7] St. Rec. Vol. 1 of 8, Sentencing Verdict, 10/14/83; St. Rec. Vol. 6 of 8, Trial Transcript, 10/14/83; St. Rec. Vol. 7 of 8, Trial Transcript (continued), 10/14/83.

[8] St. Rec. Vol. 1 of 8, Sentencing Minutes, 11/4/83; St. Rec. Vol. 7 of 8, Sentencing Transcript, 11/4/83.

[9] *Rushing*, 464 So. 2d at 271 n.2; St. Rec. Vol. 8 of 8, La. S. Ct. Order, 84-KA-0991, 1/14/85.

[10] *Rushing v. Louisiana*, 476 U.S. 1153 (1986); *Rushing v. Louisiana*, 478 U.S. 1028 (1986).

[11] *Rushing v. Blackburn*, No. 86-4421, 1987 WL 16832, at *1 (E.D. La. Sep. 1, 1987).

[12] *Rushing v. Butler*, 868 F.2d 800, 807 (5th Cir. 1989).  The Fifth Circuit concluded that the victim impact statements presented during the sentencing phase violated Rushing's Eighth Amendment rights under Supreme Court precedent. *Id*. at 803-04.

[13] St. Rec. Vol. 7 of 8, Federal Court Order, 86-4421"C," 5/1/89.

[14] *Id*., Sentencing Minutes, 6/28/90.

[15] *Id*.

[16] The thirtieth day was Saturday, July 28, 1990, causing the final day of the period fell to the next business day, Monday, July 30, 1990.  *See* La. Code Crim. P. art. 13; Fed. R. Civ. P. 6(a)(1)(C).

Cir. 2011) (for purposes of 28 U.S.C. § 2244 (d)(1)(A), the judgment of conviction becomes final after expiration of the time allowed under state law for seeking review after resentencing); *see also*, *Burton v. Stewart*, 549 U.S. 147, 156-57 (2007) (the AEDPA limitations period "did not begin until both his conviction and sentence became final by the conclusion of direct review or the expiration of the time for seeking such review." (emphasis added, quotation omitted)); *and see*, La. Code Crim. P. art. 914.[17]

On March 17, 1993, Rushing submitted an application for post-conviction relief to the state trial court alleging his arrest was unconstitutional, several trial errors occurred, and ineffective assistance of trial counsel for counsel's failure to raise certain trial objections.[18]  The state trial court denied the application without stated reasons on March 29, 1993.[19]  The Louisiana First Circuit in 1993 and the Louisiana Supreme Court 1995 each denied Rushing's subsequent writ applications for seeking untimely post-conviction relief under La. Code Crim. P. art. 930.8.[20]

Rushing submitted another application for post-conviction relief to the state trial court on March 19, 1997, asserting claims of racial bias in grand jury selection, violation of *Brady*, and ineffective assistance of counsel for failing to challenge the grand jury on grounds of race discrimination.[21]  The state trial court denied the application on June 16, 1997, as repetitive and meritless.[22]  The Louisiana First Circuit denied Rushing's writ application for seeking untimely

---

[17] Louisiana law requires a criminal defendant to move for leave to appeal within thirty (30) days of the order or judgment being appealed or a ruling on a timely motion to reconsider a sentence.  La. Code Crim. P. art. 914 (as amended La. Acts 2003, No. 949, § 1).  Failure to move timely for appeal under art. 914 rendered the conviction and sentence final at the expiration of that period.  *State v. Counterman*, 475 So.2d 336, 338 (La. 1985).
[18] St. Rec. Vol. 8 of 8, Application for Post-Conviction Relief, 3/18/93 (dated 3/17/93).
[19] *Id*., Trial Court Order, 3/29/93.
[20] *State ex rel. Rushing v. State*, 662 So. 2d 464 (La. 1995); St. Rec. Vol. 8 of 8, La. S. Ct. Order, 93-KH-2722, 11/13/1995; *id*., 1st Cir. Order, 93KW1093, 9/10/93.
[21] *Id*., Application for Post-Conviction Relief, 3/19/97 (dated 3/21/97).
[22] *Id*., Trial Court Order, 6/16/97.

post-conviction relief under La. Code Crim. P. art. 930.8.[23]  The Louisiana Supreme Court denied

his subsequent writ application without stated reasons on November 13, 1998.[24]

On January 22, 1999, Rushing submitted an application for post-conviction relief with the

state trial court challenging racial discrimination in the grand jury selection process under

*Campbell v. Louisiana*, 523 U.S. 392 (1998), and ineffective assistance of counsel for failing to

challenge the grand jury on that ground.[25]  The state trial court denied the application on March

10, 1999, as untimely and meritless.[26]  The Louisiana First Circuit denied Rushing's writ

application finding that *Campbell* did not apply retroactively to final convictions.[27]  The Louisiana

Supreme Court denied Rushing's related writ application as repetitive, citing La. Code Crim. P.

art. 930.4(D) on January 28, 2000.[28]

On June 26, 2000, Rushing again filed a federal habeas corpus petition challenging his

conviction in this federal court in Civ. Action 00-1784"C"(4).  However, when prompted to

consider doing so, on September 18, 2000, the United States Fifth Circuit declined to grant

Rushing authorization to proceed with the successive petition and the matter here remained closed.

Civ. Action 00-1784"C"(4), ECF Nos. 3, 5.

Almost eighteen years later, on July 13, 2018, Rushing submitted a fourth application for

post-conviction to the state trial court asserting that he was denied his Sixth Amendment right to

effective assistance of counsel when his counsel conceded his guilt during the guilt phase to avoid

---

[23] *Id.*, 1st Cir. Order, 97KW1610, 9/18/97.
[24] *State ex rel. Rushing v. State*, 730 So. 2d 452 (La. 1998); St. Rec. Vol. 8 of 8, La. S. Ct. Order, 97-KH-3075, 11/13/98.
[25] *Id.*, Application for Post-Conviction Relief, 2/17/99 (dated 1/22/99).
[26] *Id.*, Trial Court Order, 3/10/99.
[27] *Id.*, 1st Cir. Order, 99KW1111, 7/1/99.
[28] *State ex rel. Rushing v. State*, 753 So. 2d 827 (La. 2000); St. Rec. Vol. 8 of 8, La. S. Ct. Order, 1999-KH-2379, 1/28/00.

the death penalty in contravention of the then-newly released United States Supreme Court opinion in *McCoy v. Louisiana*, 138 S. Ct. 1500 (2018).[29]

On August 12, 2019, after receiving a response from the State,[30] the state trial court denied Rushing's application finding that *McCoy* did not apply retroactively to Rushing's case under *Teague v. Lane*, 489 U.S. 288 (1989).[31]   The Louisiana First Circuit denied Rushing's related writ application on December 6, 2019, without stated reasons.[32]   On September 23, 2020, the Louisiana Supreme Court denied Rushing's writ application because he failed to establish an exception to the bar against seeking untimely post-conviction relief, citing La. Code Crim. P. art. 930.8 and *State ex rel. Glover v. State*, 660 So. 2d 1189 (La. 1995).[33]

## II.   <u>Federal Petition</u>

On May 10, 2021, the clerk of this Court filed Rushing's federal petition for habeas corpus relief in which he alleges that in light of *McCoy*, he received ineffective assistance of counsel when his counsel conceded his guilt during trial without his consent, which he could not have given because of his intellectual disability.   ECF No. 1-2.   He also argues that *McCoy* should be retroactively applied under *Teague* to provide him relief.   Rushing further argues that the state courts erred in finding his application untimely under La. Code Crim. P. art. 930.8 because he filed his application within one year of the issuance of *McCoy*.   Additionally, Rushing argues that the court erred because the violation under *McCoy* is a structural error.   *Id*. at 20-22.

When Rushing filed this petition challenging his underlying conviction, the Court recognized that he had filed two prior federal habeas petitions. One of Rushing's petitions was

---

[29] *Id*., Application for Post-Conviction Relief, 8/2/18 (dated 7/31/18).
[30] *Id*., State's Response, 8/1/19.
[31] *Id*., Trial Court Order, 8/12/19.
[32] *State v. Rushing*, No. 2019KW1259, 2019 WL 6681887, at *1 (La. App. 1st Cir. Dec. 6, 2019).
[33] *State v. Rushing*, 301 So. 3d 1142, 1143 (La. 2020).

denied authorization to proceed as impermissibly successive by the United States Fifth Circuit. ECF No. 4. On June 10, 2021, this Court construed the petition in part as a request to proceed with a successive petition and transferred the matter to the Fifth Circuit to cure jurisdiction. *Id*. On March 15, 2022, the Fifth Circuit transferred the matter back to this Court finding authorization unnecessary in light of its ruling in *In re Greenwood*, No. 19-60884, 2022 WL 501393, at *1 (5th Cir. Feb. 18, 2022), issued while Rushing's certification request was pending.[34]

After return of the matter to this Court, the State filed a response in opposition to Rushing's petition asserting that the petition was untimely filed, and that Rushing failed to meet any alternative initial date for or exception to the AEDPA's statute of limitations.[35]

In his traverse to the State's opposition, Rushing argues that his petition should be considered timely because of his reliance on *McCoy* as a new rule of law, and reasserts his arguments in support of granting him relief.[36]

## III.   General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[37] applies to Rushing's petition, which is deemed filed in this Court under the mailbox rule on May 10, 2021.[38] The threshold questions on habeas review under the amended

---

[34] In *In re Greenwood*, the Fifth Circuit concluded that a resentencing acts as a new, intervening judgment under *Magwood v. Patterson*, 561 U.S. 320 (2010), and a federal petition filed after the new judgment is considered a first challenge to the new judgment and does not require authorization to proceed. *In re Greenwood*, 2022 WL 501393 at *2-*3.

[35] ECF No. 15.

[36] ECF No. 16.

[37] The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes are effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[38] The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting *pro se*. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The Legal Programs Department at Rushing's

statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State asserts and the record shows that Rushing's federal petition was not timely filed under the AEDPA. While Rushing's 1990 resentencing may have opened an opportunity for him to return for federal review without need for authorization, he has not done so in a timely manner and has not overcome the remaining procedural hurdles addressed below. Thus, for the following reasons, his petition should be dismissed as time-barred.

## IV.  **Statute of Limitations**

The AEDPA codified in 28 U.S.C. § 2244(d)(1) requires a petitioner to file his § 2254 petition within one year of several events, including the date the state court conviction became final or the date on which the United States Supreme Court issued a new rule of law made retroactive on collateral review.[39]  *Duncan v. Walker*, 533 U.S. 167, 176-80 (2001).  Rushing argues that the limitations calculation in this case should be based on the latter provision, under

---

jail facility stamped his pleadings received on May 10, 2021, and the petition and accompanying pleadings were electronically mailed to this Court the same day.  ECF No. 1, at 7 & 8.

[39]The statute of limitations provision of the AEDPA at § 2244(d) also provides other trigger dates which do not apply here:

(1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of-

A.    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

B.    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;

C.    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

D.    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2)  The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.  28 U.S.C. § 2244(d).

§ 2244(d)(1)(C), based on the Supreme Court's issuance of *McCoy* on May 14, 2018.  However, despite Rushing's adamancy, § 2244(d)(1)(C) only applies as a new limitations trigger when the Supreme Court creates a newly recognized right that the Supreme Court also "made retroactively applicable to cases on collateral review."  The Supreme Court has *not* pronounced *McCoy* to be either a new rule of law or retroactively applicable.  *Smith v. Stein*, 982 F.3d 229, 235 (4th Cir. 2020) (holding that *McCoy* "is not retroactively applicable on collateral review"), *cert. denied*, 141 S. Ct. 2532 (2021); *Christian v. Thomas*, 982 F.3d 1215, 1225 (9th Cir. 2020); *see also*, *Fratta v. Lumpkin*, No. 21-70001, 2022 WL 44576, at *3 (5th Cir. Jan. 5, 2022) (Recognizing that "it is doubtful" that *McCoy* applies retroactively on collateral review) (citing *Christian* and *Stein*); *Colvin v. Tanner*, No. 19-923, 2021 WL 356238, at *1 (W.D. La. Feb. 2, 2021).  For this reason, § 2244(d)(1)(C) does not provide a limitations period start date for Rushing's federal petition.

Therefore, the appropriate limitations trigger for Rushing's federal petition is the finality of his conviction under § 2244(d)(1)(A).  As calculated above, Rushing's conviction and "new" life sentence were final on Monday July 30, 1990, which was thirty days after his resentencing when he did not seek direct review in state court.  Under the literal terms of the AEDPA, Rushing had one year from that date, or until July 30, 1991, to file a timely federal application for habeas corpus relief which he did not do.[40]

However, in cases when a petitioner's conviction was final before the effective date of the AEDPA, *i.e.* before April 24, 1996, the Fifth Circuit has granted a one-year grace period from that date within which to the petitioner could file a timely petition under 28 U.S.C. §§ 2254 and 2255. *Flanagan v. Johnson*, 154 F.3d 196, 200 (5th Cir. 1998); *United States v. Flores*, 135 F.3d 1000,

---

[40] Rushing's 1990 § 2254 federal petition was filed on June 26, 2000 *before* his resentencing and *without* required authorization (deemed necessary at the time).  Civ. Action 00-1784"C"(4), at ECF No. 1.  It was closed on August 2, 2000, when it was transferred to the Fifth Circuit.  *Id*. at ECF No. 3.

1004 (5th Cir.1998), *cert. denied*, 525 U.S. 1091 (1999).  The Fifth Circuit in "*Flores* concluded that habeas petitioners must be afforded a reasonable time after AEDPA's effective date for the filing of petitions for collateral relief based upon claims that would otherwise be time-barred before AEDPA's April 24, 1996 effective date." *Flanagan*, 154 F.3d at 200 (citing *Flores*, 135 F.3d at 1004-05).  "[P]etitioners . . . whose claims would otherwise be time-barred prior to the April 24, 1996 effective date of AEDPA, now have one year after the April 24, 1996 effective date of AEDPA in which to file a § 2254 petition for collateral relief." *Id*. (citing *Flores*, 135 F.3d at 1005).

Rushing's conviction and life sentence were final on July 30, 1990, years before the AEDPA's effective date of April 24, 1996.  Rushing, therefore, benefited from the grace period and was required to file his federal habeas petition no later than April 24, 1997.  Under the federal mailbox rule, Rushing filed this petition on May 10, 2021, which was 24 years and 15 days *after* the allowable grace period expired.  As noted above, there is no other applicable start date for the limitations period because *McCoy* has not been deemed retroactively applicable on collateral review.  Rushing's petition must be dismissed as untimely, unless the one-year grace period was interrupted or otherwise tolled in either of the two ways recognized in the applicable law.

### A.     Statutory Tolling

Section 2244(d)(2) provides that the time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation.  *See* 28 U.S.C. § 2244(d)(2).  In order for a state post-conviction application to be considered "properly filed" within the meaning of § 2244(d)(2), the applicant must have complied with all of the State's procedural requirements, such as timeliness and place of filing.  *Pace v. DiGuglielmo*, 544 U.S. 408, 413-14 (2005);

*Williams v. Cain*, 217 F.3d 303, 306-08 & n.4 (5th Cir. 2000) (quoting *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000)); *Villegas v. Johnson*, 184 F.3d 467, 468-69 (5th Cir. 1999), *reh'g denied*, 196 F.3d 1259 (5th Cir. 1999).  For purposes of the AEDPA, a timeliness calculation in Louisiana requires the application of the prison mailbox rule to state court pleadings.  *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006).  The Court has applied this rule in presenting the procedural history recited above.

A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'"  *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams*, 217 F.3d at 310 (quoting *Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999)) (finding that a matter is "pending" for Section 2244(d)(2) purposes until further appellate review is unavailable under Louisiana's procedures.); *see also Melancon v. Kaylo*, 259 F.3d 401, 405 (5th Cir. 2001).

A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition.  *Godfrey v. Dretke*, 396 F.3d 681, 687-88 (5th Cir. 2005).

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition.  *Dillworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (finding that a state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, 264 F.3d 310, 316 (3d Cir. 2001), *overruled on other grounds by Carey*, 536 U.S. at 214 (finding that a motion to withdraw a guilty plea is "other collateral review").

In addition, a petitioner's efforts to obtain copies of documents and transcripts do *not* constitute other collateral review for purposes of the AEDPA tolling calculation. *See Osborne v. Boone*, 176 F.3d 489, 1999 WL 203523 (10th Cir. Apr. 12, 1999) (Table, Text in Westlaw) (motion for transcript copies is not "other collateral review" for tolling purposes); *Brown v. Cain*, 112 F. Supp. 2d 585, 587 (E.D. La. 2000), *aff'd*, 239 F.3d 365 (5th Cir. 2000); *Gerrets v. Futrell*, No. 01-3080, 2002 WL 63541 (E.D. La. Jan. 16, 2002); *Jones v. Johnson*, No. 01-CV-0115, 2001 WL 1006062, at *3 (N.D. Tex. Aug. 13, 2001) (petitioner should file application and then continue to gather support and transcripts); *Grayson v. Grayson*, 185 F. Supp. 2d 747, 751-52 (E.D. Mich. Jan. 3, 2002) (delay in receipt of transcript not required to file the application, does not warrant equitable tolling).

In Rushing's case, the AEDPA filing period began to run on April 24, 1996, when the AEDPA was effective.  The period continued to run without interruption for one year, until April 24, 1997, when it expired.  Rushing did not have a properly filed state post-conviction or other collateral review pending during that time period.

As outlined above, Rushing filed for state post-conviction review on March 19, 1997, about one month before the AEDPA grace period expired.[41]  However, the higher state courts denied Rushing's subsequent writ applications as untimely under La. Code Crim. P. art. 930.8.[42]  The Supreme Court has made clear that "[w]hen a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)."  *Pace*, 544 U.S. at 414.  Those untimely filings are not properly filed or pending for purposes of tolling under the AEDPA.  *Id.* at

---

[41] *Id.*, Application for Post-Conviction Relief, 3/19/97 (dated 3/21/97).

[42] As outlined previously, on September 18, 1997, the Louisiana First Circuit denied Rushing's writ application as untimely under La. Code Crim. P. art. 930.8.  On November 13, 1998, the Louisiana Supreme Court denied Rushing's writ application without stated reasons.[42]  The court looks to the last reasoned decision, that of the Louisiana First Circuit, to determine if the unexplained decision was procedural.  *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991) (federal habeas court looks to the "last reasoned decision" of the state courts to determine if disposition was procedural).

417. Therefore, Rushing's 1997 state court post-conviction application and subsequent writ applications were not "properly filed" or pending for purposes of tolling under § 2244(d)(2). *Pace*, 544 U.S. at 417 (". . . time limits, no matter their form, are 'filing' conditions" so that when the state courts reject a state application for post-conviction relief as untimely, it cannot be considered "properly filed" to entitle the petitioner to statutory tolling pursuant to Section 2244(d)(2)); *Wardlaw v. Cain*, 541 F.3d 275, 278 (5th Cir. 2008) (citing *Pace*, 544 U.S. at 414).

Rushing had no other state court post-conviction or other collateral review pending during the one-year grace period between April 24, 1996, and April 24, 1997. Nothing filed after the expiration of the filing period provides a petitioner a statutory tolling benefit. *See Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000); *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003) ("Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations."). Thus, the filing of a state post-conviction application after the AEDPA filing period has expired also does *not* restart the AEDPA time-clock. *See Scott*, 227 F.3d at 263 (a filing made after the expiration of the AEDPA one-year filing period does not renew or extend the AEDPA filing period or provide a petitioner any tolling benefits); *Higginbotham v. King*, 592 F. App'x 313, 314 (5th Cir. 2015) (same).

Therefore, Rushing's federal petition, filed under the mailbox rule on May 10, 2021, was filed more than 24 years and 15 days after the recognized grace filing period expired on April 24, 1997. Rushing's untimely federal petition should be dismissed with prejudice unless he meets another exception or excuse to the running of the AEDPA limitations period.

**B.    <u>No Equitable Tolling</u>**

The post-AEDPA jurisprudence also provides for equitable tolling of the AEDPA limitations period where rare or extraordinary circumstances may have prevented a diligent

petitioner from timely pursuing federal habeas corpus.  *Pace*, 544 U.S. at 419; *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999); *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299 (5th Cir. 1998); *Davis v. Johnson*, 158 F.3d 806, 810-11 (5th Cir. 1998), *cert. denied*, 526 U.S. 1074 (1999). However, equitable tolling is warranted only in situations where the petitioner was actively misled or is prevented in some extraordinary circumstance outside of his control from asserting his rights. *Pace*, 544 U.S. at 418-19; *see Cousin v. Lensing*, 310 F.3d 843, 848 (5th Cir. 2002); *see Holland v. Florida*, 560 U.S. 631, 652-53 (2010) (finding that equitable tolling was warranted where attorney was more than negligent when he failed to satisfy professional standards of care by ignoring the client's requests to timely file a federal petition and in failing to communicate with the client over a period of years in spite of the client's letters); *Hardy v. Quarterman*, 577 F.3d 596, 599-600 (5th Cir. 2009) (finding that equitable tolling was warranted where petitioner suffered a significant state-created delay when, for nearly one year, the state appeals court failed in its duty under Texas law to inform him that his state habeas petition had been denied, petitioner diligently pursued federal habeas relief, and he persistently inquired to the court.); *United States v. Wynn*, 292 F.3d 226, 230 (5th Cir. 2002) (finding that tolling was warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); *Coleman*, 184 F.3d at 402 (quotation omitted) ("A garden variety claim of excusable neglect does not support equitable tolling."); *Fisher*, 174 F.3d at 715 (finding that tolling is not justified during petitioner's seventeen-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); *Cantu-Tzin*, 162 F.3d at 300 (finding that State's alleged failure to appoint competent habeas counsel did not justify tolling); *Davis*, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended the deadline to file habeas corpus

petition beyond expiration of AEDPA grace period).  A habeas petitioner bears the burden of proof to establish entitlement to equitable tolling.  *Alexander v. Cockrell*, 294 F.3d 626, 629 (5th Cir. 2002).

Rushing has not presented, and the record does not demonstrate, any basis for extending the extraordinary remedy of equitable tolling provided for in the foregoing precedent.  In his traverse, Rushing urges that his petition should be considered timely because of his belief that he is entitled to relief under *McCoy*.  However, as discussed above, *McCoy* has not been made to provide a retroactive benefit to or basis for a claim for petitioner's like Rushing whose convictions were long since final.  Equitable tolling cannot be used to create a claim under *McCoy* or make *McCoy* retroactively applicable to Rushing.

For these reasons, Rushing is not entitled to equitable tolling, and his petition should be dismissed as untimely filed.

### C.    No Other Excuse or Exception to this Time Bar

Rushing has failed to demonstrate any other excuse or exception to avoid the expiration of the one-year grace limitations period applicable in this case.  For example, Rushing has not alleged, asserted, nor provided a credible showing of his actual, or factual, innocence based on newly discovered evidence in any way to excuse this untimely filed federal habeas petition.  *McQuiggin v. Perkins*, 569 U.S. 383 (2013); *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *see also House v. Bell*, 547 U.S. 518, 537 (2006) (quoting *Schlup*, 513 U.S. at 324).  No such claim or high-level of proof has been offered to this Court, nor has any such claim been established or exhausted in the state courts.

In addition, the fact that Rushing's claim involves alleged ineffective assistance of counsel under *McCoy* does not provide an exception to his untimely federal filing under the United States

Supreme Court's holdings in *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 569 U.S. 413 (2013).  In *Martinez*, the Court held that a *state court imposed* "'procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the [State's] initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.'"  *Trevino*, 569 U.S. at 417 (quoting *Martinez*, 566 U.S. at 17).

The dismissal recommended in this Report is not based on a *state court imposed* bar to review of Rushing's *McCoy* claim.  Instead, the recommendation here arises from Rushing's failure to meet the *federal* limitations deadline under the AEDPA, as extended by the recognized grace period.  The decisions in *Martinez* and *Trevino*, and their progeny, do *not* address or provide an excuse for the untimely filing of a federal habeas petition.  *See Arthur v. Thomas*, 739 F.3d 611, 631 (11th Cir. 2014) ("Thus, we also hold that the reasoning of the *Martinez* rule does not apply to AEDPA's limitations period in § 2254 cases or any potential tolling of that period."); *Smith v. Rogers*, No. 14-0482, 2014 WL 2972884, at * 1 (W.D. La. Jul. 2, 2014); *Falls v. Cain*, No. 13-5091, 2014 WL 2702380, at *3 (E.D. La. Jun. 13, 2014) (Order adopting Report).  The decisions in *Martinez* and *Trevino* also do not constitute new rules of constitutional law made retroactive on collateral review to start a new one-year filing period under the AEDPA.  *See In re Paredes*, 587 F. App'x at 813; *Adams v. Thaler*, 679 F.3d 312, 322 n.6 (5th Cir. 2012).  Thus, neither *Martinez* nor *Trevino* excuse the untimely filing of Rushing's federal petition.

Rushing's federal petition deemed filed on May 10, 2021, was not timely filed within the one-year grace filing period which expired on April 24, 1997.  There is no statutory tolling, equitable tolling, or other exception applicable to or that would excuse Rushing's untimely filing. Rushing's petition was not timely filed and should be dismissed for that reason.

**V.**      **Recommendation**

For the foregoing reasons, it is **RECOMMENDED** that Rushing's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time-barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[43]

New Orleans, Louisiana, this 8th day of December, 2022.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[43]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.