RECEIVED

SCANNED at LSP and Emailed
12-29-22 by _UB_, _24_ pages
date      Initials   No.

DEC 2 9 2022

Legal Programs Department

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **DAVID RUSHING** | * | **CIVIL ACTION** |
| **Appellant/Petitioner** | * | |
| | * | |
| **VERSUS** | * | **CASE NO.21-cv-0929** |
| | * | |
| **STATE OF LOUISIANA** | * | **SECTION "R" (4)** |
| **Defendant/Respondent** | * | |

**FILED:**_____     **DEPUTY CLERK:**_____

U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED    Dec 29 2022

CAROL L. MICHEL
CLERK
AJ                        Angola

## PETITIONER'S OBJECTION
## TO THE MAGISTRATE JUDGE REPORT AND RECOMMENDATION

Now Into Court comes Petitioner, David Rushing, who respectfully object to the Magistrate-Judge's Report and Recommendation. Petitioner, a state prisoner incarcerated at the Louisiana State Penitentiary in Angola, Louisiana, filed a petition for writ of habeas corpus pursuant to **28 U. S. C. § 2254** alleging that he is entitled to the same equal treatment as Robert Leroy McCoy has received, in regards to an attorney violating his Sixth Amendment-secured autonomy ranks as an error of the kind that is call a **"STRUCTURAL"**, when this type of error is not subject to harmless-error review. (U.S.C.A.Const.Amend.6). Upon the findings contained in her Report and Recommendation, in which she recommended that Mr. Rushing's Petition for Writ of Habeas Corpus under **28 U. S. C. § 2254** be DISMISSED WITH PREJUDICE as time barred.

1

## RELEVANT CASE HISTORY

### A.   Procedure History

On April 21, 1983, the St. Tammany Parish Grand Jury indicted David Rushing and Jeffrey Fussell for the first degree murder of Danny Archer, a violation of **La. R. S. 14:30.** On October 10 thru 13th 1983, Defendant David Rushing went to trial and within a three day trial. Counsel John Simmon was entering his client (David Rushing) guilt to the jury that caused his client rights to be violated. Mr. David R. Paddison, the Assistant District Attorney insisted that Mr. Simmons do not engage in any potential evidence charged acts and adamantly objected to any admission of guilt in the following objection:

Mr.Paddison:       Your Honor I have to object to the usage of any potential
                  evidence in this matter it hasn't been admitted.[1]

Judge James: I'll over-rule the objection.

Petitioner argues, at this point Judge James over-ruling the District Attorney's objection, and allowing Defense Counsel Simmons to tell the jury about the shot-gun (murder weapon), that the state had never introduced showed prejudice and it was unconstitutional and defendant's autonomy was proven at that point the jury formed there verdict of (guilty). Petitioner assert, the trial court erred in allowing Simmons to tell the jury, that the defendant David Rushing is guilty, or when he did it.[2]

Those twelve jurors unanimously found David Rushing guilty of the crime

1.See, Vol. II, T. Tr. Pg. 69
2.See, Vol. II, T. Tr. Pg. 69

2

Case 2:21-cv-00929-SSV Document 18 Filed 12/29/22 Page 3 of 25

charged. On October 14, 1983, the jury recommended that the Defendant be sentenced to death. In the jury conclusion, they found the existence of two statutory aggravating circumstances (1) the defendant had been engaged in the perpetration or attempted perpetration of an armed robbery or simple robbery at the time the victim was killed, and (2) the offense was committed in an especially heinous, atrocious, or cruel manner. **La. C. Cr. P. art. 905.4§§ (a) and (g)**.

A month later, on November 17, 1983, Fussell pleaded guilty to a reduced charge of second degree murder and was sentenced to life imprisonment without benefit of probation, parole or suspension of sentence.

Petitioner's conviction and sentence were affirmed by the Louisiana Supreme Court on direct appeal.[3] A writ of certiorari was denied by the U. S. Supreme Court, as was a request for rehearing.[4] On October 8, 1987, Petitioner filed his state post-conviction relief in the 22nd Judicial District Court, Parish of St. Tammany, Louisiana. It was immediately denied that same morning without an evidentiary hearing. Later that day, a writ to review was denial that was filed by Petitioner in the Louisiana Supreme Court.

October 9, 1986, Petitioner then filed into the Unite States District Court for the Easter District Court of Louisiana a Writ of Habeas Corpus that was accompanied by a motion for evidentiary hearing. The same day the District Court granted a stay of

---

3. State v. Rushing, 464 So.2d 268 (La. 1985).
4. Rushing v. Louisiana, 106 S. Ct. 2258 (1986); rehearing; Rushing v. Louisiana, 106 S. Ct. 3341 (1986).

3

Petitioner's pending October 10, 1986 execution date. On September 1, 1987 the District Court denied the Petition without an evidentiary hearing claims as meritless. Petitioner subsequently filed the Motion to Reconsider. The District Court denied the Motion to Reconsider on January 7, 1988. Petitioner proceeded on an Application for Certificate of Probable Cause to Appeal. On February 5, 1988, this Application was granted by the United States Court of Appeals, Fifth Circuit.On March 30, 1989 Petitioner sentence vacated and case remanded from violating Rushing's Eighth Amendment Rights through the introduction of victim testimony during the sentencing phrase of his trial violated defendant's Eighth Amendment rights; (2) defense counsel's closing argument reference to defendant's guilt was not ineffective assistance of counsel; (3) defense counsel's failure to strike two jurors was not ineffective assistance of counsel; (4) outcome of defendant's trial was not rendered fundamentally unfair under the Fourteenth Amendment by alleged prosecutorial misconduct. "Death sentence vacated and case remanded".

Accordingly, the Extract of Minutes Entry on Thursday, June 28, 1990, Mr. Rushing was resentence to life imprisonment without the benefit of parole, probation or suspension of sentence after the state waive its right to a sentencing hearing on April 6, 1990. Attorney Nicholas J. Trenticosta was present with Petitioner David Rushing for a new sentencing hearing. The State at this time informed the Court that they will not seek the Death Penalty in this matter. David Rushing was sentenced to life in prison at hard

4

labor.

Rushing's conviction and new sentence became final 30 days later, on Monday, July 30 1990. Petitioner commenced filing for his District Attorney's Files immediately after receiving his new sentence, he applied for his District Attorney's Files. Petitioner has diligently sought for his District Attorney's Files and still no results today. It was a few years later, on March 17, 1993, Rushing submitted an Application for Post-Conviction Relief to the state court alleging his arrest was unconstitutional, several trial errors occurred, and ineffective assistance of trial counsel's failure to raise certain trial objections. The trial court denied the application without stating a reason on March 29, 1993. The Louisiana First Circuit Court of Appeals in 1993 and the Louisiana Supreme Court 1995 each denied Rushing's subsequent writ application for seeking untimely post-conviction relief under **La. Code Crim. P. Art. 930.8**.

Rushing submitted another application for post-conviction relief to the state court on March 19, 1997, asserting claims of racial bias in grand jury selection, violation of Brady, and an ineffective assistance of counsel for failing to challenge the grand jury on grounds of race discrimination. The state court denied the application on June 16, 1997, as repetitive and meritless. The Louisiana First Circuit denied Rushing's writ application for seeking untimely post-conviction relief under **La. Code Criminal Procedure Article 930.8**. The Louisiana Supreme Court denied his subsequent writ application without stating reasons on November 13, 1998. Petitioner contends that he continuously

5

to seek his District Attorneys files in an effort to bring new claims that neither his attorney or him knew about.(See "In 1998, Petitioner filed a Motion For Production of District Attorney's Files and Request for A Contradictory Hearing) Due to being transferred to different Camps within the institution for around 40 years caused his paper work to be unaccountable that would have shown he was diligently seeking his D. A.'s Files.

On January 22, 1999, Rushing submitted an application for post-conviction relief with the state trial court challenging racial discrimination in the grand jury selection process under Campbell v. Louisiana, 523 U. S. 392 (1998), and ineffective assistance of counsel for failing to challenge the grand jury on that ground. The state trial court denied Rushing's writ application finding that Campbell did not apply retroactively to final convictions. The Louisiana Supreme Court denied Rushing's related writ application as repetitive, citing La. C. Cr. P. Art. 930.4(D) on January 28, 2000.

On June 26, 2000, Rushing again filed a federal habeas corpus petition challenging his conviction in this federal court in Civ. Action 00-1784"C" (4). However, when prompted to consider doing so, on September 18, 2000, the United States Fifth Circuit declined to grant Rushing authorization to proceed with the successive petition and the matter here remained closed. Civ. Action 00-1784 "C" (4) ECF Nos. 3, 5.

Petitioner's mother hired, The Law Office of Bruce W. Harris and Attorney and Counselor at Law, located on 1515 Poydras Street, Suite 2222 New Orleans, Louisiana

6

70112 to obtain her son David Rushing's District Attorney Files. Upon receipt from the District Attorney's Office in St. Tammany Parish, Covington, Louisiana informing Attorney Harris of his tardy reply in failing to locate Mr. David Rushing's files. As of this date and time its no where written in the record when Mr. Rushing files were destroyed by the prosecutor's office. There is a highly possibility petitioner's files have been destroyed right after his conviction sealing his faith of never appealing any claim from his files for the rest of his entire life. If the state's prosecutor's office has destroyed his files, the prosecutor's office is denying Rushing his right to an appeal to his conviction.(14th Amend. U. S. Const)

Almost eighteen years later, on July 31, 2018, Petitioner filed an Application for Post Conviction Relief and Memorandum in Support of Application for Post Conviction Relief, within one year of a newly interpretation of Law under Article 930.8 (A) (2). On April 29, 2019, Petitioner filed a Motion and Order to Make the District Attorney to File a Response. On August 12, 2019, Petitioner filed a Motion Addresses The State's Late Responded Answer.

On May 16, 2022, Petitioner filed an Objection to the State Second Request for an Extension of Time in providing this Court a copy of petitioner's files.

On December 13, 2022, Petitioner received the Magistrate Judge Report and Recommendation through the U. S. Mail Room at Camp F. On December 8th, 2022, Magistrate Judge Karen Wells Roby rendered her Report and Recommendation to

7

Dismiss With Prejudice as time barred to petitioner Writ of Habaeas Corpus.

## B. Factual Background

According to the record, Danny Archer's ("Archer") body was found in the early morning hours on April 1, 1983, by Lloyd Jackson ("Jackson"), a route salesman who was returning home from work. Jackson saw a cab stopped beside the road with its motor running, lights on, doors shut, and windows rolled up. Jackson approached the vehicle vehicle and saw a man, Archer, covered in blood sitting in the driver's seat, and leaning over to the passenger side. Jackson went to a nearby house and called the police.

Police determined that Archer, the cab drive, had been shot in the back and repeatedly struck on the top of the head. The interior of the cab had so much blood splatter that police initially questioned whether there was a second victim. The police found a piece from a wooden gun stock. About 80 feet behind the cab, police also found a wallet which held Fussell's driver's license.

Investigators went to Fussell's trailer where he had been asleep on the couch near the door. He invited the officers, inside, and they located Rushing asleep in one of the rooms. On the floor near Rushing bed, the officers found a pair of thongs, jeans, and a black jacket covered with blood. They did find blood on Fussell.

Sometime after their arrest, Fussell led officers to the shotgun used to kill Archer. Approximately, five hours later, Rushing voluntarily gave a statement to officers and described the events leading up to Archer's murder. He told the police that him and

8

Fussell had taken blue Valiums earlier in the evening and decided to go to Slidell to rob a gas station. The gas station was closed when they arrived, so they decided to call a cab and rob the driver. The two men discussed who would rob the driver, and Fussell told Rushing, he don't have the nerves enough to pull the "cap" (the trigger). Rushing decided to commit the robbery because he did not think he would kill the person.

Rushing admitted that he was wearing thongs, black gloves and Fussell's jacket when he entered the cab. He also had a saw-off shotgun hidden under his clothing. Rushing told Archer, the cab driver, to drive to the Ponderosa Subdivision. Fussell followed the cab in Rushing's car. Rushing told officers that, at some point, he thought Archer was reaching for a gun under the seat. Rushing put the shotgun up to the back of the driver's seat and shot Archer in the right lower back. Archer turned around and began swinging his fists at Rushing. Rushing admitted that he fought to keep Archer off of him, but denied hitting Archer with the shotgun. In the meantime, Fussell had driven up behind the cab. Rushing later recanted his confession at trial and claimed that he was intoxicated from taking barbiturates, thus, he only remembered portions of the evening.

However, scientific tests would later establish that the blood on Rushing's clothes belonged to Archer. Also, the tests showed that Archer was repeatedly struck on top of the head with the butt of a shotgun and his hair and blood were found embedded in the shotgun turned over by Fussell. The broken wooden piece found on the floorboard of the cab also matched a piece missing from the end of the shotgun Fussell located for police.

9

The autopsy also showed that the shotgun blast entered the lower portion of Archer's abdominal cavity, collapsed his lung, and perforated his liver. Additionally, Archer suffered five lacerations ranging from 1½ to 3 inches in length to the rear of his head. Three of the blows fractured Archer's skull. Even without the strikes to the head, the pathologist determined that Archer would have bled to death in no more than 45 minutes from the shotgun wound.

It appears that, when petitioner David Rushing was filing for his District Attorney Files into the District Court, he could filed a proper Application for Post Conviction Relief (APCR) within the 3 year time limitation for (APCR). However, Petitioner he has been denied seeking his District Attorney's Files since his new sentence was provided upon him. It can be highlighted, there is no record of how long his District Attorney's Files has been missing or destroyed in the instance case. Thereafter, Rushing mother hired Attorney Harris to obtain her son's District Attorney's Files that he has always been denied the right to review based off of evidence that was used to convicted him. Since, the 10th day of January 2001, the Assistant District Attorney Joe Tosterud, notified Attorney Harris and informed him that he is unable to find his clients D. A.'s files in this office. "As you know, it was handled by a prior administration. Their record keeping and file preservation was very poor"......"I also understand our obligation to continue looking and if we have success, I will contact you".

As of this date, from his second letter dated February 7, 2002, its been twenty

10

years/two decades since this letter was addressed to the petitioner from Walter P. Reed Administration. Since then, Warren Montgomery is the prosecutor of St. Tammany Parish and Washington Parish, Louisiana.

Petitioner question before this Court, "Does the State have the Authority Without a Court ORDER to Destroy Petitioner's District Attorney Files? Petitioner was attempting to file his claims in support of his 3 year time limitation for post-conviction relief. Then in 1996 of April he initiated another attempt to seek his District Attorney's Files within the new transition of the law in April to the Anti-terrorism Effective Death Penalty Act that provided him another year to file timely to the new two year post-conviction relief rules. It further appears that the District Attorney's Office has caused a State Impediment to his filings for collateral review.

Petitioner further argues, the trial Judge should have seen a signal of fundamental unfairness to the defendant, by allowing the defense counsel John Simmons to play seesaw games with the jury.

Finally, the defense counsel Simmons, "states its not incumbent upon the defense to prove the defendant or D. D. David Rushing, to prove he's innocent. He's presumed to be innocent till proven guilty beyond a reasonable doubt.[5] Defense counsel again was allowed by the Court to address the jury by stating, "I don't know whether either one of these two boys killed him".

Defense counsel again was allowed by the Court to address the jury by stating, "I

---

5.See, Vol. IV, T. Tr. Pg. 211, Line 11-21

11

don't know whether either one of these two boys killed him.[6.]

The Court allowed defense counsel to take full control, pleading the defendant guilty several times during the trial in the following matter[7]:

Mr. Simmons:     "I'm not asking you to go beyond the evidence to seek
                 and acquit I'm not asking you to let him walk out of
                 here".

The trial court judge, A. Clayton James, Judge allowed the violation to Rushing's right to be violated, just as McCoy trial court did him, allowed the violation of Rushing protected autonomy right was completed when the court allowed Simmons' who is Rushing counsel to usurp control of an issue within Rushing sole prerogative. Violation of a defendant's Sixth Amendment-secured autonomy has been ranked "structural" error, when present, such an error is not subject to harmless-error review. Petitioner further argues, in his situation here, Justice Ginsburg stated, "that the petitioner did not have to show prejudice because prejudice already assumed, it worked to his actual and substantial disadvantage, infecting his entire trial with errors of constitutional dimensions".

On May 14, 2018, the United States Supreme Court rendered a ruling in behalf of Robert Leroy McCoy's case. The Supreme Court, Justice Ginsburg, held that:

1. Defendant had the right under the Sixth Amendment to insist that his prior counsel refrain from admitting that defendant committed three murders during guilt phase of capital trial, even though counsel reasonably believe that admitting guilt afforded defendant the best chance to avoid

6.Vol. IV, T. Tr. Pg. 211, Line 11-21
7.See Vol. IV, T. Tr. Page 229

12

death sentence.

2. prior counsel's refusal to maintain defendant's innocence was not necessitated by Louisiana's professional conduct rule, which prohibited lawyer from assisting client in criminal conduct; and

3. trial court's error, in allowing prior counsel's admission of defendant's guilt despite defendant's insistent objections to such admission, was structural, and thus, defendant would be accorded new trial without any need to show prejudice.

On July 31ˢᵗ, 2018, David Rushing immediately filed an Application for Post-Conviction Relief and Memorandum in Support, due to the recently ruling in Robert Leroy McCoy's v. Louisiana out of the United States Supreme Court. This was a criminal case about an attorney conceding his client guilt in capital murder trial. McCoy challenged his conviction off his prior counsel English conceding his guilt during the guilt phase of his capital trial. Rushing is timely filed within the one year.

Thereafter, Petitioner Rushing remembered recognizing the same similar characteristics and performance in his counsel John Simmons when he went to trial on October 10 thru 13, 1983. Simmons also performed the same identical way as Attorney English did in McCoy's case to the jury. Rushing and McCoy cases are both first degree murder cases and Rushing counsel John Simmons was pleding Rushing guilt during different stages in his trial to the jury. Rushing, having no other way to challenge his conviction after the United States Court of Appeal, Fifth Circuit, Judge Johnson reverse his conviction in late 1980s off of the victim impact statements to the jury. Rushing prior attorneys who was representing him while on death row filed other claims besides the victim impact statement, his attorneys also, brought to the 5ᵗʰ Circuit attention on appeal

13

that his counsel was ineffective at the sentencing phase of trial rendering petitioner's conviction invalid under the Sixth, Eighth, and Fourteenth Amendments.

Judge Johnson who wrote the 5th Circuit opinion further stated that Rushing failed under the prongs of Strickland analysis. Thereafter, Rushing reading McCoy's case and what Justice Ginsburg held that trial court's error, in allowing prior counsel's admission of defendant's guilt despite defendant's insistent objections to such admission, was structural, and thus, defendant would be accorded new trial without any need to show prejudice.

On August 12, 2019 the District Court denied Rushing's post-conviction relief application he received it on the 21st day of August, 2019. On August 26, 2019, Mr. Rushing filed a Notice to Appeal and Motion to Set Return Date for Supervisory Writ. On September 16, 2019, Rushing filed to the Court of Appeal, First Circuit. On December 6, 2019 the First Circuit Court of Appeal rendered its denial, but Rushing received this ruling on December 10, 2019. On December 30, 2019, Petitioner Rushing filed a Supervisory Writ of Review into the Supreme Court of Louisiana. The Supreme Court of Louisiana rendered a denial on September 23, 2020. Petitioner received this denial on September 23rd, 2020. Petitioner, Rushing immediately filed a Motion for Rehearing under No. 2020-KH-00054 on October 5th, 2020. On April 7, 2021, the Supreme Court Denied his Rehearing petition, and Rushing received his denial through the institution mail room security on April 12, 2021.

14

On May 7, 2021, Petitioner filed a motion and a writ simultaneously on the same date and year to the 5th Circuit and a writ habeas corpus to the United States District Court, Eastern District of Louisiana. The Motion for an Order Authorizing the United States District Court of Appeals, 5th Circuit to File a Successive Petition for an Application for Writ of Habeas Corpus, and Memorandum in Support to the United States District Court, Eastern District of Louisiana under **28 U. S. C. § 2254** Writ.

On June 10, 2021, this Court construed the petition in part as a request to proceed with a successive petition and transferred the matter to the Fifth United States Court of Appeals, Fifth Circuit to cure jurisdiction. On March 15, 2022, the Fifth Circuit transferred the matter back to this Court finding authorization unnecessary in light of its ruling in In re Greenwood, No. 19-60884, 2022 WL 501393, at *1 (5th Cir. Feb. 18, 2022), issued while Rushing's certificate request was pending.

C.            **REPORT AND RECOMMENDATION OF FINDINGS**

The Magistrate Judge recommended for the forgoing reasons, it is

**RECOMMENDED** that Rushing's petition for issuance of a writ of habeas corpus under **28 U. S. C. § 2254** be DISMISSED WITH PREJUDICE as time-barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected – to - proposed factual findings and

15

legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Serves Auto Assoc., 79 F.3d 1415, 1430 (5th Cir. 1996).

Petitioner ensures his argument to why this Court should reject the Magistrate Report and Recommendation in the following matter:

## ARGUMENT IN SUPPORT OF
## OBJECTION TO THE MAGISTRATE REPORT AND RECOMMENDATION
## TO REASON WHY PETITIONER'S OBJECTION SHOULD BE ACCEPTED

In this appeal, Petitioner David Rushing, seeks review of the Magistrate Judge Report and Recommendation to be rejected for denying his petition for federal habeas corpus relief. Specifically, Rushing contends, that his retained attorney John Simmons conceded his guilt during his sentencing phase that violated his Sixth and Fourteenth Amendment Due Process Rights. The State of Louisiana is aware of counsel's conceding his client's guilt in a capital murder trial that was contrary to clearly establish federal law, but the Magistrate stated, Rushing is not entitled to federal habeas relief because the Constitutional Error is not for collateral offenders.

This is a new era, Justice Ginsburg held that McCoy structural error is accorded a new trial without any need to show prejudice. However, Rushing's contends that he should reach the same benefits as McCoy did under the equal protection of the law.

In order to resolve this appeal, Petitioner brings to this Court's attention that the 5th

16

Circuit has already informed this Court on In re Greenwood that petitioner did not have to have permission to file a Second Successful Petition to their court because he has received a new sentence. (U.S.C.A. Const. Amend. 14).

Justice Ginsburg for the United States Supreme Court held that in the issue at hand, there is no need to decide whether the standard for harmless error analysis is needed in this type of case. Rushing's case is similar to McCoy's where as that he has shown his trial Judge Clayton James during his trial allowed his Attorney John Simmons to create this same typical error before McCoy's case came into existence, in allowing his prior counsel's admission of defendant's guilt despite defendant's insistent objections to such admission, was structural, and thus, Rushing too, should be accorded new trial without any need to show prejudice. Justice Ginsburg articulated in Robert Leroy McCoy v. Louisiana, 138 S. Ct. 1500, 200 L. Ed.2d 821, (Decided May 14, 2018), the issue comes after the Antiterrorism and Effective Death Penalty Act ("AEDPA"),28 U. S. C. § 2254. States courts continue to fail to address this type of issues where you have laws set up that provides the defendant the right to use as his vehicle, but the sordid history of this state prosecutors' office continue to refuse to do what is right to do. According to Justice Ginsburg, harmless error analysis is not needed in this type of "structure" error. This court will view in the holding of the Sixth Amendment guarantees a defendant the right to choose the objective of his defense and insist that his counsel refrain from admitting guilt, even when counsel's experienced-based view is that

17

confessing guilt offers the defendant the best chance to avoid the death penalty.

This court can view specifically, how the state courts allow trial counsel(s) to concede their client's guilt in capital murder cases on the law of a defendant's right to choose the objective of his defense and to insist that his counsel refrain from admitting his guilt. This type of violation clearly establish federal law by improperly relieving the prosecution of the burden of proving guilt in capital crimes. See State of Louisiana v. Brian Douglas Horn, 251 So.3d 1069, 2016-0559 (La. 9/7/18), Faretta v. California, 422 U. S. at 819, 95 S. Ct. 2525, 2533, 45 L. Ed.2d 562 (1975). "The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails." 422 U. S. at 819-20, 95 S. Ct. 2525 (footnote omitted). Implicit in this right is the accuses authority "to make certain fundamental decisions regarding the case, as to whether **6 to plead guilt, waive a jury, testify in his or her own behalf, or take an appeal." Jones v. Barnes, 463 U. S. 745, 751, 103 S. Ct. 3308, 3312, 77 L. Ed.2d 987 (1983).

After Rushing new sentence was imposed, he immediately commenced to seek an appeal. He initiatively started seeking his District Attorney's Offices. This is another reason why Petitioner Rushing was unable to raise a properly file Post-Conviction Relief's Application. (APCR) It was years later that a new structural error came into effect concerning an issue of whether the decision to admit guilt as part of the defense objective belongs to counsel or to the accused was recently addressed by the United

18

States Supreme Court in McCoy v. Louisiana, —U. S.—, 138 S. Ct. 1500, 200 L. Ed.2d 812 (2018). In McCoy, defense counsel, over defendant's objections, told the jury that defendant was guilty of the triple murder of his family members, but sought leniency in the penalty phase due to defendant's serious mental and emotional issues.

The similarities in the instant case and McCoy is Rushing counsel conceded his guilt at different stages of his trial and his death penalty counsels raise the issue on appeal concerning counsel conceding Rushing guilt.

Because Rushing filed a petition for federal habeas relief on other issues without his D. A.'s Files after the 1996 amended by AEDPA review under 28 U. S. C. § 2254, see Lindh v. Murphy 521 U. S. 320, 336, 117 S. Ct. 2059, 138 L. Ed.2d 481 (1997), Under AEDPA, a federal court may not grant a writ of habeas corpus on behalf of a state prisoner unless the adjudication of the petitioner's claim in state court "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U. S. C. § 2254(d)(1)-(2). "A state court's decision will be contrary to clearly established federal law when it reaches a legal conclusion in direct opposition to a prior decision of the United States Supreme Court or when it reaches a different conclusion than the United States Court on a set of materially indistinguishable facts." Kutzner v. Johnson, 242 F.3d 605, 605, 608

19

(5ᵗʰ Cir. 2001). Moreover, a state court's decision will be an unreasonable application of clearly established federal law whenever the state court identifies the correct governing legal principle from the Supreme Court's decisions but applies that principle to the facts of the prisoner's case in an "objectively unreasonable" manner. *Id.* (Citing Williams v. Taylor, 529 U. S. 362, 409, 120 S. Ct. 1495, 146 L. Ed. 2D 362 (2000) (O'Connor, J. writing for the Court)).

Petitioner contends that the First Circuit either disregarded the law or applied the law unreasonably before the court at hand. The holding of the Louisiana First Circuit— that "the trial counsel Simmons conceding his client's guilt before the court and jury on his client guilt, that violated the Petitioner's Sixth Amendment Right that guarantees the defendant (David Rushing) the right to choose the objective of his defense and to insist that his counsel refrain from admitting guilt, even when counsel's experienced-based view is that confessing guilt offers the defendant the best chance to avoid the death penalty. It appears that the court concluded that the Petitioner had the requisite specific intent" cannot be squared with the constitutional law articulated in Winship or Jackson v. Virginia, for reason articulate. The Louisiana First Circuit should have recognized that the court allowed the jury to convict Rushing of first degree murder based on much less than what was required by Louisiana Law and, therefore, violated the Due Process Clause of the Fourteenth Amendment to Rushing's Right. The First Circuit's failure to recognize this constitutional failure that makes its decision contrary to Jackson. Rushing

therefore, has clearly satisfied the requirements of **28 U. S. C. §2254(d)(1)** in this case.

Rushing argues, that his State habeas decision from the Magistrative Judge is upholding the state trial court's decision on the law that it is not retroactive to Rushing case. The First Circuit Court of Appeals denied Rushing case writ without stating a reason. The Louisiana Supreme Court denied writ application because he failed to establish an exception to the bar against seeking untimely post-conviction relief. Applying the Sixth Amendment right to counsel was violation when his attorney conceded his guilt over his explicit objections.

The Respondent has circumvented this issue that Rushing's attorney did concede his guilt during trial that violated the constitutional due process holding of Winship and Jackson; nor does she seriously defend the Louisiana Court of Appeal's erroneous ruling upholding the constitutionality of the counsel violating his client rights by conceding his guilt and the trial court allow such action to go on. The respondent argues only that federal habeas relief is unwarranted because it is not retroactive. The Supreme Court articulated a "less onerous" standard for assessing the impact of a state court's constitutional error on collateral review. Under Brecht, a federal court may grant habeas relief on account of constitutional error only if it determines that the constitution error had a "substantial and injurious effect or influence in determining the jury verdict." See id at 623, 113 S. Ct. 1710 (quoting McCoy v. Louisiana, 138 S. Ct. 1500, the violation of McCoy's protected autonomy right was complete with the Court allowed counsel to

usurp control of an issue within McCoy's sole prerogative. Violation of the defendant's Sixth Amendment-secured autonomy has been ranked "structural" error, when present, such error is not subject to harmless-error. See, e. g. McKaskle v. Wiggins, 465 U. S. 168, 177, n.8,104 S. Ct. 944, 79 L. Ed.2d 122; United States v. Gonzalez-Lopez, 548 U. S. 140, 126 S. Ct. 2557, 165 L. Ed.2d 409; Waller v. Georgia, 467 U. S. 39, 104 S. Ct. 2210, 81 L. Ed.2d31. An error is structural if it is not designed to protect defendants from erroneous conviction, but instead protects some other interest, such as "the fundamental legal principle that the defendant must be allowed to make his own choices about the proper way to protect his own liberty." Weaver, 582 U. S., at —, 137 S. Ct., at 1908 (citing Faretta, 422 U. S., at 834,95 S. Ct. 2525). Counsel's admission of a client's guilt over the client's express objection is error structural in kind, for it blocks the defendant's right to make a fundamental choice about his own defense. See Weaver, 582 U. S., at—137 S. Ct. 1899. McCoy must therefore be accorded a new trial without any need first to show prejudice. Pp. 1510-1511. The First Circuit's failure to recognize this constitutional failing make its decision contrary to Jackson. Rushing, therefore, has clearly satisfied the requirements of 28 U. S. C. § 2254(d)(1) in this case.

In this closing, Petitioner contends that a jury found him guilty of the first degree murder of Danny Achcer. The question before this court is whether the state trial court allowed Rushing counsel to concede his guilt by pleading his guilt before the jury that lessen the jury burden and in addition, it took the pressure off the jury to lessen their

22

burden of finding Rushing guilty that had a substantial and injurious effect or influence in determining the jury's verdict. In this case, there is no need to have a harmless analysis, because is it automatically present, according to Justice Ginsburg in McCoy's case. So, there is no need to show prejudice in this case, prejudice is presence.

## CONCLUSION

Petitioner request this Court to grant his writ of habeas corpus in behalf of reversing his state court's conviction that was based off of a "structure" error that he is entitled too from the state court ruling was, "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." **28 U. S. C. § 2254(d)(1)**

Respectfully submitted,

David Rushing

David Rushing, #103801
Camp F, Dorm – 2
Louisiana State Penitentiary
Angola, Louisiana 70712
December 29, 2022

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing writ was served by hand delivery or first class mail to the District Attorney for 29th day of December, 2022.

David Rushing
_____
David Rushing

All Parties Served:
District Attorney's Office
Warren Montgomery, D. A.
Justice Center
701 N Columbia, St
Covington, LA 70433

**eFile-ProSe**

| | |
|---|---|
| **From:** | Angola E-Filing <EML-FED-ANG-Printers@LA.GOV> |
| **Sent:** | Thursday, December 29, 2022 1:11 PM |
| **To:** | eFile-ProSe |
| **Subject:** | Angola E-Filing |
| **Attachments:** | DOC #103801131010.pdf |

CAUTION - EXTERNAL:

CAUTION - EXTERNAL EMAIL: This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.